**IN THE CIRCUIT COURT OF JEFFERSON COUNTY, WEST VIRGINIA**

JULIE ANN HAMSTEAD,

      PLAINTIFF,

V.                                        CASE NO. 18-C-\_\_\_\_\_

                                        JUDGE _____

WEST VIRGINIA STATE POLICE,

TROOPER D. R. WALKER IN HIS OFFICIAL CAPACITY,

THE CITY OF RANSON, WEST VIRGINIA,

SARGEANT KEITH SIGULINSKY IN HIS OFFICIAL CAPACITY ,

CITY OF CHARLES TOWN, WEST VIRGINIA,

MASTER PATROLMAN JASON NEWLIN IN HIS OFFICIAL CAPACITY,

THE WEST VIRGINIA DIVISION OF HIGHWAYS,

RODNEY D. HEDRICK, SR. IN HIS OFFICIAL CAPACITY,

KYLE REED KOPPENHAVER, IN HIS OFFICIAL CAPACITY,

A B, AN UNKNOWN INDIVIDUAL KNOWN AS THE WEST VIRGINIA DEPARTMENT OF HIGHWAYS' "MUSCLE MAN" ON THE 2016 RANSON-CHARLES TOWN GREEN CORRIDOR FAIRFAX BOULEVARD PROJECT,

JEFFERSON CONTRACTING INC., A CORPORATION,

JEFFERSON ASPHALT PRODUCTS COMPANY, A CORPORATION,

DALE DEGRAVE,

ALLEN SHUTTS,

JOHN TIMOTHY MORRIS,

WEST VIRGINIA UNIVERSITY HOSPITALS-EAST, INC., dba JEFFERSON MEDICAL CENTER,

KELLY HALBERT, RN, AND

X, Y AND Z, UNKNOWN PERSONS WHO CONSPIRED AND/OR AIDED AND ABETTED IN THE FABRICATION OF FALSE CRIMINAL CHARGES AGAINST JULIE HAMSTEAD,

      DEFENDANTS.

**EXHIBIT**

*1*

## COMPLAINT

Comes Plaintiff Julie A. Hamstead, and for her complaint against the Defendants says as follows:

### COUNT I – NATURE OF THE COMPLAINT

1.  This action is brought based on common law torts and violations of civil rights, including violations in the constitution and statutes of the United States.

### COUNT II – PARTIES

2.  Plaintiff is a fifty one-year old mother of four children, 5'7" weighing approximately 155 pounds, with no prior criminal record of any kind prior to the events described in this complaint.  She left the State of West Virginia because of the events herein described, in fear of further assault and abuse by Defendant Trooper Walker.

3.  The Defendant West Virginia State Police (WVSP) is an agency of the State of West Virginia charged with statewide enforcement of criminal and traffic laws, which, at all times relevant hereto, employed Trooper D. R. Walker.

4.  Defendant D.R. Walker ("Trooper Walker") was, at all times relevant hereto, employed as a West Virginia State Police Trooper stationed in Jefferson County, West Virginia.  Trooper Walker was at all times relevant herein acting under color of authority conferred upon him by such position and within the scope of his authority and is named in this lawsuit in his official capacity as an employee of the WVSP.

5.  The City of Ranson is a political subdivision of the State of West Virginia and, as such, is liable for the negligent conduct of its employees and agents, including that of its police Sergeant Keith Sigulinsky, who acted, at all times herein alleged, within the

scope of his employment as set forth and defined by West Virginia Code §29A-12A-1 et seq.

6. Trooper Walker, Sergeant Keith Sigulinsky, Master Patrolman Jason Newlin, Rodney Hedrick, John Timothy Morris, Dale DeGrave, Allen Shutts, and Kelly Halbert are believed to be residents of the State of West Virginia.

