## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## MARTINSBURG

JULIE ANN HAMSTEAD,

     Plaintiff,

v.                                                    CIVIL ACTION NO.: 3:18-CV-79
                                                       (Honorable Gina M. Groh)

WEST VIRGINIA STATE POLICE;
TROOPER D. R. WALKER, in his official capacity;
CITY OF RANSON, WEST VIRGINIA;
SARGEANT KEITH SIGULINSKY, in his official capacity;
CITY OF CHARLES TOWN, WEST VIRGINIA;
MASTER PATROLMAN JASON NEWLIN,
in his official capacity; THE WEST VIRGINIA
DIVISION OF HIGHWAYS; RODNEY D. HEDRICK, SR.,
in his official capacity; KYLE REED KOPPENHAVER,
in his official capacity; A.B., an unknown individual
known as the West Virginia Department of Highways'
"Muscle Man" on the 2016 Ranson-Charles Town
Green Corridor Fairfax Boulevard Project;
JEFFERSON CONTRACTING, INC., a corporation;
JEFFERSON ASPHALT PRODUCTS COMPANY, a corporation;
DALE DEGRAVE; ALLEN SHUTTS; JOHN TIMOTHY MORRIS;
WEST VIRGINIA UNIVERSITY HOSPITALS-EAST, INC., dba
"Jefferson Medical Center"; KELLY HALBERT, RN;
and X, Y, and Z, unknown persons who conspired and/or
aided and abetted in the fabrication of false criminal charges
against Julie Hamstead,

     Defendants.

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS WEST VIRGINIA STATE POLICE AND TROOPER D. R. WALKER'S
## MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendants West Virginia State Police and Trooper D. R. Walker (collectively, the "State Police Defendants") ask the Court in this Rule 12(b)(6) Motion to decide two issues: (1) Has Plaintiff pled sufficient facts to state a viable claim against the State Police Defendants? and (2) Are the State Police Defendants entitled to qualified immunity from any viable claims?

## I.   STATEMENT OF FACTS

According to the First Amended Complaint, Mrs. Hamstead owns two "commercial/residential" properties in Ranson, West Virginia, access to which were to be affected by a new raised sidewalk the city was constructing. Am. Compl. ¶ 17 (ECF No. 30). On the afternoon of April 25, 2016, Mrs. Hamstead pulled into the parking lot of American Public University ("APU") and parked beside a truck owned by Defendant Jefferson Asphalt, which was driven by Defendant Dale Degrave. Id. at ¶¶ 27-29. The passenger of the truck, Defendant John Morris, allegedly approached Mrs. Hamstead's car at her request. Id. at ¶ 30. Mr. Degrave, according to Mrs. Hamstead, began to make a right U-turn to exit the parking lot and hit the left front driver's door of Mrs. Hamstead's car. Id. at ¶ 31. Mrs. Hamstead claims that she then moved her car to clear a path for other vehicles and walked back to the truck to exchange insurance information. Id. at ¶¶ 33-34.

According to the other eyewitnesses, however, Mrs. Hamstead had been complaining to the Jefferson Asphalt employees all day about the sidewalk. Stmt. of Rodney Hedrick, May 4, 2016, attached as "Exhibit 1."[1] Witnesses stated that after leaving for a while, Mrs. Hamstead came speeding into the parking lot and struck the truck. Id.; Stmt. of Kyle Koppenhaver, May 4, 2016, attached as "Exhibit 2." The investigation revealed skid marks in the gravel leading to Mrs. Hamstead's car. Stmt. of Sgt. Keith Sigulinsky, May 2, 2016, attached as "Exhibit 3." There was a call to 911 for a disturbance. Jefferson Cty. Emer. Commc'n Ctr. Call Detail Rpt., attached as

---

[1] The statements attached to this memorandum are expressly referenced in paragraphs 68-71, 78c-d, and 81d-h of the Amended Complaint.

"Exhibit 4."[2] Defendant Sgt. Sigulinsky of the Ranson Police Department was the first to arrive. Ex. 1; Ex. 2. Trooper Walker arrived at about the same time as Defendant Officer Newlin of the Charles Town Police Department. *Id.*

When Trooper Walker arrived, Sgt. Sigulinsky was attempting to interview the construction workers, and Mrs. Hamstead was irate, yelling that a construction worker was lying. Crim. Compl., Apr. 25, 2016, attached as "Exhibit 5."[3] Trooper Walker told Mrs. Hamstead to back away and stay with him so that Sgt. Sigulinsky and Officer Newlin could interview the witnesses. *Id.* Mrs. Hamstead complied for a short time but then approached Sgt. Sigulinsky again. *Id.* Trooper Walker instructed Mrs. Hamstead a second time to be quiet and stay with him. *Id.* When Mrs. Hamstead disobeyed Trooper Walker a third time and again approached Sgt. Sigulinsky and Officer Newlin from behind, he told her she was under arrest. *Id.* Mrs. Hamstead actively resisted arrest, and Trooper Walker had to pin her against a vehicle and then take her to the ground in order to control her. *Id.*; Stmt. of Sr. Patrolman J.W. Newlin, May 2, 2016, attached as "Exhibit 6"; Ex. 2. He required the assistance of Officer Newlin to get both of Mrs. Hamstead's arms behind her back and get handcuffs on her. Ex. 5; Ex. 6; Ex. 1. During the scuffle, Mrs. Hamstead's glasses were broken and she scraped her knee. Am. Compl. ¶ 42.

Mrs. Hamstead alleges that Trooper Walker turned up blaring hard rock music while she was in the car. *Id.* at ¶ 44. She claims that after she was arrested, an unknown individual moved her car and created the skid marks in the gravel that officers observed upon arriving at the scene. *Id.* at ¶ 46. Trooper Walker charged Mrs. Hamstead with destruction of property, disorderly conduct, and obstructing an officer. *Id.* at ¶¶ 46, 74; Ex. 5.

---

[2] Mrs. Hamstead expressly references the 911 call reports in paragraphs 68 and 81a of the Amended Complaint.
[3] Mrs. Hamstead expressly refers to, and necessarily relies upon, the criminal complaint and the arraignment at which it was presented to the magistrate in paragraphs 46, 60-62, 64, and 74-75 of the Amended Complaint.

Because she complained that her left arm was injured, Trooper Walker transported Mrs. Hamstead to Jefferson Medical Center for evaluation. Compl. ¶ 53. While Mrs. Hamstead was being seen at the hospital, Trooper Walker's supervisor, Sgt. J.M. Walker, in response to Trooper Walker advising him of the incident with Mrs. Hamstead, came to the hospital to interview Mrs. Hamstead. *Id.* at ¶ 62; Rpt. of Response to Resistance or Aggression, attached as "Exhibit 7."[4] Mrs. Hamstead refused to provide a written statement or to sign a medical release so that the State Police could obtain her medical records from the visit. Ex. 7.

After Mrs. Hamstead was released from the hospital, Trooper Walker transported her to the State Police detachment for processing. Ex. 5. Mrs. Hamstead, however, alleges that Trooper Walker insisted that she was going to jail and refused to take her to the magistrate for an arraignment. Am. Compl. ¶ 61. Mrs. Hamstead further alleges that Trooper Walker subjected her to rough car rides between the hospital, the State Police office, and the magistrate's office; played "loud sexually oriented music" and touched her knee while she was in the cruiser; and forced her to sit for an extended period of time on a cold metal chair in the hallway while he sang "sex songs," ate food, and "made strange noises behind his desk." *Id.* at ¶ 63. Nevertheless, Mrs. Hamstead was arraigned. *Id.* at ¶ 64. The magistrate found there was probable cause for the offenses for which she was charged and released her on bond. Ex. 5.

