IN THE UNITED STATES NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG DIVISION

**JULIE ANN HAMSTEAD,**

       **Plaintiff,**

**v.**                        **CIVIL ACTION NO.:**     **3:18-CV-79 (Groh)**

**WEST VIRGINIA STATE POLICE,**
**TROOPER D.R. WALKER, in his official capacity;**
**CITY OF RANSON, WEST VIRGINIA;**
**SARGEANT KEITH SIGULINSKY, in his official capacity;**
**CITY OF CHARLES TOWN, WEST VIRGINIA;**
**MASTER PATROLMAN JASONNEWLIN, in his official capacity;**
**THE WEST VIRGINIA DIVISION OF HIGHWAYS;**
**RODNEY D. HEDRICK, SR., in his official capacity;**
**KYLE REED KOPPENHAVER, in his official capacity;**
**A.B., an unknown individual known as the WVDOH**
**"Muscle Man" on the 2016 Ranson-Charles Town Green Corridor**
**Fairfax Blvd. Project; JEFFERSON CONTRACTING, INC., a**
**Corporation; JEFFERSON ASPHALT PRODUCTS**
**COMPANY, a corporation; DALE DEGRAVE; ALLEN SHUTTS;**
**JOHN TIMOTHY MORRIS; WVU HOSPITALS – East, Inc., d/b/a**
**JEFFERSON MEDICAL CENTER; KELLY HALBERT, RN; and**
**X, Y and Z, unknown persons who conspired and/or aided and**
**abetted in the fabrication of false criminal charges against**
**Julie Hamstead,**

       **Defendants.**

**RODNEY HEDRICK'S AND WEST VIRGINIA DIVISION**
**OF HIGHWAY'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

     **NOW COME** Defendants, The West Virginia Division of Highways ("WVDOH") and

Rodney Hedrick, by counsel, Joseph T. Cramer, Michael D. Dunham, and the law firm of Shuman,

McCuskey, & Slicer, PLLC, and file this Memorandum of Law in Support of their Motion to

Dismiss Plaintiff's First Amended Complaint.

1

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On June 12, 2018, Plaintiff, Julie Hamstead, filed her First Amended Complaint. (Am. Compl. ¶ 1, ECF 30.) The First Amended Complaint alleges the following counts: (1) malicious prosecution; (2) void disorderly conduct and obstruction charges; (3) aiding and abetting malicious prosecution; (4) abuse of process;[1] (5) battery; (6) aiding and abetting battery; (7) negligence; (8) negligent or intentional infliction of emotional distress/tort of outrage; (9) respondeat superior; (10) negligent hiring, training, and supervision; and (11) obstruction of justice.

The genesis of this lawsuit centers around Hamstead's alleged protest of a sidewalk construction project at or near 507 and 509 S. Fairfax Boulevard in Jefferson County, West Virginia, which resulted in the elimination of available parking spaces used by Hamstead. (Id. at ¶¶ 17-18.) On April 18, 2016, Hamstead claims to have observed workers tearing up the sidewalk in front of the Fairfax Boulevard properties that she owned and learned that the historic vehicle access to the properties, and street parking near the properties, would be eliminated. (Id. at ¶ 17.)

On April 21, 2016, Hamstead went to the WVDOH field office in Ranson, West Virginia and met with an engineer to determine whether any changes could be made to the sidewalk construction project. (Id. at ¶ 18.) According to the First Amended Complaint, during that meeting, Hamstead was introduced to the State of West Virginia's "Muscle Man," whom, upon information and belief, was Defendant Kyle Koppenhaver.[2] (Id.) The First Amended Complaint alleges that Hamstead was told that Koppenhaver "was there to ensure that the project was carried out without a hitch." (Id. at ¶¶ 19-24.) The First Amended Complaint characterizes this interaction as

---

[1] Hamstead also brings a count for "past and continuing fraudulent acts and false statements made by defendants." (Am. Compl. at ¶ 81.) This count appears to be further support for Hamstead's claim of abuse of process. (Id.) ("The defendants have continued to perpetrate their false accusations against Plaintiff constituting abuse of process[.]")

[2] Koppenhaver is named as a defendant but has not been served with process.

demonstrating the DOH agents' "expressed intent [ ] to threaten Plaintiff with retaliation should she pursue her protest." (Id. at ¶ 25.)