7. The City of Charles Town is a political subdivision of the State of West Virginia and, as such, is liable for the negligent conduct of its employees and agents, including that of its police Master Patrolman Jason Newlin, who acted, at all times herein alleged, within the scope of his employment as set forth and defined by West Virginia Code §29A-12A-1 et seq.

8. The Defendant Kyle Reed Koppenhaver is believed to have moved from West Virginia promptly following the events which are the subject of this suit.

9. Jefferson Contracting, Inc., ("Jefferson Contracting") and Jefferson Asphalt Products Company ("Jefferson Asphalt") are corporations domiciled in the State of West Virginia.

10. At all times alleged herein, the Defendants Rodney Hedrick and Kyle Koppenhaver (hereafter sometimes referred to as the "WVDOH Employees,") were acting within the scope of their employment for the Defendant West Virginia Division of Highways (the "DOH"), a Division of the West Virginia Department of Transportation and an agency of the State of West Virginia pertaining to the construction of a sidewalk and highway project sometimes known as the FAIRFAX BOULEVARD GREEN CORRIDOR PROJECT or Fairfax Boulevard Project.

11. At all times relevant herein, Dale DeGrave, Allen Shutts, and John Timothy Morris (sometimes herein jointly referred to as the "Jefferson Contracting Employees") were acting within the scope of their employment for the Defendant Jefferson Contracting and/or Jefferson Asphalt, or both in the construction of the said project.

12. Upon information and belief, at all times relevant to this suit, the Defendant Allen Shutts also acted in a dual capacity and was designated as "Project Superintendent" by the WVDOH. He acted as a dual agent for both the WVDOH and Jefferson Contracting and/or Jefferson Asphalt.

13. Jefferson Asphalt was the contractor on said Project and thereby responsible for the conduct of the private workers on the project.

## COUNT III – JURISDICTION AND VENUE

14. Both jurisdiction and venue lie with this Court in that the events which are the subject of this claim occurred in Jefferson County, West Virginia. The causes of action asserted herein against the WVSP and political subdivisions of the State seek only recovery to the extent they are covered by liability insurance and no recovery of State Funds is sought.

15. Preliminary written notice of this proceeding has been served more than 30 days next preceding the filing of this suit upon the chief officer of the WVSP, Colonel J.L. Cahill, Superintendent of the WVSP, the chief officer of the DOH, Thomas J. Smith, P.E. Commissioner, and the Attorney General of the State of West Virginia, by certified mail, return receipt requested, in accord with West Virginia Code § 55-17-3.

**Statement of Facts.**

16. On Monday, April 18, 2016, workman were observed tearing up the side walk in front of 113 and 105 Fairfax Boulevard (currently 507 and 509 S. Fairfax), commercial/residential properties owned, in part, by Plaintiff. Plaintiff soon learned that the historic vehicle access to the alley between the two houses, which provided both properties parking and sidewalk wheel chair access, would be blocked with a new raised sidewalk, and she also learned that street parking would be entirely eliminated for the 105 Fairfax Blvd. (currently 509 S. Fairfax Blvd.) property.

17. In order to pursue a protest of the planned government action adversely affecting said property, after conversing with the Ranson Assistant City Planner, Plaintiff was referred (on April 21, 2016) to the Ranson field office of WVDOH to meet with its engineer and determine whether changes could be made to the project plans. While in that office, an employee and agent of WVDOH introduced Plaintiff to the State's "Muscle Man," stating that he was there to ensure that the project was carried out without a hitch. Upon information and belief "Muscle Man" was Kyle Koppenhaver.

18. On April 25, 2016, at approximately 4:05 P.M., Plaintiff pulled her Honda Pilot vehicle into a nearby private parking lot in Charles Town and parked beside a work truck owned by Jefferson Contracting and/or Jefferson Asphalt driven by Defendant Dale DeGrave. The exiting passenger of said work truck, Defendant John Morris, began walking toward Plaintiff's driver's side window to answer her question about when the sidewalk pour would take place in front of said properties.