The State Police investigated Trooper Walker's use of force against Mrs. Hamstead and found that he complied with policy and acted reasonably in dealing with Mrs Hamstead. Ex. 7.

The criminal charges against Mrs. Hamstead proceeded to a bench trial in Magistrate Court. On November 14, 2017, Magistrate Senseney found Mrs. Hamstead not guilty of destruction of property, but he found her guilty of both disorderly conduct and obstructing an

---

[4] Mrs. Hamstead expressly refers to this use of force report in paragraphs 78c-d of the Amended Complaint.

officer. Criminal Judgment Orders, attached as "Exhibit 8."  Mrs. Hamstead has appealed the magistrate's decision to the Circuit Court. Notice of Appeal, attached as "Exhibit 9."[5]

In the present action, Mrs. Hamstead brings counts of Malicious Prosecution; "Void Disorderly Conduct and Obstruction Charges"; Abuse of Process; Battery; Negligence; Intentional Infliction of Emotional Distress; Respondeat Superior; Negligent Hiring, Training, And Supervision; and "Obstruction of Justice" against the State Police and Trooper Walker in his official capacity. Am. Compl. ¶ 4.

## II.   STANDARD OF DECISION

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted).   A plaintiff must make sufficient factual allegations to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*   The allegations in the complaint must "advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

"[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Courts also should not consider "unwarranted inferences, unreasonable conclusions, or arguments." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009).

When reviewing the sufficiency of a complaint, a court may consider not only the allegations in the complaint, but also documents that are explicitly incorporated into the complaint by reference, those attached to the complaint as exhibits, and documents submitted by the movant

---

[5] Mrs. Hamstead expressly refers to and necessarily relies upon the results of the Magistrate Court criminal prosecution and appeal to the Circuit Court in paragraphs 72, 77, and 82-84 of the Amended Complaint.

that were not attached to or expressly incorporated in the complaint, so long as the document was integral to the complaint, and there is no dispute about the document's authenticity. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Documents which a court may take judicial notice of can also be considered at the 12(b)(6) stage. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). If an exhibit referenced by a complaint contradicts conclusory allegations in the complaint, the exhibit takes precedence. *Phillips v. Prudential Ins. Co. of Amer.*, 714 F.3d 1017, 1020 (7th Cir. 2013); *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).

## III.   ARGUMENT

### A.   The State Police and Trooper Walker Cannot Be Found Liable for Monetary Damages for Any Claims Brought Under 42 U.S.C. § 1983.

Neither the State Police, as an agency of the State of West Virginia, nor Trooper Walker in his official capacity may be found liable for monetary damages because of alleged violations of Mrs. Hamstead's federal rights. Therefore, to the extent the Amended Complaint is deemed to state a claim under 42 U.S.C. § 1983, such claims against the State Police Defendants should be dismissed.

The essential elements of an action under 42 U.S.C. § 1983 are: (1) that the defendant was acting under color of state law; and (2) that the defendant's actions deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Clark v. Link*, 855 F.2d 156, 161 (4th Cir. 1988). Thus, to the extent Mrs. Hamstead alleges Defendants violated her constitutional rights, she appears to be attempting to assert a Section 1983 claim. *See* Am. Compl. ¶¶ 78g, 84, 116-17. Yet, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Here, Mrs. Hamstead names the West Virginia State Police as a Defendant. A state and its agencies are not a "person" within the meaning of Section 1983. *Id.* at 65. Mrs. Hamstead brings

her claims against Trooper Walker in his official capacity. Am. Compl. ¶ 4. "But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71. Consequently, such an action is no different than a suit against the state itself. *Id.* Thus, neither of the State Police Defendants is liable for monetary damages under Section 1983. Mrs. Hamstead expressly only seeks monetary damages. Am. Compl. 29.

Because the State Police Defendants are not subject to liability for monetary damages under Section 1983, any of Mrs. Hamstead's claims that are determined to be brought under that statute should be dismissed.

**B.      Mrs. Hamstead Fails to State a Claim Against Trooper Walker.**

The Court should dismiss all counts against Trooper Walker because Mrs. Hamstead either fails to plead facts to state a claim upon which relief may be granted, or Trooper Walker is entitled to qualified immunity from her claims.

The doctrine of qualified immunity protects even those police officers who commit constitutional violations but who could reasonably believe that their actions were lawful, in light of clearly established law at the time of the action. *Pegg v. Herrnberger*, 845 F.3d 112, 117 (4th Cir. 2017). In order to be entitled to qualified immunity, a defendant must either show (1) that no constitutional violation occurred; or (2) that the right violated was not clearly established at the time it was violated. *Hunter v. Town of Mocksville, N.C.*, 789 F.3d 389, 396 (4th Cir. 2015). A court may consider either prong first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Fourth Circuit Court of Appeals has emphasized that "qualified immunity protects law officers from bad guesses in gray areas, and it ensures that they may be held personally liable only for transgressing bright lines." *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (internal quotation and citation omitted). Qualified immunity is particularly important in the law enforcement field; otherwise, police officers' ability to protect the public would be severely hampered if their every decision was

subject to second-guessing in a lawsuit. *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991).

Qualified immunity may be considered in a motion to dismiss. The Fourth Circuit has emphasized that "when a district court declines to give a qualified immunity defense at the dismissal stage of litigation a hard look, it risks unwittingly the forfeiture of some protections afforded by that defense." *McVey v. Stacy*, 157 F.3d 271, 275 (4th Cir. 1998); *see also W. Va. Bd. of Educ. v. Marple*, 236 W. Va. 654, 668, 783 S.E.2d 75, 89 (2015). For this reason, even under West Virginia's notice pleading standard, "in civil actions where immunities are implicated, the trial court must insist on heightened pleading by the plaintiff." *Hutchinson v. City of Huntington*, 198 W. Va. 139, 149, 479 S.E.2d 649, 659 (1996).

Examining each of the counts brought against Trooper Walker, he is entitled to dismissal from this case either because Mrs. Hamstead fails to allege sufficient facts to state a claim upon which relief may be granted or because he is entitled to qualified immunity from the viable claims Mrs. Hamstead brings.

> **1.    Trooper Walker Is Entitled to Qualified Immunity from the Malicious Prosecution Count Because Mrs. Hamstead Pleads No Facts to Show That He Violated Clearly Established Law by Arresting Her Based Upon Arguable Probable Cause.**

Mrs. Hamstead's malicious prosecution claim against Trooper Walker should be dismissed. Absence of probable cause is an essential element of this count. The facts pled in the Amended Complaint, along with facts revealed in documents referred to and relied upon therein, show that Trooper Walker had at least arguable probable cause to believe Mrs. Hamstead committed destruction of property. Therefore, he is entitled to qualified immunity from this count because Mrs. Hamstead pleads no facts to show that he violated clearly established law by arresting her for destruction of property.

Under West Virginia law, the elements of a malicious prosecution claim are: "(1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious." Syl. Pt. 2, in part, *Norfolk S. Ry. Co. v. Higgenbotham*, 228 W. Va. 522, 721 S.E.2d 541 (2011). Thus, absence of probable cause is an essential element of the claim.

The West Virginia Supreme Court of Appeals has set forth the analysis to be used in deciding whether a state official is entitled to qualified immunity. First, a court is to determine whether the acts or omissions complained of constitute legislative, judicial, executive, or administrative policy making acts, or whether they involve discretionary functions. Syl. Pt. 10, *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014). If the acts or omissions that give rise to a complaint involve discretionary functions by the government official, the plaintiff must demonstrate that "such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive[.]" *Id.* at Syl. Pt. 11. Failure of the plaintiff to identify a specific law, statute, or regulation allegedly violated by the state official warrants dismissal under Rule 12(b)(6). *W. Va. Bd. of Educ. v. Croaff*, No. 16-0532, 2017 WL 2172009, at *7 (W. Va. May 17, 2017).