A few days later, on the afternoon of April 25, 2016, Hamstead parked her Honda Pilot in a private parking lot near the sidewalk construction project. (Id. at ¶¶ 27-29.) She parked next to a work truck owned by Defendant Jefferson Asphalt and operated by Defendant Dale DeGrave. (Id.) She rolled down her window and asked Defendant John Morris, a Jefferson Asphalt employee, if she could ask him a question. (Id. at ¶ 30.) Morris rolled his eyes and began walking toward her vehicle. (Id.) At the same time, the truck operated by DeGrave allegedly drove into the left front driver's door of Hamstead's Honda Pilot. (Id. at ¶ 31.) WVDOH employees –  including Hedrick and Koppenhaver – were not involved in this interaction.

Following the accident, Hamstead walked toward DeGrave's truck, intending to exchange insurance information when three police officers approached them. (Id. at ¶ 34.) At that time, Morris allegedly told the police officers that Hamstead "came in here like a bat outa hell and didn't stop." (Id.) Numerous WVDOH employees were allegedly present, including Hedrick. (Id.) Hamstead immediately protested and attempted to inform the police officers that the work truck operated by DeGrave hit her vehicle, but Defendant Trooper D.R. Walker allegedly told Hamstead to "shut up." (Id. at ¶ 35-36.)

The First Amended Complaint alleges that Hamstead "noticed a familiar WVDOH employee standing behind Trooper Walker, who she recognized as the same individual she had met the week before whom they called 'Muscle Man.'" (Id. at ¶ 37.) Allegedly, Hamstead, believing that "Muscle Man" had witnessed the subject accident, "begged [him] . . . to tell the police the truth," but he "just stared coldly back at Plaintiff while Trooper Walker again screamed, 'shut up.'" (Id. at ¶¶ 37-38.) She then "turned toward a group of WVDOH and Jefferson

Contracting employees who had moved to the center of the parking lot, whereupon Trooper Walker grabbed Plaintiff's right arm, dragged her backward several feet, then spun her around and violently pulled her left arm up over her head and twisted it back and forth." (Id. at ¶ 28.) Walker handcuffed Hamstead and placed her into his police cruiser. (Id. at ¶¶ 40-41.)

According to the First Amended Complaint, Walker then "conspired with an unknown individual to drive Plaintiff's Honda Pilot so as to create skid marks in the gravel." (Id. at ¶¶ 45-46.) This was allegedly done in an attempt to support the "false charge that Plaintiff intentionally caused 'destruction of property,' to Defendant DeGrave's work truck." (Id.) The First Amended Complaint further alleges that "[u]pon information and belief, all or some of the . . . WVDOH employees were present when Plaintiff's vehicle was moved" and that "upon information and belief . . . all of the WVDOH employees knew that Plaintiff had not caused destruction of property to the vehicle driven by Dale DeGrave but failed and refused to inform police[.]" (Id. at ¶¶ 47-48.)

The First Amended Complaint alleges that following Hamstead being placed under arrest, Walker transported her to Jefferson Medical Center at which point he allegedly "conspired with Defendant Kelly Halbert, RN . . . and obtained from [Ms.] Halbert a false statement to the effect that Plaintiff suffered no injuries and that [Plaintiff] was abusive to Trooper Walker while in the hospital." (Id. at ¶¶ 49-64.) The First Amended Complaint alleges that after they left the hospital, Walker engaged in additional acts designed to harass Hamstead.  (Id.) Ultimately, she was charged with destruction of property, disorderly conduct and obstructing an officer. (Id. at ¶¶ 65-74.)

## II.    STANDARD OF REVIEW

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all well-pled facts contained in the complaint as true. Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc, 591 F.3d 250, 255 (4th Cir. 2009).

4

However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). This Court has previously held that "'unwarranted inferences, unreasonable conclusions, [and] arguments'" do not constitute well-pled facts. See Tobia v. Loveland, 2017 U.S. Dist. LEXIS 73806, *5, 2017 WL 2113752 (citing Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009)).

If a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Even though "detailed factual allegations" are not required, a complaint must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. Twombly, 550 U.S. at 555. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id; see also Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

## III.   DISCUSSION

### A.  The First Amended Complaint does not allege facts that show that Hamstead is entitled to any relief against Hedrick or WVDOH.