19. As Plaintiff and Defendant John Timothy Morris began to talk through Plaintiff's open window, the truck driver, who did not see her vehicle parked beside him,

attempted to make a right "U turn" to exit the parking lot, impacting the left front

driver's door of Plaintiff's Honda Pilot.

20. Dale DeGrave then immediately backed his work truck away from Plaintiff's vehicle,

jumped out and apologized to Plaintiff, telling her that he had not seen her parked

there. John T. Morris, the passenger, then screamed at Mr. DeGrave, "great, now you

owe the woman a new car." John Morris was obviously irritated that Plaintiff had

again asked about the sidewalk project.

21. Plaintiff advised Dale DeGrave that she would move her car to an upfront parking

space, so as to clear the path for other construction vehicles. She did so, parking her

Honda Pilot at the front south side of the lot where concrete parking barriers had been

placed for that purpose.

22. Unbeknownst to Plaintiff at the time, at least two 911 calls had already been made

falsely reporting a "disturbance" in the APU parking lot.

23. Plaintiff then walked back to the truck, intending to exchange insurance information

with Dale DeGrave whereupon three police officers suddenly came walking up to

them. Incredulously, as the three officers approached, John Timothy Morris

(passenger) then falsely screamed out to these officers, "she came in here like a bat

outa hell and didn't stop."

24. Plaintiff immediately protested the false statement saying, "that's not true, he is

lying," and further told the officers that her "car was in park" and that the truck had

hit her.

25. Trooper Walker screamed at Plaintiff "Shut Up."

26. Plaintiff noticed a familiar WVDOH employee standing behind Trooper Walker, who she recognized as the same individual she had met the week before whom they called "Muscle Man," and she begged this man, who she thought had witnessed everything, to tell the police the truth.

27. "Muscle Man" just stared coldly back at Plaintiff while Trooper Walker again screamed "Shut Up," refusing to hear the truth about what had occurred.

28. Plaintiff then, to better hear what was being said, turned toward a group of WVDOH and Jefferson Contracting employees who had moved to the center of the parking lot, whereupon Trooper Walker grabbed Plaintiff's right arm, dragged her backward several feet, then spun her around and violently pulled her left arm up over her head and twisted it back and forth. Walker then forced Plaintiff's left arm behind her body, lifted her by her left bent arm, pushed her forward across the parking lot and then smashed the right side of her face into DeGrave's work truck breaking her eyeglasses. Walker then slammed Plaintiff face down onto the ground, bloodying her knees, tearing open her leggings on the gravel. Walker then placed her in handcuffs behind her back as she lay helpless on the ground, face down.

29. At all times relevant Trooper Walker knew that Plaintiff was unarmed, and he was at no time in fear of his safety or the safety of others.

30. Trooper Walker then placed Plaintiff into the back seat of his police cruiser and turned up the already blaring hard rock music that was playing with the windows closed in the vehicle.

31. A red dump truck was then moved up from the very back of the parking lot and parked directly beside Trooper Walker's cruiser.

32. Thereafter Trooper Walker conspired with an unknown individual to drive Plaintiff's Honda Pilot so as to create skid marks in the gravel. This act was fraudulently and unlawfully carried out with the intent to support the false charge that Plaintiff intentionally caused "destruction of property," to DeGrave's work truck under West Virginia Code §61-3-30, and in an attempt to justify Walker's violent use of excessive force in Plaintiff's arrest and to deny Plaintiff her liberty.

33. Upon information and belief, all or some of the Jefferson Contracting Employees and all or some of the WVDOH Employees were present when Plaintiff's vehicle was moved as aforesaid.

34. Upon information and belief, all of the Jefferson Contracting Employees and all of the WVDOH Employees were aware, or subsequently became aware shortly after the events above described, that Plaintiff had not caused destruction of property to the vehicle driven by Dale DeGrave and such knowledge obligated said employees and their employers to cease pursuit of said false charge of Destruction of Property against Plaintiff.