In the context of a malicious prosecution claim, the existence of arguable probable cause for an arrest entitles the defendant officer to qualified immunity. *Betts v. Shearman*, 751 F.3d 78, 83 (2d Cir. 2014) (affirming dismissal of state law malicious prosecution claim on qualified immunity grounds because officer had arguable probable cause to make arrest); *Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012) (finding officer was entitled to qualified immunity from malicious prosecution claim because of existence of arguable probable cause for arrest); *Mack v. Mazzarella*, 554 Fed. App'x 800, 803 (11th Cir. 2014) (same).

The facts pled in the Amended Complaint and revealed in documents referenced in and relied upon by the Amended Complaint show that Trooper Walker is entitled to qualified immunity from Mrs. Hamstead's malicious prosecution count. First, the act of arresting Mrs. Hamstead was a discretionary act by Trooper Walker, to which qualified immunity applies. *Lee*, 284 F.3d at 1194 (finding there could be "no doubt" an officer was acting in his discretionary capacity when making an arrest); *Pegg*, 845 F.3d at 119 (finding officer was qualifiedly immune from liability based upon arrest). Second, because Trooper Walker's arrest and charging of Mrs. Hamsted for destruction of property was a discretionary act, the burden falls on Mrs. Hamstead to show that the arrest violated a clearly established law. Syl. Pt. 11, *A.B.*, 234 W. Va. 492, 766 S.E.2d 751. The Complaint makes no allegations that Trooper Walker violated any clearly established law by arresting Mrs. Hamstead and charging her with destruction of property based upon statements by numerous eyewitnesses that she hit the Jefferson Asphalt truck. Her failure to identify any clearly established law that was allegedly violated, by itself, warrants dismissal of this count. *Croaff*, 2017 WL 2172009, at *7.

Not only does Mrs. Hamstead fail to meet her burden to overcome qualified immunity, but clearly established law provides that the existence of arguable probable cause for her arrest creates qualified immunity for Trooper Walker. In assessing whether a police officer is entitled to qualified immunity, the question is not whether there was *actually* probable cause, but whether an objective officer could *reasonably believe* probable cause existed. *Gomez*, 296 F.3d at 261-62; *Torchinsky*, 942 F.2d at 260 (in determining whether an officer is entitled to qualified immunity, the court need only determine whether the officer acted within objective reasonableness).

Here, Trooper Walker had at least arguable probable cause to arrest Mrs. Hamstead for destruction of property. Magistrate Rissler found probable cause to support the destruction of property charge. Ex. 5. Although Trooper Walker arrested Mrs. Hamstead on the scene without a warrant, courts have nevertheless found it noteworthy in deciding qualified immunity that a

judicial officer found probable cause to support an arrest, even if that finding was made *after* the arrest. *See Torchinsky*, 942 F.2d at 261. In *Torchinsky*, the underlying arrest was pursuant to a warrant issued by a magistrate. *Id.* at 260. When affirming that the defendant officer was entitled to qualified immunity, however, the Fourth Circuit found it notable that the district court, in deciding the Section 1983 claim, also found probable cause—which obviously occurred after the arrest. *Id.* at 261-62.

The facts Trooper Walker observed on the scene show he was objectively reasonable to believe he had probable cause to arrest Mrs. Hamstead for destruction of property. He responded to a call of a disturbance at the APU parking lot. Ex. 4. When he arrived, he witnessed Mrs. Hamstead yelling at the witness who was speaking to Sgt. Sigulinsky. Ex. 5. Witnesses at the scene said that Mrs. Hamstead sped through the parking lot and collided with the Jefferson Asphalt truck. Am. Compl. ¶ 81a-c. Trooper Walker observed tire tracks in the gravel, directly to the rear of Mrs. Hamstead's vehicle, corroborating the witnesses' statements that she sped into the parking lot. Ex. 5. "It is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification[.]" *Torchinsky*, 942 F.2d at 262; *McKinney v. Richland Cty. Sheriff's Dept.*, 431 F.3d 415, 418 (4th Cir. 2005) (finding officer was entitled to qualified immunity because he had probable cause to arrest plaintiff based upon the purported crime victim's identification of the plaintiff as her attacker); *Betts*, 751 F.3d at 82 ("[P]robable cause exists if a law enforcement officer received information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." (internal quotation and citation omitted)).

Mrs. Hamsted does not dispute that eyewitnesses told Trooper Walker that she hit the Jefferson Asphalt truck. Am. Compl. ¶ 81a-c. Instead, she vehemently denies that the witnesses who spoke to Trooper Walker were telling the truth and claims that Trooper Walker did not adequately investigate the situation before arresting her. *Id.* at ¶ 51. Mrs. Hamstead's denial did

not negate his probable cause determination, as "criminal suspects frequently protest their innocence, and a suspect's denial of guilt generally is not enough to trigger a duty to investigate in the face of a reasonably believable witness and readily observable events." *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 744 (7th Cir. 2003). "[I]t is not the function of the police to establish guilt; the responsibility of sorting out conflicting testimony and assessing the credibility of putative victims and witnesses lies with the courts." *Id.* at 745. Furthermore, Trooper Walker did not withhold this potentially exculpatory evidence from the magistrate in his Criminal Complaint. He expressly stated in the Criminal Complaint that although the witness who spoke to Sgt. Sigulinsky claimed that Mrs. Hamstead struck the Jefferson Asphalt truck, Mrs. Hamstead claimed that "the male was lying." Ex. 5. Magistrate Rissler nevertheless agreed with Trooper Walker that there was probable cause to believe that Mrs. Hamstead was guilty of destruction of property. *Id.*

Based upon the eyewitness accounts he received and his observation of Mrs. Hamstead's demeanor and other factors, Trooper Walker had at least arguable probable cause to arrest Mrs. Hamstead for destruction of property. She does not claim that he violated any clearly established law by doing so. Therefore, the Court should dismiss the malicious prosecution count against Trooper Walker on the basis of qualified immunity.

### 2.    "Void Disorderly Conduct and Obstruction Charges" Is Not a Recognized Cause of Action, or Alternatively, Should Be Dismissed Under *Younger* Abstention.

Mrs. Hamstead's second count against Trooper Walker, "Void Disorderly Conduct and Obstruction Charges," is not a recognized cause of action and should be dismissed on this basis alone. Even if the Court broadly construes the claim as seeking prospective injunctive relief under Section 1983, it should be dismissed under *Younger* abstention because it seeks to have this Court interfere with a pending state court criminal matter.

The count of "Void Disorderly Conduct and Obstruction Charges" is simply two paragraphs in which Mrs. Hamstead claims that the two criminal charges she was convicted of amount to violations of her First Amendment rights to free speech and to protest government action and an abuse of process. Am. Compl. ¶¶ 83-84. It is not clear from these two paragraphs what Mrs. Hamstead is claiming. This is not a recognized cause of action; the proper forum to address her concerns of "prosecutorial misconduct" is in the pending circuit court criminal matter. This fact alone is a sufficient basis to dismiss this count.

Should the Court broadly construe this count as one for prospective injunctive relief under Section 1983 based upon allegations of a First Amendment violation, the Court should dismiss the count under *Younger* abstention. In *Younger v. Harris*, the Supreme Court expressed a national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances. 401 U.S. 37, 41 (1971). "Absent a few extraordinary exceptions, *Younger* mandates that a federal court abstain from exercising jurisdiction and interfering in a state criminal proceeding if (1) there is an ongoing state judicial proceeding brought prior to substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides adequate opportunity to raise constitutional challenges." *Nivens v. Gilchrist*, 444 F.3d 237, 241 (4th Cir. 2006) (footnote omitted). The exceptions to *Younger* abstention are few: "only where (1) there is a showing of bad faith or harassment by state officials responsible for the prosecution; (2) the state law to be applied in the criminal proceeding is flagrantly and patently violative of express constitutional prohibitions; or (3) other extraordinary circumstances exist that present a threat of immediate and irreparable injury." *Id.* (internal quotations and citations omitted).