5

The First Amended Complaint does not articulate facts that demonstrate that Hamstead is entitled to relief from Hedrick or WVDOH under any legal theory. Although the First Amended Complaint provides a vivid factual description, it fails to allege facts sufficient to state all elements of Hamstead's claims asserted against Hedrick and WVDOH. The facts alleged do not state a claim for relief against Hedrick or WVDOH, and the claims asserted against them in the First Amended Complaint should be dismissed for failure to state a claim.

### 1. The First Amended Complaint does not state a claim for malicious prosecution against Hedrick or WVOH.

Hamstead's claim for malicious prosecution against Hedrick and WVDOH – allegedly arising out of the prosecution of Hamstead for destruction of property – should be dismissed because the First Amended Complaint does not allege facts that show that any prosecution of Hamstead was caused or procured by Hedrick or WVDOH.

In an action for malicious prosecution, a plaintiff must show four distinct elements: (1) the prosecution was initiated and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause and (4) that it was malicious. Morton v. Chesapeake & O. Ry., 184 W. Va. 64, 67, 399 S.E.2d 464, 467 (1990). If a plaintiff fails to prove any of these, she cannot recover for malicious prosecution. Id. "[P]rocurement within the meaning of a malicious prosecution suit requires more than just the submission of a case to a prosecutor; it requires that a defendant *assert control* over the pursuit of the prosecution." Norfolk S. Ry. Co. v. Higginbotham, 228 W. Va. 522, 528, 721 S.E.2d 541, 547 (2011) (emphasis added). See also Vinal v. Core, 18 W.Va. 1 (1881) ("[The meaning of procurement is] not that the defendants jointly applied to the justice [of the peace] to issue the warrant against the plaintiff, but that they consulted and advised together, and both participated in the prosecution, which was carried on under their countenance and approval."). Moreover, in

6

Higginbotham, the Supreme Court of Appeals cited favorably an Ohio case for the proposition that "there is no procurement when 'an informer merely provides a statement of his belief of criminal activity and leaves the decision to prosecute entirely to the uncontrolled discretion of the prosecutor.'" Higginbotham, 228 W. Va. 522, 529, 721 S.E.2d at 548 (quoting Robbins v. Fry, 72 Ohio App. 3d 360, 594 N.E.2d 700 (1991)). Higginbotham recognizes that citizens must be given "wide latitude" in reporting incidents to authorities. Higginbotham, 228 W. Va. at 529, 721 S.E.2d at 548 (internal cites omitted).

The First Amended Complaint alleges that Hedrick and other WVDOH employees provided statements to the police. But, statements alone do not support a claim for malicious prosecution. Notably absent from the First Amended Complaint are allegations that Hedrick or other WVDOH employees "asserted control" over or were otherwise involved in the decision to prosecute Hamstead. In fact, the First Amended Complaint repeatedly acknowledges and alleges that the decision to prosecute was left up to and made by law enforcement. (Am. Compl. ¶ 73.) ("Trooper Walker refused to request dismissal of the destruction of property charge and forced Plaintiff to defend the charge at trial even though there was no damage to DeGrave's vehicle[.]"); (Am. Compl. ¶ 74.) ("Arising out of the destruction of property charge, Trooper Walker also charged Plaintiff with disorderly conduct . . . and obstructing an officer[.]"); (Am. Compl. ¶ 78.) ("That Trooper Walker and the other defendant police officers used and continue to use the Prosecuting Attorney as a 'stalking horse' to maliciously pursue false charges against Plaintiff."); (Am. Compl. ¶ 110.) ("[T]he WVSP and Trooper Walker prosecuted the charge of destruction of property and continue to prosecute said remaining charges against Plaintiff[.]")

The First Amended Complaint does not allege facts that show that Hedrick or any other WVDOH employee caused or procured the prosecution for destruction of property against

Hamstead. Per the First Amended Complaint, the defendant police officers provided information to the prosecutor, recommended charges, and the prosecutor made the decision to prosecute. (Am. Compl. ¶ 78.) Hedrick and WVDOH were not involved. Accordingly, Hamstead's malicious prosecution claim asserted against Hedrick and WVDOH should be dismissed for failure to state a claim.

### 2. Hamstead's "void disorderly conduct and obstruction charges" claims are not viable causes of action and are not directed at Hedrick or WVDOH.