35. That, in fact, Dale DeGrave informed the police that his vehicle suffered no damage in the accident but the Defendants, acting by and through their employees and agents, pursued the criminal charge of destruction of property, along with the appendant charges of disorderly conduct and obstruction against Plaintiff notwithstanding said information.

36. That, in the alternative, for his part, Trooper Walker failed and refused to investigate the misconduct and fraudulent activities of the Defendants in fabricating evidence against Plaintiff by moving Plaintiff's vehicle after her arrest and pursued the false

charges of Destruction of Property despite Plaintiff providing a video depicting a tall male individual with yellow reflective clothing leaving the driver's side of her vehicle after moving it.

37. Despite the APU video showing several persons entering and exiting Plaintiff's vehicle (and despite the video's obvious evidence of her car having been moved to the back corner of the parking lot by some mystery man), Trooper Walker falsely claims that he has never fully viewed the APU video and further claims that:

    a. He does not know whether any person(s) entered Plaintiff's vehicle after her arrest.

    b. He does not know how Plaintiff's eye glasses, which were broken when Trooper Walker slammed Plaintiff's face into the work truck, were thereafter put into her vehicle.

    c. He does not know how he obtained Plaintiff's driver's license which he admits he confiscated, kept on his desk for a long time, lost and never returned to Plaintiff.

38. Following her arrest, Trooper Walker then transmitted Plaintiff in the back seat of his cruiser, unbuckled, to the Jefferson Medical Center and chided Plaintiff with words to the effect of "don't show your ass" at the hospital.

39. Upon arriving at the emergency entrance, Trooper Walker pushed Plaintiff into the emergency room by her injured left arm, causing her to cry out in pain in front of hospital staff who were present, including Defendant Kelly Halbert.

40. The hospital staff subsequently advised Plaintiff's counsel that the video camera located at the hospital emergency entrance was non-operable at the time hereinabove

alleged. Upon a subsequent inquiry, the Hospital's attorney stated that the video recording had been destroyed because of the passage of time.

41. The Hospital staff advised Trooper Walker that Plaintiff had suffered a possible muscle tear to her left arm. However, in an effort to cover up his excessive use of force in Plaintiff's arrest, and to conceal his battery and the resulting injuries to Plaintiff, Trooper Walker conspired with Defendant Kelly Halbert, RN, to violate Plaintiff's rights under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and obtained from Kelly Halbert a false statement to the effect that Plaintiff had suffered no injuries and that she was abusive to Trooper Walker while in the hospital. Nurse Halbert's written statement was not provided to Trooper Walker as a result of a Court Order, Subpoena or Warrant and was not exempt from nondisclosure under 45 C.F.R. § 164.512(f) or otherwise.

42. Knowing that she was in great pain, and that she would be released on personal recognizance if arraigned, Trooper Walker unlawfully advised Plaintiff that she would be transported to jail in violation of his obligation under Rule 5 of the Rules of Criminal Procedure for Magistrate Court to contact a magistrate forthwith for arraignment.

43. Even after arrangements were made to have a magistrate appear for arraignment, Trooper Walker spitefully and meanly insisted that an arraignment "was not an option" and that Plaintiff was going to jail.

44. Thereafter, an "internal investigation team" consisting of two officers from the WVSP in Martinsburg arrived and apparently persuaded Trooper Walker that he should take Plaintiff for the arraignment that had been coordinated.

45. However, prior to arraignment, with malevolent intent to sexually harass and further physically and emotionally injure plaintiff, Trooper Walker committed the following acts:

    a.  Subjected Plaintiff to rough car rides running stop signs and driving recklessly at speeds nearly twice the posted speed on back roads to and from the police barracks, tossing Plaintiff around in the back seat of his cruiser while unbuckled in a neck brace and arm sling,

    b.  During said car rides he played loud sexually oriented music from a device in his cruiser, and, at one point touched her knee while she struggled to move away from his hand, keeping his hand fixed behind the passenger's seat by Plaintiff's knee for the duration of the ride,

    c.  Forced Plaintiff to sit for an extended period of time, while in pain, shaking violently on a cold metal chair in the hallway just in front of his cubicle wall at the police barracks while he sang sex songs, ate food and made strange noises behind his desk, until he decided it was time to "call the Magistrate."