*Younger* abstention applies here. In this count, Mrs. Hamstead appears to be asking this Court to declare that the two criminal charges pending against her are "null and void" and "barred by the First Amendment" (Am. Compl. ¶ 83), and therefore, to "void" them, as stated in the

caption of the count. All the *Younger* factors are present. First, the charges of obstructing an officer and disorderly conduct are pending in state court. Am. Compl. ¶ 77. Second, the pending state court proceeding implicates a vital state interest: "[T]he States' interest in administering their criminal justice systems free from federal interference is one of the most powerful considerations that should influence a court considering equitable types of relief." *Kelly v. Robinson*, 479 U.S. 36, 49 (1986) (citing *Younger* at 44-45). Finally, a state prosecution normally provides a party a fair and sufficient opportunity to vindicate her constitutional rights. *Kugler v. Helfant*, 421 U.S. 117, 124 (1975).

None of the exceptions to *Younger* abstention apply. First, more is required to show bad faith or harassment than mere allegations. *Blankenship v. West Virginia*, Civil No. 1:15-CV-29, 2016 WL 3247884, at *3 (N.D.W. Va. May 20, 2016), R. & R. adopted, 2016 WL 3248424 (June 10, 2016). Instead, a plaintiff must overcome the "heavy burden" of showing that a prosecution was brought without a reasonable expectation of obtaining a valid conviction. *Id.* The fact that Mrs. Hamstead was found guilty of these charges negates this possible exception. Second, the state law exception to *Younger* is "extremely narrow." *Id.* Because neither of the pending charges patently violates the Constitution, it does not apply here. *Id.* Finally, in order for the "exceptional circumstances" exception to apply, a plaintiff must show a pressing need for immediate relief from a federal court. *Id.* Mrs. Hamstead cannot meet that burden, either.

The "Void Disorderly Conduct and Obstruction Charges" count fails to state a claim upon which relief may be granted, and therefore, should be dismissed. In this count, Mrs. Hamstead does not seek monetary damages, but rather seeks equitable relief—that the Court "void" the pending charges as "barred by the First Amendment." Am. Compl. at ¶ 77. To the extent that this count is read to seek equitable relief in the form of declaring the pending state criminal charges against Mrs. Hamstead "null and void," it should be dismissed under *Younger* abstention.

3.      **Mrs. Hamstead Fails to State a Claim of Abuse of Process Because She Does Not Allege That Trooper Walker Improperly Used the Judicial Process After She Was Arrested.**

The Court should dismiss the abuse of process count against Trooper Walker because Mrs. Hamstead does not plead sufficient facts to state a recognized claim for this tort. In particular, Mrs. Hamstead does not allege that Trooper Walker used the judicial process for an improper purpose after Mrs. Hamstead's arrest.

The essential elements of the tort of abuse of process are (1) an ulterior purpose, and (2) a "willful act in the use of the process not proper in the regular conduct of the proceeding." *Rahmi v. Sovereign Bank N.A.*, Civil Action No. 3:12-CV-87, 2013 WL 412623, at *2 (N.D.W. Va. Feb. 1, 2013). The improper use usually takes the form of coercion to obtain a collateral advantage that is not part of the proceeding itself; it is this form of extortion, rather than the issuance or formal use of the process, that constitutes the tort. *Id.* Thus, merely filing a complaint does not give rise to an abuse of process claim, and failure to allege willful abuse of process after its issuance is fatal to a claim. *S. States Coop., Inc. v. I.S.P. Co., Inc.*, 198 F. Supp. 2d 807, 816 (N.D.W. Va. 2002). "Simply, abuse of process occurs where someone attempts to achieve through the use of the court that which the court is itself powerless to order." *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 662 N.E.2d 9, 14 (Ohio 1996). The tort of abuse of process is disfavored and therefore is narrowly construed. 1 Am. Jur. 2d *Abuse of Process* § 1.

The allegations against Trooper Walker mostly concern Mrs. Hamstead's arrest; there are no allegations that Trooper Walker used the judicial process for an improper purpose *after* he filed the criminal complaint against her. *See*, *e.g.*, Am. Comp. ¶ 81h-k. Instead, she merely alleges that Trooper Walker refused to request dismissal of the destruction of property charge. *Id.* at ¶ 73. There is no liability for abuse of process, however, when the defendant has done nothing more than carry out the process to its authorized conclusion. *Rahmi*, 2013 WL 412623, at *2. Mrs. Hamstead also alleges that Trooper Walker overcharged her so that she would be coerced into pleading guilty

to the obstructing an officer charge. Am. Compl. ¶ 80. Allegations that a police officer overcharged a person relate to the initiation of the process rather than an abuse of the criminal process, however, and therefore do not state a cognizable abuse of process claim. *Ickes v. Grassmeyer*, 30 F. Supp. 3d 375, 401 (E.D. Pa. 2014).

An abuse of process claim against a police officer based upon his arrest of the plaintiff requires more than merely showing that the officer charged the plaintiff and participated in the prosecution of those charges. Regardless of whether the initial decision to file a criminal complaint is proper, the prosecution of that complaint by an officer is a proper use of the legal process. *Dunne v. Twp. of Springfield*, Civil No. 08-5605, 2011 WL 2269963, at *9 (D.N.J. Jan. 31, 2011), *aff'd* 500 Fed. App'x 136 (3d Cir. 2012); *see also Marcano v. City of Schenectady*, 38 F. Supp. 3d 238, 261 (N.D.N.Y. 2014) (granting summary judgment in abuse of process claim against officers when plaintiff presented no evidence that officers issued criminal complaints against plaintiff to obtain a collateral objective outside the legitimate ends of the process); *Grande v. Keansburg Borough*, Civil Action No. 12-1968 (JAP), 2013 WL 2933794, at *14 (D.N.J. June 13, 2013) (granting motion to dismiss abuse of process claim against officers when plaintiff merely alleged that officers falsely represented the facts of their encounter with plaintiffs to gain an advantage over plaintiffs' constitutional claims or to protect themselves from criminal prosecution or civil liability).[6]

Mrs. Hamstead makes no allegations that Trooper Walker attempted to use the criminal charges against her for an improper purpose outside of the criminal justice process, which the circuit court was powerless to order. Consequently, she has failed to state a claim of abuse of process.

---

[6] Furthermore, if Mrs. Hamstead is relying upon Trooper Walker's testimony during her criminal trial to support this count, he is entitled to absolute witness immunity for that testimony. *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983).

    **4.**       **Trooper Walker Is Entitled to Qualified Immunity from the Battery Count Because There Are No Allegations He Violated Clearly Established Law by Using Force to Arrest Mrs. Hamstead.**

Mrs. Hamstead has not pled sufficient facts to support her battery claim against Trooper Walker. As a police officer making a lawful arrest, Trooper Walker was privileged to use the force necessary to bring Mrs. Hamstead under control. She has not pled facts to show that he used excessive force or that he violated clearly established law. Therefore, this count should also be dismissed.