Count VI of the First Amended Complaint asserts a claim for "void disorderly conduct and obstruction charges." (See Compl. at ¶¶ 83-84.) It appears that this claim is not directed at any one defendant but rather seeks that the Court void Hamstead's disorderly conduct and obstruction charges. This claim is not a recognized cause of action and should be dismissed.[3]

### 3. The First Amended Complaint does not state a claim for aiding and abetting malicious prosecution against Hedrick or WVDOH.

Count VII of the First Amended Complaint is a claim for "aiding and abetting malicious prosecution." (Compl. ¶¶ 85-87.) This claim is directed at "Defendants Jefferson Contracting and/or Jefferson Asphalt and their employees[.]" (Id. at ¶ 86.) Hamstead claims "Defendants Jefferson Contracting and/or Jefferson Asphalt and their employees enabled, encouraged and assisted the WVSP, Trooper Walker and the remaining Defendants in their malicious prosecution of Plaintiff, as detailed above and incorporated herein." (Id.) To the extent Hamstead's aiding and abetting malicious prosecution claim is directed at Hedrick and WVDOH, it should be dismissed for failure to state a claim because the First Amended Complaint does not allege facts that show that Hedrick or any other WVDOH employee substantially assisted in Hamstead's prosecution.

---

[3] Hedrick and WVDOH also adopt the argument put forth by the West Virginia State Police and Trooper Walker in their Memorandum of Law in response to the First Amended Complaint. See Def. West Virginia State Police and Trooper D.R. Walker's Motion to Dismiss First Amended Complaint at 11. (ECF 39-1.) To the extent that the First Amended Complaint is read to seek equitable relief in the form of declaring the pending state criminal charges against Hamstead "null and void," it should be dismissed under the *Younger* abstention doctrine.

"For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." Syl. Pt. 5 <u>Courtney v. Courtney</u>, 186 W. Va. 597, 599, 413 S.E.2d 418, 420 (1991). <u>See also</u> <u>Price v. Halstead</u>, 177 W. Va. 592, 598, 355 S.E.2d 380, 386 (1987) ("This theory is sometimes termed as aiding and abetting a tort."). However, a defendant may not liable for aiding and abetting if the assistance given is slight. *Estate of Hough by & Through LeMaster v. Estate of Hough by & Through Berkeley County Sheriff*, 205 W. Va. 537, 545-546, 519 S.E.2d 640, 648-649 (1999). In determining whether substantial assistance was provided, a court may consider: (1) the nature of the act encouraged; (2) the amount of assistance given by the defendant; (3) the defendant's presence or absence at the time of the tort; (4) the defendant's relation to the other; and (5) the defendant's state of mind. <u>See</u> <u>id</u>.

The First Amended Complaint is barren of any allegation that Hedrick or any other WVDOH employee had any involvement in the decision to prosecute Hamstead for destruction of property or any other crime. The First Amended Complaint does not allege that Hedrick or any other WVDOH employee encouraged anyone to prosecute Hamstead, provided any assistance in the decision to prosecute Hamstead, or were present when the decision to prosecute Hamstead was made. Accordingly, to the extent asserted against Hedrick and WVDOH, Hamstead's aiding and abetting malicious prosecution claim should be dismissed for failure to state a claim.

### 4. The First Amended Complaint does not state a claim against Hedrick or WVDOH for abuse of process.

An abuse of process claim "consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process." Syl. Pt. 3, <u>Williamson v. Harden</u>, 214 W. Va. 77, 585 S.E.2d 369 (W. Va. 2003) (quoting <u>Preiser</u>

v. MacQueen, 177 W. Va. 273, 352 S.E.2d 22, 28 (W. Va. 1985) (emphasis added). In contrasting abuse of process from malicious prosecution, the Preiser Court noted:

> [a]buse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish. The purpose for which the process is used, once it is issued, is the only thing of importance. . . .

See also Rahmi v. Sovereign Bank N.A., Civil Action No. 3:12-CV-87, 2013 U.S. Dist. LEXIS 13923 at *6 (N.D.W. Va. Feb. 1, 2013). In order to state a claim for abuse of process, a plaintiff must allege an ulterior purpose, and a willful act in the use of the process not proper in the regular conduct of the proceeding. See id. ("Some definite act or threat not authorized by the process, or aimed at any objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.") The improper purpose usually takes the form of coercion to obtain a collateral advantage that is not part of the proceeding; it is this form of extortion, rather than the issuance or any formal use of the process itself, which constitute the tort. Id. Thus, pre-process actions such as providing witness statements or even filing a complaint does not give rise to an abuse of process claim, and failure to allege willful abuse of process after its issuance is fatal to a claim. S. States Coop. Inc. v. I.S.P. Co., Inc., 198 F. Supp. 2d 807, 816 (N.D.W. Va. 2002). The tort of abuse of process is disfavored and therefore is narrowly construed. 1 Am. Jur. 2d *Abuse of Process* § 1.