46. After inordinate delays in transporting Plaintiff from the hospital to the Barracks and then back to the Magistrate Court in town, where he remained in his car with Plaintiff in front of the said Courthouse until the town clock struck midnight. Plaintiff was arraigned just after midnight on April 26, 2016, and released by the Magistrate on personal recognizance.

47. Trooper Walker claims that at no time during any of the activities described in this complaint did he activate either his body audio or in car audio or video camera. This failure is a violation of the WVSP policy on use of such equipment involving citizen

contact. Trooper Walker claims that no officer activated his audio/video equipment

during the contact with Plaintiff or her arrest.

48. Sergeant Keith Sigulinsky was present, witnessed, and participated in the events in

the above mentioned private parking lot. According to 911, Sigulinsky arrived at the

scene prior to the accident in question and reported arriving on the scene at

approximately 4:00 p.m. Sergeant Sigulinsky provided Trooper Walker with a

fabricated and false statement that he engaged in a long and detailed conversation

with Plaintiff and further embellished his story stating that she physically ran into him

prior to her arrest. This false statement was provided to Trooper Walker and used by

Trooper Walker in an attempt to justify the excessive use of force, Plaintiff's arrest,

and ultimately the charges against Plaintiff.

49. Officer Newlin arrived at the scene and participated in the events in said parking lot

and provided Trooper Walker with a false statement against Plaintiff stating that it

was necessary that he, Officer Newlin, use force in arresting Plaintiff.

50. In the alternative, officer Newlin did participate in the assault and battery upon

Plaintiff on April 25, 2016.

51. The charge of Destruction of Property was made without probable cause and was

dismissed by the Magistrate Court of Jefferson County on November 14, 2017.

52. Trooper Walker refused to request dismissal of the destruction of property charge and

forced Plaintiff to defend the charge at trial even though there was no damage to

DeGrave's vehicle and the only damage incurred in the accident was to Plaintiff's

Honda Pilot driver's door. The damage done to Mrs. Hamstead's door was caused by

a perpendicular impact from the right tire of DeGrave's truck which hit her parked vehicle.

53. Arising out of the destruction of property charge, Trooper Walker also charged Plaintiff with disorderly conduct under West Virginia Code §61-6-1b and obstructing an officer under West Virginia Code §61-3-30 even though he had reason to know and did know that Plaintiff was attempting to protest the false allegations against her leading to his charge of destruction of property and even though said Code Section §61-6-1b applies only to a "public parking area" and not a private parking area as is the case here.

54. Trooper Walker falsely and maliciously brought the disorderly conduct charge and the obstruction charge against Plaintiff in an attempt to shield himself from responsibility for his excessive use of force and to justify Plaintiff's arrest.

55. The Defendants Sergeant Sigulinsky and Patrolman Jason Newlin possessed actual knowledge of the fact that the parking lot where Plaintiff was arrested was a private parking lot but aided and abetted Trooper Walker in his scheme to use false charges to justify his excessive use of force.

56. The Defendants refuse to seek the dismissal of the charges of disorderly conduct and obstruction and these charges remain pending.