In order to prevail on a battery claim, a plaintiff must prove: (1) that the defendant acted with the intent to cause a harmful or offensive contact with the plaintiff, or an imminent apprehension of such contact; and (2) a harmful contact directly or indirectly resulted. *W. Va. Fire & Cas. Co. v. Stanley*, 216 W. Va. 40, 51, 602 S.E.2d 483, 494 (2004). Lawful arrests are not within the scope of battery under West Virginia law. *Pegg*, 845 F.3d at 121. Under West Virginia law, a police officer may use the amount of force necessary to bring a detainee under control. *Id.*

Because a police officer is permitted to use force in effecting a detention, a plaintiff asserting an assault or battery charge against a police officer must allege that the force used was excessive. *See Lowe v. Spears*, Civil Action No. 3:06-0647, 2009 WL 1393860, at *6 (S.D. W. Va. May 15, 2009) (finding that claims of assault and battery under West Virginia law could not survive without evidence that officer used an excessive amount of force); *White v. Town of Chapel Hill*, 899 F. Supp. 1428, 1437 (M.D.N.C. 1995) (granting police officers summary judgment on battery claim when plaintiff did not present any evidence that officers' use of force was unreasonable).

Mrs. Hamstead does not allege sufficient facts to overcome Trooper Walker's privilege. Although she claims that he used "excessive force" (Am. Compl. ¶¶ 43, 46), this is just an unsupported legal conclusion, not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 679. The facts shown in documents referred to in the Amended Complaint show otherwise. The State Police

investigated Trooper Walker's actions and found that he acted reasonably and complied with policy. Ex. 7. Every witness that gave a statement to the State Police investigator said that Mrs. Hamstead was resisting arrest and that Trooper Walker acted professionally and reasonably. *Id.*; Exs. 1-3, 6. Finally, Magistrate Senseney found Mrs. Hamstead guilty of obstructing an officer and disorderly conduct. Ex. 8. Even accepting as true Mrs. Hamstead's factual allegations as to what Trooper Walker actually did to bring her under control and handcuff her (Am. Compl. ¶ 42), she has not pled any facts to show that those actions amounted to excessive force, given that she was engaged in disorderly conduct and obstructing an officer, as found by the Magistrate Court. Mrs. Hamstead suffered only an abrasion of her knees and was not hospitalized, having suffered only a "possible" muscle tear to her left arm. *Id.* at ¶¶ 42, 56. "An efficient, lawful arrest of a resisting suspect that causes the suspect to suffer only de minimis injuries does not constitute excessive force." *Pegg*, 845 F.3d at 120.   Therefore, Trooper Walker is entitled to qualified immunity for his discretionary act of arresting Mrs. Hamstead, and she has not identified any clearly established law that he violated by using the force necessary to bring her under control and effect the arrest. Syl. Pts. 10-11, *A.B.*, 234 W. Va. 492, 766 S.E.2d 751.

Trooper Walker was permitted to use the force necessary to effect Mrs. Hamstead's arrest. She has not pled facts to show that he used excessive force or that he violated any clearly established law by his use of force. Therefore, Trooper Walker is entitled to immunity from the battery claim, and the Court should also dismiss this count.

### 5.    Mrs. Hamstead Has Not Pled a Negligence Cause of Action.

The Court should also dismiss Mrs. Hamstead's negligence count. She has not identified a duty Defendants purportedly breached. Moreover, all the allegations against Trooper Walker are of willful, intentional conduct, not negligence.

The elements of a negligence claim are well-established. "In a negligence suit, a plaintiff is required to show four basic elements: duty, breach, causation, and damages." *Hersh v. E-T Enterprises, Ltd. P'ship*, 232 W. Va. 305, 310, 752 S.E.2d 336, 341 (2013).

Here, Mrs. Hamstead does not identify the duty that was supposedly breached. She merely alleges that "Defendants specifically owed Plaintiff a duty of reasonable care." Am. Compl. ¶ 96. Without identifying any specific duty owed to her or explaining how any Defendant breached that duty, Mrs. Hamstead has not sufficiently pled a negligence claim under *Twombly* and *Iqbal*. *Harper v. Ballard*, Civil Action No. 2:112-cv-04751, 2015 WL 4136017, at * 10 (N.D.W. Va. July 8, 2015); *Brooks v. Branch Banking & Trust Co.*, 107 F. Supp. 3d 1290, 1303 (N.D. Ga. 2015) (finding that plaintiff did not state claim for negligence when she did not allege any specific duty was owed to her by defendant).

In addition, all the allegations in the Amended Complaint are that Trooper Walker engaged in intentional conduct in arresting, charging, and maliciously prosecuting Mrs. Hamstead. Mrs. Hamstead pleads in the alternative that Defendants engaged in negligent conduct, citing to specific allegations in the Amended Complaint. Am. Compl. ¶ 97. But all of the allegations cited concern intentional conduct by Trooper Walker, including that he acted "deliberately" and "intentionally" (*id.* at ¶ 40); "falsely" (*id.* at ¶ 52); "spitefully" and "meanly" (*id.* at ¶ 61); and "maliciously" and "knowingly" (*id.* at ¶ 78). Mrs. Hamstead alleges that Defendants engaged in a conspiracy. *Id.* at ¶¶ 41, 46, 56, 78. Yet, there cannot be a negligent conspiracy, as an essential element of the claim is that each member of the alleged conspiracy shared the same conspiratorial objective and mutual agreement. *Leonard v. Starkey*, No. 1:14-CV-42, 2017 WL 354851, at *7 (N.D.W. Va. Jan. 24, 2017).[7] Similarly, in support of her negligence count, Mrs. Hamstead refers back to her allegation

---

[7] Although Mrs. Hamstead does not expressly bring a separate count of civil conspiracy, should the Court liberally construe the Amended Complaint's numerous references to a conspiracy as pleading such a count, the Court should dismiss the claim because Mrs. Hamstead pleads no facts to make a civil conspiracy plausible. Instead, she merely makes unsupported allegations that unspecified Defendants "conspired" to

that Trooper Walker committed battery. *Id.* at ¶ 90. Yet, intent is an essential element of a battery claim. *Stanley*, *supra*.

"Negligence and wilfulness are mutually exclusive terms [.]" *Stone v. Rudolph*, 127 W. Va. 335, 32 S.E.2d 742, 748 (1944); *see also Stanley*, 216 W. Va. at 54, 602 S.E.2d 497 (noting that use of the term "negligent" does not change allegations that describe intentional conduct). Mrs. Hamstead cannot recast her allegations of intentional conduct as negligence.

Because Mrs. Hamstead fails to plead the elements of a negligence claim, her negligence count against Trooper Walker should also be dismissed.

### 6.   Mrs. Hamstead Has Not Pled Sufficient Facts to Support an Outrage Claim.

Mrs. Hamstead has not pled sufficient facts to support her claim of outrage. Specifically, she has not pled facts to show outrageous conduct or that she suffered emotional distress so severe that a reasonable person could not be expected to endure it. For this reason, the Court should dismiss her outrage claim.

Mrs. Hamstead brings a claim of "Negligent or Intentional Infliction of Emotional Distress/Tort of Outrage." Am. Compl. at 24. The tort of intentional infliction of emotional distress, sometimes referred to as the tort of outrage, is recognized in West Virginia. *Travis v. Alcon Laboratories, Inc.*, 202 W. Va. 369, 374, 504 S.E.2d 419, 425 (1998).[8] A plaintiff must prove four elements in order to prevail in an outrage claim:

> It must be shown:   (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or

---

harm her in various ways. These are precisely the sort of allegations that the Supreme Court has held are insufficient to defeat a Rule 12(b)(6) motion. *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007) ("[A] bare assertion of conspiracy will not suffice."); *Tucker v. Thomas*, 853 F. Supp. 2d 576, 594 (N.D.W. Va. 2012) (dismissing civil conspiracy claim when plaintiffs merely alleged defendants engaged in a civil conspiracy but did not offer any factual support for the statement).

[8] "Outrage" does not refer to a negligent infliction of emotional distress claim. Morevoer, as set forth in Section III.B.5, the allegations in the Amended Complaint are of intentional conduct, not negligent acts.