The First Amended Complaint does not contain allegations that Hedrick or WVDOH were involved in the issuance of legal process.  Likewise, the Amended Complaint does not allege that these defendants used the judicial process for an improper purpose ***after*** Hamstead was arrested and a criminal complaint was filed against her. Even more fatal to Hamstead's claim for abuse of

process against Hedrick and WVDOH is that fact that the First Amended Complaint does not allege that Hedrick or WVDOH engaged in any "definite act or threat" after process was initiated against Hamstead.[4] Accordingly, Hamstead has failed to allege an abuse of process claim upon which relief can be granted.

### 5. The First Amended Complaint does not state a claim against Hedrick or WVDOH for battery.

This Court should dismiss Hamstead's battery claim against Hedrick and WVDOH because the First Amended Complaint does not allege that Hedrick or any WVDOH employee caused a harmful contact with Hamstead to occur. A defendant is liable for battery if he or she acts intending to cause a harmful or offensive contact with a third person, and a harmful contact the third person occurs. W. Va. Fire & Cas. Co. v. Stanley, 216 W. Va. 40, 51, 602 S.E.2d 483, 494 (2004).

The First Amended Complaint blanketly asserts that "other Defendants stood by and watched as Plaintiff was physically abused . . ." and that "Defendants' conduct constitutes battery against Plaintiff." (Compl. ¶¶ 91-92.) The only defendant Hamstead alleges engaged in any contact with her is Walker. The First Amended Complaint lacks any allegation of fact that Hedrick or any other WVDOH employee engaged in any harmful contact with Hamstead, which is an essential element for the tort of battery. Accordingly, this court should dismiss Hamstead's battery claim against Hedrick and WVDOH for failure to state a claim.

### 6. The First Amended Complaint does not state a claim against Hedrick or WVDOH for aiding and abetting battery.

The First Amended Complaint does not allege facts that show that Hedrick or any other WVDOH employee gave substantial assistance to anyone alleged to have committed a battery

---

[4] To the extent Hamstead relies on her assertion that "DOH agents[ ] . . . threaten[ed] [Hamstead] with retaliation should she pursue her protest" (Am. Compl. at ¶ 25), such a claim is time barred. An action for abuse of process must be brought within one year from the time the right to bring the action accrued. Preiser, 177 W. Va. 273, 352 S.E.2d at 23. Further, this alleged "threat" occurred prior to process being issued.

against Hamstead. See Syl. Pt. 5, Courtney, 186 W. Va. At 599, 413 S.E.2d at 420. The allegation that a group of WVDOH employees watched Walker exert physical force on Hamstead does not show that Hedrick or any other WVDOH employee engaged in any act which provided substantial assistance or encouragement to the person alleged to have committed a battery against her. Accordingly, Hamstead's aiding and abetting battery claim against Hedrick and WVDOH should be dismissed for failure to state a claim.

### 7. The First Amended Complaint does not state a claim for negligence against Hedrick or WVDOH.

The First Amended Complaint does not allege facts sufficient to support a claim for negligence against Hedrick or WVDOH. The First Amended Complaint lacks any allegation of fact that shows or suggests that Hedrick or any other WVDOH employee breached any duty owed to Hamstead. Without identifying a specific duty owed to her or explaining how any defendant breached that duty, Hamstead has not sufficiently pled a negligence claim. See Brooks v. Branch Banking & Trust Co., 107 F. Supp. 3d 1290, 1303, (N.D. Ga. 2015) ("Because Plaintiff does not identify a duty Defendant owed to her, she also fails to identify how Defendant breached that duty."). Accordingly, to the extent Hamstead's negligence claim is directed at Hedrick and WVDOH, it should be dismissed for failure to state a claim.[5]

### 8. The First Amended Complaint does not claim for negligent infliction of emotional distress or the tort of outrage against Hedrick or WVDOH.