57. That Trooper Walker has used and uses the Prosecuting Attorney as a "stalking horse" to maliciously pursue false charges against Plaintiff by:

    a. failing to disclose that Dale DeGrave informed the police that there existed no damage to Mr. DeGrave's vehicle,

b. knowingly participating in, encouraging, aiding and abetting an attempt to alter the statement of Dale DeGrave from his written statement given to Trooper Walker (that he hit Plaintiff's vehicle) to his false statement made at trial (suggesting that Plaintiff's vehicle may have struck his vehicle),

c. falsely informing the Prosecutor and the Magistrate Court that no use of force report existed, when, in fact, he had prepared a use of force report,

d. falsely informing the Prosecutor and the Magistrate Court that no internal investigation of his use of force had taken place, when, in fact, Trooper Walker met with an internal investigative team of two State Troopers from the West Virginia State Police detachment in Martinsburg, West Virginia, at the hospital on April 25, 2016,

e. singling out Plaintiff for disparate treatment and prosecution in retaliation for Plaintiff exercising her right to free speech and freedom from abuse of process and her right to an arraignment and bail prior to incarceration;

f. conspiring with, and aiding and abetting the Prosecutor to subpoena Plaintiff's counsel as a witness for the State approximately one week before Plaintiff's Magistrate Court trial, falsely asserting that Plaintiff's counsel held material evidence against his client and wife that could not be provided by any other witness, and

g. otherwise denying Plaintiff equal protection and the right to due process.

58. That Trooper Walker and the WVSP carried out the above-mentioned actions for the purpose of intimidating and coercing Plaintiff into a guilty plea on false charges made against her so that he could carry out his malicious plan to ensure that Plaintiff would

spend one night in jail, which is the condition Trooper Walker is accustomed to carrying out.

59. That Defendants Sargent Sigulinsky and Patrolman Newlin aided, abetted and conspired with Trooper Walker to carry out Walker's malicious scheme to overcharge Plaintiff so that she would be coerced and leveraged to plead to obstruction.

## COUNT IV – MALICIOUS PROSECUTION

60. Plaintiff incorporates by reference all the allegations contained in the previous paragraphs the same as if fully set forth herein, which constitute malicious prosecution as to the false charge of destruction of property.

## COUNT V – VOID DISORDERLY CONDUCT AND OBSTRUCTION CHARGES

61. But for the malice of the Defendants directed at Plaintiff, and their actions designed to falsely charge Plaintiff with destruction at property, Plaintiff would not have been charged with disorderly conduct and obstruction which charges are the fruit of Defendants' malice directed toward Plaintiff and Defendants' attempt to conceal unlawful actions. Said charges are a direct and proximate result thereof.

62. That the charges of disorderly conduct and obstruction are, under the facts of this case, null and void as they manifest gross prosecutorial misconduct. Plaintiff was falsely charged and maliciously prosecuted by Defendants for exercising her First Amendment constitutional right to free speech and her right to protest governmental action and to protest abuse of process by the government in the exercise of its police powers and are thereby barred by the First Amendment to the United States Constitution.

## COUNT VI – AIDING AND ABETTING MALICIOUS PROSECUTION

63. Plaintiff incorporates by reference all the allegations contained in the previous paragraphs the same as if fully set forth herein.

64. Defendants Jefferson Contracting and/or Jefferson Asphalt and their employees enabled, encouraged and assisted the WVSP, Trooper Walker and the remaining Defendants in their malicious prosecution of Plaintiff, as detailed above and incorporated herein.

65. The Defendants maliciously caused Plaintiff to be subjected to discriminatory and disparate treatment in violation of her rights to equal protection with no offer of a pre-trail diversion agreement and the conditional dismissal of the charges as is routinely offered in a case such as Mrs. Hamstead's where the Plaintiff has absolutely no prior record and especially where there exists no victim.

### COUNT VII – BATTERY

66. Plaintiff incorporates by reference all the allegations contained in the previous paragraphs the same as if fully set forth herein.

67. Defendant Walker intended to and did cause harmful and offensive contact with the Plaintiff.

68. That all other Defendants stood by and watched as Plaintiff was physically abused, doing and saying nothing to stop the abuse even though their actions had instigated the abuse.