> substantially certain emotional distress would result from his
> conduct; (3) that the actions of the defendant caused the plaintiff to
> suffer emotional distress; and, (4) that the emotional distress
> suffered by the plaintiff was so severe that no reasonable person
> could be expected to endure it.

*Id.* at Syl. Pt. 3. The trial court's role is to first determine, as a matter of law, whether the

defendant's conduct may reasonably be considered extreme and outrageous. *Id.* at Syl. Pt. 4.

In order to be considered "extreme" or "outrageous," a defendant's conduct "'must be

more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable

conduct.'" *Id.* at 375, 504 S.E.2d at 425 (quoting *Grandchamp v. United Air Lines, Inc.*, 854 F.2d

381, 383 (10th Cir. 1988)). "It is difficult to overstate the high burden of proof required to sustain

a tort claim for intentional infliction of emotional distress/outrage." *Pegg*, 845 F.3d at 122.

"Indeed, few courts have found that a plaintiff has met the 'extreme and outrageous' standard

under West Virginia law." *Garrett v. Viacom, Inc.*, No. Civ.A. 1:03CV22, 2003 WL 22740917,

at *4 (N.D.W. Va. Aug. 27, 2003) (citing cases).

Mrs. Hamstead fails to plead facts sufficient to support the first and fourth elements of this

claim. Mrs. Hamstead does not plead facts that, if true, could reasonably amount to outrageous

conduct by Trooper Walker. Indeed, most of the allegations against Trooper Walker are that he

carried out a lawful arrest of Mrs. Hamstead. These allegations are not sufficient to sustain an

outrage claim. *See Pegg*, 845 F.3d at 122 (noting that outrage requires a higher bar than battery and

finding that lawful arrest without excessive force did not constitute outrageous conduct); *Lowe*,

2009 WL 1393860, at *6 (same); *White*, 899 F. Supp. at 1438 (finding that police officers taking

plaintiff to the ground and securing him with handcuffs could not sustain a claim for intentional

infliction of emotional distress).

Similarly, Mrs. Hamstead's other allegations, accepted as true for this Motion, do not state

what could reasonably be considered outrageous conduct. Mrs. Hamstead alleges that Trooper

Walker drove her to the hospital without her seat belt buckled, advised her not to "show [her] ass"

at the hospital, subjected her to rough car rides, played loud sexually oriented music while in the cruiser, touched her knee, made her sit on a metal chair, "sang sex songs," ate food, and "made strange noises behind his desk." Am. Compl. ¶¶ 53, 63. None of these activities rise to the level that courts have found to constitute outrageous conduct. Indeed, conduct far more egregious has been found insufficient to state a claim of outrage. *See Suddreth v. Maurices Inc.*, Civil Action No. 5:11-cv-00389, 2012 WL 275393, at \*5 (S.D.W. Va. Jan. 31, 2012) (collecting cases); *compare Penn v. Citizens Telecom Servs. Co., LLC*, 999 F. Supp. 2d 888, 905-06 (S.D.W. Va. 2014) (finding as a matter of law that defendant's comment that he would like to put his face in plaintiff's breasts and four other alleged instances of inappropriate behavior could not reasonably be considered so extreme and outrageous as to constitute intentional infliction of emotional distress), *with Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472-73 (4th Cir. 1999) (finding allegation that teacher intentionally humiliated student she knew suffered from depression sufficient to state an outrage claim) *and Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 136-37, 523 S.E.2d 826, 833 (2000) (finding allegation that defendant knowingly failed to inform plaintiff she was exposed to HIV stated an outrage claim).

Yet, even if Mrs. Hamstead has pled sufficient facts to meet the first element of an outrage claim, she has not pled sufficient facts to meet the fourth element—that she suffered emotional distress so severe that no reasonable person could be expected to endure it. Instead, Mrs. Hamstead merely makes an unsupported conclusory allegation that she suffered from extreme emotional distress as a result of Defendants' actions. Am. Compl. ¶ 101. This pleading is merely a "formulaic recitation of the elements," rather than facts supporting all elements of the cause of action. *Twombly*, 550 U.S. at 555; *Patrick v. PHH Mortg. Corp.*, 937 F. Supp. 2d 773, 791 (N.D. W. Va. 2013) ("Although Plaintiffs state in a conclusory fashion that they suffered extreme emotional distress that no reasonable person could endure, they plead no facts describing such distress, any physical, mental, or emotional injuries, any treatment, or the impact such suffering has had on their

lives . . . : Plaintiffs' legal conclusions and labels are insufficient to state a claim under Rule 8(a) of the Federal Rules of Civil Procedure.").

Because Mrs. Hamstead has failed to plead sufficient facts to support her outrage claim, the Court should dismiss this count against Trooper Walker.

### 7.   There Is No Civil Cause of Action for Obstruction of Justice.

Mrs. Hamstead also brings a claim styled, "Obstruction of Justice." Am. Compl. at 27. This is not a recognized civil cause of action and should therefore be dismissed.

In her fifteenth count, Mrs. Hamstead alleges that Trooper Walker and the State Police obstructed justice by refusing to investigate claims that an unknown person purportedly moved Mrs. Hamstead's car to create skid marks in the gravel of the APU parking lot and failed to watch video provided by Mrs. Hamstead's counsel, which supposedly showed someone leaving Mrs. Hamstead's car after moving it. *Id.* at ¶¶ 109-10.

Even if Mrs. Hamstead's factual allegations are accepted as true, they fail to state a civil cause of action. "Numerous courts . . . have held that . . . obstruction of justice [is a criminal act], and therefore, do[es] not give rise to a civil cause of action." *Miller v. Jack*, Civil Action No. 1:06cv64, 2007 WL 1169179, at *2 (N.D.W. Va. Apr. 19, 2017). Because obstruction of justice is not a recognized civil cause of action, the Court should dismiss this count, as well.

### 8.   If the Court Determines Obstruction of Justice Is a Viable Cause of Action, Mrs. Hamstead Does Not Allege That Trooper Walker Obstructed Justice.

As discussed above, numerous courts, including this Court, have held that obstruction of justice does not give rise to a civil cause of action. Nevertheless, should the Court hold that, under the facts of this case, Mrs. Hamstead's obstruction of justice claim is recognized, the Court should still dismiss the claim because Mrs. Hamstead does not allege facts to show that Trooper Walker obstructed justice.

Mrs. Hamstead alleges that Trooper Walker refused to investigate claims that someone moved her car and did not watch a video that was provided by her counsel. Am. Compl. ¶ 110. She characterizes these omissions as "conceal[ing] exculpatory evidence." *Id.* at ¶ 112. Even if the factual allegations were true, however, they would not present a viable claim.

These allegations primarily relate to the destruction of property charge against Mrs. Hamstead—that someone moved Mrs. Hamstead's car and produced the skid marks in the gravel. *Id.* at ¶ 109. The evidence supposedly concealed could not have been material to this charge, as Mrs. Hamstead was found not guilty of destruction of property. *Id.* at ¶ 72; Ex. 8. Because the evidence allegedly "concealed" was not material to Mrs. Hamstead's defense, its concealment could not have damaged her. *See Spicer v. Roxbury Corr. Inst.*, 194 F.3d 547, 555 (4th Cir. 1999) (noting that among the essential components of a *Brady* violation, which requires the state to disclose exculpatory evidence to a criminal defendant, is that the withheld evidence must be material).