To the extent directed at Hedrick and WVDOH, Hamstead's claim for intentional infliction of emotional distress and outrage should be dismissed because the First Amended Complaint does

---

[5] Hedrick and WVDOH also adopt the argument put forth by the City of Ranson and Sgt. Sigulinksy in their Memorandum of Law in response to Plaintiff's original Complaint. See Def. City of Ranson and Sgt. Sigulinsky Mem. of Law at 9. (ECF 5.) The First Amended Complaint does not state a claim for negligence because it alleges intentional acts by the defendants. See Kennedy v. Riffle, 2015 U.S. Dist. LEXIS 112052 (N.D.W. Va. Aug. 25, 2015) ("Courts have long distinguished between wanton or willful conduct and mere negligence.").

not allege sufficient facts to show that Hedrick or any WVDOH employee engaged in legally outrageous behavior.

West Virginia recognizes a cause of action for intentional or reckless infliction of emotional distress. Syl. pt. 6 Harless v. First Nat. Bank in Fairmont, 169 W.Va. 673, 289 S.E.2d 692 (1982). In Travis v. Alcon Laboratories, Inc., the West Virginia Supreme Court of Appeals set forth a four-part test by which the "tort of outrage" is proven:

> [I]n order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. [The four elements are]: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

202 W. Va. 369, 375, 504 S.E.2d 419 (1998). To qualify as legally outrageous, a defendant's conduct must be "'more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct.'" Id. (internal citation omitted). While Hamstead has pled some facts detailing WVDOH employees' conduct, including the fact that WVDOH employees allegedly witnessed Walker expert physical force on Hamstead and were aware that Hamstead did not cause destruction of property to the vehicle driven by DeGrave, she has not alleged facts that demonstrate Hedrick or any other WVDOH employee engaged in behavior that qualifies as outrageous for legal purposes. Moreover, the First Amended Complaint does not allege any facts that show that any behavior by Hedrick or any other WVDOH employee caused Hamstead to suffer severe emotional distress. See Patrick v. PHH Mortg. Corp., 937 F. Supp. 2d 773, 791 (N.D.W. Va. March 27, 2013) ("Although Plaintiffs state in a conclusory fashion that

they suffered extreme emotional distress that no reasonable person could endure, they plead no facts describing such distress, any physical, mental, or emotional injuries, any treatment, or the impact such suffering has had on their lives."). Accordingly, Hamstead's claim against Hedrick and WVDOH for intentional infliction of emotional distress and outrage should be dismissed.

### 9. Hamstead does not direct her respondeat superior or negligent training, hiring and supervision claims at WVDOH.

Count XIII of the First Amended Complaint is a claim for respondeat superior. (Id. at ¶¶ 102-103.) It is asserted against Defendants, "WVSP, the City of Charles Town and the City of Ranson[.]" (Id. at ¶ 103.) Hamstead alleges that the "WVSP, the City of Charles Town and the City of Ranson . . .  authority to formulate, implement, and administer the policies, customs, and practices of their employees . . . subjects the WVSP, the City of Charles Town and the City of Ranson to vicarious liability." (Id.) Count XIV of the First Amended Complaint is for negligent training hiring and supervision and is also directed at the WVSP, the City of Charles Town and the City of Ranson. (Id. at ¶¶ 104-107.)

### 10. Hamstead's "obstruction of justice claim" is not a viable cause of action and is not directed at Hedrick or WVDOH.

Count XV of the First Amended Complaint is for obstruction of justice and is not directed at Hedrick or WVDOH. (Id. at ¶¶ 108-117.) To the extent the claim is directed at Hedrick and WVDOH, it should be dismissed because there is no civil cause of action for obstruction of justice. See Miller v. Jack, 2007 U.S. Dist. LEXIS 50685, *12 (N.D.W. Va. July 12, 2007) (recognizing that obstruction of justice is a criminal act which must be pursued through criminal prosecution).

## IV.    CONCLUSION

**WHEREFORE**, Defendants, Rodney Hedrick and The West Virginia Division of Highways, request that this Court grant their Motion to Dismiss the First Amended Complaint, dismiss, with

prejudice, all of Plaintiff's claims against these defendants, and grant these defendants any additional or further relief this Court deems just and proper.