69. Defendants' conduct constitutes battery against the Plaintiff.

### COUNT VIII – AIDING AND ABETTING BATTERY

70. Plaintiff incorporates by reference all the allegations contained in the previous paragraphs the same as if fully set forth herein.

71. That Defendants assisted, encouraged, aided and abetted the WVSP and Trooper Walker in the battery of Plaintiff.

## COUNT IX – NEGLIGENCE

72. Plaintiff incorporates by reference all the allegations contained in the previous paragraphs the same as if fully set forth herein.

72. Defendants specifically owed Plaintiff a duty of reasonable care.  It was reasonably foreseeable to Defendants that Plaintiff would be harmed as a result of Defendants' actions as aforesaid.

73. Defendants breached that duty as detailed above and incorporated herein, and by negligently, willfully and wantonly charging and arresting and aiding and abetting in the battery, arrest and charging of Plaintiff for offenses that she did not commit and by maliciously prosecuting and aiding in her prosecution because she protested their actions.

## COUNT X – NEGLIGENT OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS/TORT OF OUTRAGE

74. Plaintiff incorporates by reference all the allegations contained in the previous paragraphs the same as if fully set forth herein.

75. The conduct by all Defendants herein, as set forth above in detail, was so outrageous in character and so extreme in degree, that this conduct exceeded all bounds of decency, and should be regarded as atrocious and utterly intolerable in a civilized community.

76. Defendants knew, or should have known, that Plaintiff would suffer extreme emotional distress as a direct and proximate result of their actions.

77. Plaintiff did suffer and continues to suffer, extreme emotional distress as a direct and proximate result of their actions.

## COUNT XI – RESPONDEAT SUPERIOR

78. Plaintiff incorporates by reference all the allegations contained in the previous paragraphs the same as if fully set forth herein.

79. The WVSP, the City of Charles Town and the City of Ranson have the authority to formulate, implement, and administer the policies, customs, and practices of their employees, subordinates, and agents, some of whom are also Defendants named or described herein, which represent the official policies, customs and practices each Defendant named above, and subjects the WVSP, the City of Charles Town and the City of Ranson to vicarious liability.

## COUNT XII – NEGLIGENT HIRING, TRAINING, AND SUPERVISION

80. Plaintiff incorporates by reference all allegations contained in the previous paragraphs the same as if fully set forth herein.

81. Defendants WVSP, the City of Charles Town, by and through its Chief of Police, and the City of Ranson, by and through its Chief of Police, had a duty to adequately supervise and train their employees, agents and police officers not to commit battery, negligence, abuse of process and/or torts against individuals in their jurisdiction.

82. The WVSP, the City of Charles Town, and the City of Ranson breached the aforesaid duty by failing to adequately train and supervise their employees, agents, officers, and troopers, to not commit the above said acts, including, but not limited to the following:

   a. Failing to properly train and supervise their officers not to use their power and authority as officers of the law to harass, physically and sexually intimidate and abuse citizens for personal gratification or otherwise;

   b. Failing to properly train their officers that they must not, under any circumstances, participate in a "code of silence" when observing a violation of a citizen's civil rights or when observing the fabrication of evidence to justify the deprival of a citizen's liberty, but that they must report such violations to the proper authorities;

   c. Failing to properly train their officers that they must not charge a citizen with destruction of the property of another where no property of another was damaged, injured or destroyed;

   d. Failing of WVSP to properly train Trooper Walker that he must not use the power of his office as a State Trooper to pursue personal vendettas, revenge, sexual gratification or other personal agendas;

   e. Failing to properly train their troopers and officers to comply with proper use of audio and video equipment policies and procedures;

   f. Failing to properly train their officers in using physical force and excessive physical force on unarmed citizens who pose no physical threat to them or to anyone else; and,

   g. Failing to train their officers on the necessity for documenting the use of force.