To the extent the obstruction of justice count applies to the two pending charges, there are simply no allegations that Trooper Walker concealed exculpatory evidence. Mrs. Hamstead's counsel provided the video at issue to the state; therefore, her counsel had the same information the state did. Am. Compl. ¶ 51. Instead, Mrs. Hamstead's allegation is simply that Trooper Walker did not investigate the video to determine who was depicted exiting Mrs. Hamstead's car. *Id.* at ¶ 110. Thus, Mrs. Hamstead is *not* alleging that Trooper Walker participated in withholding evidence that was in his possession—the identity of the "mystery person" who purportedly moved Mrs. Hamstead's car—but rather that he did not investigate this person's identity on Mrs. Hamstead's behalf. *Id.* at ¶¶ 114-15.

Even accepting the facts pled in the Complaint as true, Trooper Walker did not conceal exculpatory evidence. "Suppressed evidence is information which had been known to the prosecution but unknown to the defense." *Spicer*, 194 F.3d at 557 (internal quotation and citation

omitted). Here, in contrast, the allegations are that Mrs. Hamstead's counsel provided a copy of the video to the prosecution, but neither party identified who the "mystery person" was. "The *Brady* rule is not intended to displace the adversary system as the primary means by which truth is uncovered[.]" *Spicer*, 194 F.3d at 555 (internal quotation and citation omitted). Therefore, there is no duty for the state to investigate for exculpatory evidence. *Id.* at 567 (King, J., dissenting) ("*Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess.") (internal quotation and citation omitted); *Weingarten v. United States*, 700 Fed. App'x 43, 46 (2d Cir. 2017) (finding that allegations that government did not fully investigate possibly exculpatory information did not state a *Brady* violation).

Thus, even should the Court find that Mrs. Hamstead's "Obstruction of Justice" count states a recognized claim, it should nonetheless dismiss the count because Mrs. Hamstead's allegations that Trooper Walker failed to view a video provided by Mrs. Hamstead's counsel fails to state a claim related to obstruction of justice. [9]

### C.    Mrs. Hamstead Fails to State a Claim Against the West Virginia State Police

In her Amended Complaint, Mrs. Hamstead makes very few allegations that directly concern the State Police. Instead, she lumps all Defendants together and attempts to impose liability on them all in the aggregate. This is not permitted. To the extent Mrs. Hamstead makes allegations directly concerning the State Police, she either fails to state a claim, or the State Police is entitled to qualified immunity from those claims.

---

[9] Should the Court determine both that Mrs. Hamstead has stated a recognized claim for "Obstruction of Justice" and pled facts to support such a claim, to the extent the purported claim involves Mrs. Hamstead's pending charges for disorderly conduct and obstructing an officer, the Court should nevertheless dismiss the claim under *Younger* abstention.

     **1.**     **Except for the Counts of Respondeat Superior and Negligent Hiring, Training, and Retention, Mrs. Hamstead States No Claim Against the State Police.**

For the most part, Mrs. Hamstead makes no allegations specifically addressed to the State Police. Instead, she claims all "Defendants" are liable to her under various legal theories. This is impermissible; a plaintiff cannot state a claim without factual allegations specific to a particular defendant. Therefore, all counts against the State Police except for Respondeat Superior and Negligent, Hiring, Training, and Supervision (discussed below) should be dismissed for this reason.

A plaintiff "cannot assemble some collection of defendants and then make vague non-specific allegations against all of them as a group." *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015). If a plaintiff fails to allege particular facts against a particular defendant, that defendant should be dismissed. *Id.*

In the Amended Complaint, the only allegations Mrs. Hamstead makes regarding the State Police (other than those concerning Trooper Walker and those addressed below under the respondeat superior and negligent hiring, training, and supervision counts) are that an "internal investigation team" of two troopers arrived at the hospital while Mrs. Hamstead was being seen and that Trooper Walker purportedly violated the State Police's policy on the use of body and vehicle cameras. Am. Compl. ¶¶ 62, 65. Neither of these factual allegations supports the counts against the State Police. Additionally, Mrs. Hamstead alleges that the State Police obstructed justice by "conceal[ing] . . . exculpatory evidence." *Id.* at ¶ 112. Yet, all the factual allegations about the purported concealing of exculpatory evidence relate to Trooper Walker's alleged failure to watch a video provided by Mrs. Hamstead's counsel. *Id.* at 110-16.

In sum, Mrs. Hamstead makes no factual allegations concerning the State Police that could support the Malicious Prosecution, "Void Disorderly Conduct and Obstruction Charges," Battery,

Negligence, Outrage, or "Obstruction of Justice" counts.[10] Consequently, and in addition to the reasons set forth above as to Trooper Walker, these counts against the State Police should be dismissed.

### 2. The State Police Is Entitled to Qualified Immunity from Mrs. Hamstead's Respondeat Superior Claim.

Mrs. Hamstead's Respondeat Superior count against the State Police should be dismissed. To the extent Mrs. Hamstead claims that the State Police is vicariously liable for violations of state law by Trooper Walker, the State Police is entitled to qualified immunity because Mrs. Hamstead does not allege that the Trooper Walker violated any clearly established law.

The West Virginia Supreme Court has established the analysis courts are to use when determining whether a state agency is entitled to qualified immunity. First, a court is to determine whether the acts giving rise to the claim involve legislative, judicial, executive, or administrative policy-making acts, or whether they involve discretionary functions. Syl. Pt. 10, *A.B.*, 234 W. Va. 492, 766 S.E.2d 751. Where, as here, the acts involve discretionary functions, the burden shifts to the plaintiff to demonstrate that "such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive[.]" *Id.* at Syl. Pt. 11. Absent such a showing, the state agency is immune from liability. *Id.* A right is "clearly established" for qualified immunity purposes if the contours of the right are sufficiently clear so that a reasonable officer would understand that what he is doing violates the right. *Cox v. Quinn*, 828 F.2d 227, 238 (4th Cir.

---

[10] The counts of Aiding and Abetting Malicious Prosecution and Aiding and Abetting Battery cannot apply to the State Police Defendants because in both counts, other Defendants are accused of aiding and abetting the State Police Defendants. Am. Compl. ¶¶ 86, 94. The State Police cannot be found liable for aiding and abetting their own actions, as aiding and abetting liability only applies when one aids another in tortious conduct. Syl. Pt. 5, *Courtney v. Courtney*, 186 W. Va. 597, 599, 413 S.E.2d 418, 420 (1991).

2016). The right at issue, however, is not defined as a broad general proposition, but rather, in light of the specific context of the case. *Id.*[11]

As discussed in Section III.B.1 above, the acts of Trooper Walker of which Mrs. Hamstead complains all involve the discretionary acts of arresting and charging. Therefore, Mrs. Hamstead must identify clearly established law that Trooper Walker violated. Because she has failed to do so, the respondeat superior claim should be dismissed. *Croaff*, 2017 WL 2172009, at *7.

### 3. The State Police Is Entitled to Qualified Immunity from the Negligent Hiring, Training, and Supervision Claim.

The State Police is entitled to qualified immunity from Mrs. Hamstead's count of negligent hiring, training, and supervision. Mrs. Hamstead's negligent hiring, training, and supervision claim against the State Police is a direct claim, as opposed to the respondeat superior claim, which seeks to impose liability on the State Police for Trooper Walker's alleged acts and omissions. Mrs. Hamstead, however, fails to identify any clearly established law the State Police violated in its hiring, training, and supervision of Trooper Walker.

Under the West Virginia Supreme Court's *A.B.* analysis, the Court must first determine whether the acts giving rise to the claim—in this case, hiring, training, and supervising Trooper Walker—involve discretionary acts. Syl. Pt. 10, *A.B.*, 234 W. Va. 492, 766 S.E.2d 751. The Supreme Court of Appeals finds that the broad categories of hiring, training, and supervision "easily fall with in the category of 'discretionary' governmental functions." *Id.* at 514, 766 S.E.2d at 773.