**WEST VIRGINIA DIVISION OF HIGHWAYS AND RODNEY HEDRICK**
**By Counsel**

/s/ Joseph T. Cramer
Joseph T. Cramer (WVSB No. 11455)
Michael D. Dunham (WVSB No. 12533)
SHUMAN, MCCUSKEY & SLICER, PLLC
116 South Stewart St. Suite 100
Winchester, Virginia 22601
Phone: 540-486-4195

## IN THE UNITED STATES NORTHERN DISTRICT OF WEST VIRGINIA
## MARTINSBURG DIVISION

**JULIE ANN HAMSTEAD,**

        **Plaintiff,**

**v.**                                    **CIVIL ACTION NO.:       3:18-CV-79 (Groh)**

**WEST VIRGINIA STATE POLICE,**
**TROOPER D.R. WALKER, in his official capacity;**
**CITY OF RANSON, WEST VIRGINIA;**
**SARGEANT KEITH SIGULINSKY, in his official capacity;**
**CITY OF CHARLES TOWN, WEST VIRGINIA;**
**MASTER PATROLMAN JASONNEWLIN, in his official capacity;**
**THE WEST VIRGINIA DIVISION OF HIGHWAYS;**
**RODNEY D. HEDRICK, SR., in his official capacity;**
**KYLE REED KOPPENHAVER, in his official capacity;**
**A.B., an unknown individual known as the WVDOH**
**"Muscle Man" on the 2016 Ranson-Charles Town Green Corridor**
**Fairfax Blvd. Project; JEFFERSON CONTRACTING, INC., a**
**Corporation; JEFFERSON ASPHALT PRODUCTS**
**COMPANY, a corporation; DALE DEGRAVE; ALLEN SHUTTS;**
**JOHN TIMOTHY MORRIS; WVU HOSPITALS – East, Inc., d/b/a**
**JEFFERSON MEDICAL CENTER; KELLY HALBERT, RN; and**
**X, Y and Z, unknown persons who conspired and/or aided and**
**abetted in the fabrication of false criminal charges against**
**Julie Hamstead,**

        **Defendants.**

### CERTIFICATE OF SERVICE

The undersigned, counsel for defendants, Rodney D. Hedrick, Sr. and West Virginia

Division of Highways, hereby certifies that on this 26th day of June, 2018 I presented the foregoing

*Rodney Hedrick's and West Virginia Division of Highway's Memorandum of Law in Support of*

*Motion to Dismiss Plaintiff's First Amended Complaint* the Clerk of the Court for filing and

uploading to the CM/ECF system and the Clerk will notify counsel as follows:

16

Braun A. Hamstead, Esquire
Hamstead & Associates
113 Fairfax Blvd.
Charles Town, WV 25414
*Counsel for Plaintiff*

Keith C. Gamble, Esquire
PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC
2414 Cranberry Square
Morgantown, WV 26508
*Counsel for Defendants Sgt. Sigulinsky*
*and the City of Ranson, WV*

Duane J. Ruggier, II, Esquire
Pullin, Fowler, Flanagan, Brown & Poe, PLLC
James Mark Building
901 Quanier Street
Charleston, WV 25301
*Counsel for Defendants Jason Newlin*
*and the City of Charles Town, WV*

Edward Levicoff
Levicoff Law Firm, P.C.,
4 PPG Place, Suite 200
Pittsburgh, PA 15222
*Counsel for Defendants Jefferson Contracting,*
*Inc.; Jefferson Asphalt Products Co., Inc.;*
*Dale DeGrave; Allen Shutts; and John Morris*

Alex M Greenberg, Esq
Dinsmore & Shohl, LLP
215 Don Knotts Blvd., Suite 310
Morgantown, WV 26501
*Counsel for Defendant West Virginia*
*University Hospitals-East Inc.*

Monté L. Williams, Esq. (WVSB #9526)
Mark G. Jeffries, Esq. (WVSB #11618)
Steptoe & Johnson PLLC
1085 Van Voorhis Road, Suite 400
P.O. Box 1616
Morgantown, WV 26507-1616
*Counsel for West Virginia State Police*
*and Trooper D. R. Walker*

West Virginia University Hospitals – East, Inc.
c/o Jennifer Mitchell
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202

/s/ Joseph T. Cramer
Joseph T. Cramer (WVSB 11455)
Michael D. Dunham, Esq. (WVSB 12533)