83. The negligence of the WVSP, the City of Charles Town and the City of Ranson in inadequately hiring, training and supervising the above-named Defendants directly

and proximately caused Plaintiff to suffer harm, including personal injuries, extreme

emotional distress, loss of enjoyment of life, damage to reputation, loss of earnings

and economic damages, for which she is entitled to recover.

## COUNT XIII – OBSTRUCTION OF JUSTICE

84. Plaintiff incorporates by reference all allegations contained in the previous paragraphs

the same as if fully set forth herein.

85. Plaintiff's vehicle was driven subsequent to her arrest for the purpose of producing

skid marks in the gravel behind the position at which it was stopped in an effort to

justify false charges against her and deny her of her liberty.

86. Despite having been provided with compelling video footage showing a fabrication of

evidence and misconduct by the Defendants, the WVSP and Trooper Walker

prosecuted the charge of destruction of property and continue to prosecute said

remaining charges against Plaintiff and refuse to investigate or even watch the video

to determine who drove Plaintiff's vehicle subsequent to her arrest.

87. Instead, the WVSP and Trooper Walker intentionally hid and concealed said

fraudulent and criminal misconduct, forcing Plaintiff to undergo a ten-hour trial on

the false charge of destruction of property, together with the said appendant charges.

88. The WVSP and Trooper Walker continue to perpetrate said fraud upon Plaintiff and

continue to deliberately and maliciously conceal said exculpatory evidence, (as

contained on said video), insisting that the burden lies with Plaintiff to investigate,

determine and prove who drove her vehicle subsequent to her arrest.

89. Sgt. Sigulinsky and Patrolman Newlin continue to support Walker and continue to

maliciously conceal exculpatory evidence.

90. Your Defendant currently lacks the financial resources to engage detectives to determine the identify of the individual who fraudulently and unlawfully drove her vehicle subsequent to her arrest.

91. Trooper Walker, Sgt. Sigulinsky and Patrolman Newlin know or should know who fraudulently and unlawfully moved Plaintiff's vehicle subsequent to her arrest but scheme and plan to withhold said exculpatory evidence and Trooper Walker professes to not know whether anyone entered Plaintiff's vehicle despite clear video evidence from a third-party camera of same.

92. The actions of the WVSP and Trooper Walker as aforesaid constitute an obstruction of justice in violation of Plaintiff's rights to procedural and substantive due process and in violation of her right to equal protection under the law.

93. Defendant officers participated and continue to participate in "code of silence" activities in violation of Plaintiff's right to due process of law.

### COUNT XIV – DAMAGES

94. Plaintiff incorporates by reference all allegations contained in the previous paragraphs the same as if fully set forth herein.

95. As a direct and proximate result of Defendant Walker's battery, Plaintiff suffered harm, including permanent physical injuries, extreme emotional distress, loss of enjoyment of life, damage to her reputation, loss of earnings and economic damages, for which she is entitled to recover.

### COUNT XV – PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff prays for the following relief against the Defendants, jointly and severally:

a. An award of damages for past and future medical expenses, personal injuries, pain and suffering, mental anguish, permanent injury, loss of enjoyment of life, economic damages, lost wages, and loss of earning capacity in such amounts as are meet and just;

b. Punitive damages, as may be permitted by law against such Defendants as were grossly negligent, reckless, and/or engaged in intentional misconduct;

c. Pre-judgment and post-judgment interest;

d. Costs and attorney fees expended in this civil action and the pending criminal actions;

e. Any other further general or specific relief that this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES.**

**JULIE A. HAMSTEAD**
**By Counsel**

Submitted By:

**Braun A. Hamstead, Esquire**
**West Virginia State Bar ID No. 1568**
*Counsel for Defendant Julie A. Hamstead*
**HAMSTEAD & ASSOCIATES, L.C.**
**507 S. Fairfax Blvd.**
**Charles Town, WV 25414**
**Phone: 304-725-1468**
**Fax: 304-725-1321**

**COMPLAINT**
**CIVIL ACTION NO. 18-C-_____**
Page 22 of 22