Mrs. Hamstead, therefore, must show that the State Police violated clearly established statutory or constitutional rights in performing these discretionary functions. *Id.* at Syl. Pt. 11. Although Mrs. Hamstead identifies alleged failures in Trooper Walker's training (Am. Compl. ¶

---

[11] West Virginia courts look to federal qualified immunity cases for guidance. *State v. Chase Sec., Inc.*, 188 W. Va. 356, 360, 424 S.E.2d 591, 595 (1992).

106), she does not identify any clearly established law that the State Police violated in its training of Trooper Walker. To be clear, the question is not whether Trooper Walker violated clearly established law by the acts alleged in the Amended Complaint, but rather what did the State Police fail to do in hiring, training, or supervising Trooper Walker that it was specifically required to do under a clearly established law or right? *Id.* at 516-17, 766 S.E.2d at 775-76. Mrs. Hamstead's failure to identify a clearly established law allegedly violated by the State Police is fatal to her claim. *Id.* at 516, 766 S.E.2d at 775.

Because Mrs. Hamstead has not, and cannot, identify a clearly established law or right that the State Police violated in hiring, training, or supervising Trooper Walker, it is entitled to qualified immunity. Accordingly, the Court should dismiss this count.

## IV. CONCLUSION

At the end of the day, Trooper Walker is facing liability for using the force necessary to arrest the person he was told damaged another party's vehicle and who was resisting arrest. The State Police faces liability, essentially, merely for being Trooper Walker's employer. Yet, the facts pled in the Amended Complaint and shown in documents referred to and relied upon therein cannot establish liability. Mrs. Hamstead's claims necessarily require proof that nine people committed perjury by making false statements in her criminal trial. There are no facts pled to support this far-fetched notion that could nudge her claims across the line from conceivable to plausible. The State Police Defendants should be dismissed from this case either because Mrs. Hamstead fails to state a claim against them or because they are entitled to qualified immunity from the cognizable claims she makes.

WHEREFORE, for the forgoing reasons, Defendants West Virginia State Police and Trooper D.R. Walker respectfully request dismissal from this action and that an award for costs, including any attorney fees, be awarded to them.

Dated this 25th day of June 2018.

Respectfully submitted,

*/s/ Mark G. Jeffries*

Montè L. Williams (WV Bar No. 9526)
STEPTOE & JOHNSON PLLC
P.O. Box 1616
Morgantown, WV   26507-1616
(304) 598-8000
monte.williams@steptoe-johnson.com

Mark G. Jeffries (WV Bar No. 11618)
Katherine M. Moore (WV Bar No. 12787)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330-4500
(304) 933-8000
mark.jeffries@steptoe-johnson.com
katie.moore@steptoe-johnson.com

*Counsel for West Virginia State Police*
*and Trooper D. R. Walker*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**JULIE ANN HAMSTEAD,**

**Plaintiff,**

**v.**                                                           **CIVIL ACTION NO.: 3:18-CV-79**
                                                                **(Honorable Gina M. Groh)**

**WEST VIRGINIA STATE POLICE;**
**TROOPER D. R. WALKER, in his official capacity;**
**CITY OF RANSON, WEST VIRGINIA;**
**SARGEANT KEITH SIGULINSKY, in his official capacity;**
**CITY OF CHARLES TOWN, WEST VIRGINIA;**
**MASTER PATROLMAN JASON NEWLIN,**
**in his official capacity; THE WEST VIRGINIA**
**DIVISION OF HIGHWAYS; RODNEY D. HEDRICK, SR.,**
**in his official capacity; KYLE REED KOPPENHAVER,**
**in his official capacity; A.B., an unknown individual**
**known as the West Virginia Department of Highways'**
**"Muscle Man" on the 2016 Ranson-Charles Town**
**Green Corridor Fairfax Boulevard Project;**
**JEFFERSON CONTRACTING, INC., a corporation;**
**JEFFERSON ASPHALT PRODUCTS COMPANY, a corporation;**
**DALE DEGRAVE; ALLEN SHUTTS; JOHN TIMOTHY MORRIS;**
**WEST VIRGINIA UNIVERSITY HOSPITALS-EAST, INC., dba**
**"Jefferson Medical Center"; KELLY HALBERT, RN;**
**and X, Y, and Z, unknown persons who conspired and/or**
**aided and abetted in the fabrication of false criminal charges**
**against Julie Hamstead,**

**Defendants.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 25thday of June 2018, I filed the foregoing "*Memorandum in Support of Defendants West Virginia State Police and Trooper D. R. Walker's Motion to Dismiss First Amended Complaint*" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Braun A. Hamstead, Esq.
Hamstead & Associates
507 S. Fairfax Blvd.
Charles Town, WV 25414
bhamstead@hamsteadandassociates.com
*Counsel for Plaintiff*

Keith C. Gamble, Esq.
Pullin, Fowler, Flanagan, Brown & Poe
2414 Cranberry Square
Morgantown, WV 26508
(304) 225-2200
kgamble@pffwv.com
*Counsel for Defendants Sgt. Keith Sigulinsky
and City of Ranson, WV*

Duane J. Ruggier, II, Esq.
Pullin, Fowler, Flanagan, Brown & Poe PLLC
James Mark Building
901 Quarrier Street
Charleston, WV 25301
druggier@pffwv.com

Matthew R. Whitler, Esq.
Pullin, Fowler, Flanagan, Brown & Poe, PLLC
261 Aikens Center, Suite 301
Martinsburg, WV   25404
mwhitler@pffwv.com

*Counsel for Defendants Patrolman Jason Newlin
and City of Charles Town, WV*

Edward Levicoff, Esq.
Avrum Levicoff, Esq.
Levicoff Law Firm, P.C.
4 PPG Place, Suite 200
Pittsburgh, PA 15222
elevicoff@levicofflaw.com
alevicoff@levicofflaw.com
*Counsel for Defendants Jefferson Contracting,
Inc.; Jefferson Asphalt Products Co., Inc.;
Dale DeGrave; Allen Shutts; and John Morris*

Alex M. Greenberg, Esq.
Dinsmore & Shohl LLP
215 Don Knotts Blvd., Suite 310
Morgantown, WV 26501
alex.greenberg@dinsmore.com

Jennifer O. Mitchell, Esq.
Dinsmore & Shohl LLP
255 E. Fifth St., Suite 1900
Cincinnati, OH   45202
Jennifer.mitchell@dinsmore.com

Christine S. Vaglienti, Esq.
Asst. VP & Sr. Litigation Counsel
WVU Health System, Inc.
Legal Services
1238 Suncrest Towne Centre
Morgantown, WV   26505
vaglienti@wvumedicine.org

*Counsel for West Virginia University Hospitals-
East, Inc., d/b/a Jefferson Medical Center*

Joseph T. Cramer, Esq.
Shuman, McCuskey & Slicer, PLLC
116 South Stewart Street, Suite 300
Winchester, VA 22601
jcramer@shumanlaw.com

Michael D. Dunham, Esq.
Shuman, McCuskey & Slider, PLLC
116 S. Stewart St., First Floor
Winchester, VA   22601
mdunham@shumanlaw.com

*Counsel for West Virginia Division of Highways
and Rodney D. Hedrick*

*/s/ Katherine M. Moore*
Montè L. Williams (WV Bar No. 9526)
STEPTOE & JOHNSON PLLC
P.O. Box 1616
Morgantown, WV   26507-1616
(304) 598-8000
monte.williams@steptoe-johnson.com

Mark G. Jeffries (WV Bar No. 11618)
Katherine M. Moore (WV Bar No. 12787)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330-4500
(304) 933-8000
mark.jeffries@steptoe-johnson.com
katie.moore@steptoe-johnson.com

*Counsel for West Virginia State Police
and Trooper D. R. Walker*