IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**JULIE ANN HAMSTEAD,**

    Plaintiff,

v.                                CIVIL ACTION NO.: 3:18-CV-79
                                      (GROH)

**WEST VIRGINIA STATE POLICE,
TROOPER D.R. WALKER, in his official capacity,
THE CITY OF RANSON, WEST VIRGINIA,
SARGEANT KEITH SIGULINSKY, in his official capacity,
CITY OF CHARLES TOWN, WEST VIRGINIA,
MASTER PATROLMAN JASON NEWLIN, in his official capacity,
THE WEST VIRGINIA DIVISION OF HIGHWAYS,
RODNEY D. HEDRICK, SR., in his official capacity,
KYLE REED KOPPENHAVER, in his official capacity,
AB, an unknown individual known as the West Virginia
Department of Highways "Muscle Man" on the 2016
Ranson-Charles Town Green Corridor Fairfax Boulevard Project,
JEFFERSON CONTRACTING, INC., a corporation,
JEFFERSON ASPHALT PRODUCTS COMPANY, a corporation,
DALE DEGRAVE, ALLEN SHUTTS, JOHN TIMOTHY MORRIS,
WEST VIRGINIA UNIVERSITY HOSPITALS-EAST, INC.,
d/b/a Jefferson Medical Center, KELLY HALBERT, RN, and
X, Y, and Z, unknown persons who conspired and/or
aided and abetted in the fabrication of false criminal
charges against Julie Hamstead,**

    Defendants.

## ORDER GRANTING WEST VIRGINIA STATE POLICE AND TROOPER WALKER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Currently before the Court is a Motion to Dismiss [ECF No. 40] filed by the West Virginia State Police and Trooper D. R. Walker on June 25, 2018. Julie Ann Hamstead filed a Response on July 7, 2018. ECF No. 61. On July 16, 2018, Trooper Walker and

the State Police filed a Reply.  ECF No. 69.  Mrs. Hamstead also filed a Motion to Strike the Defendants' Memorandum on July 5, 2018.  ECF No. 57.  Defendants filed a Response [ECF No. 65] on July 16, 2018, and Mrs. Hamstead filed a Reply on July 20, 2018. ECF No. 74.  Upon thorough review and thoughtful consideration of the filings and relevant legal precedent, the Court finds that this matter is ripe for adjudication.

## I. BACKGROUND

On May 18, 2018, this civil action was removed from the Circuit Court of Jefferson County, West Virginia, to this Court.  ECF No. 1.  Julie Ann Hamstead ("Plaintiff") filed an amended complaint on June 12, 2018.  ECF No. 30.  Therein, the Plaintiff named multiple Defendants, including the West Virginia State Police ("WVSP") and Trooper D. R. Walker ("Tpr. Walker").

The incident underlying all of the Plaintiff's claims occurred shortly after 4:00 p.m. on April 25, 2016, in Charles Town, West Virginia.  See id. at 7.  The Plaintiff alleges that while attempting to speak with some Jefferson Asphalt employees who were working on a sidewalk project in front of property owned by the Plaintiff, one of the employees "drove into the left front driver's door of Plaintiff's Honda Pilot with his right front tire."  Id. Thereafter, various police officers arrived; the Jefferson Asphalt employees accused the Plaintiff of speeding and crashing into the work truck; Tpr. Walker told her to "shut up"; a group of West Virginia Department of Highways ("WVDOH") employees, Jefferson Asphalt employees and police officers (Sigulinsky and Newlin) conspired "in the center of the parking lot . . . to have Plaintiff falsely charged with destruction of property . . . ."  Id. at 9.

Most relevant to the instant motion, the Plaintiff avers that after Tpr. Walker told

her to "shut up" multiple times, he grabbed her right arm, dragged her several feet, spun her around, twisted and forced her left arm over her head and behind her body, pushed her into a work truck, broke her eyeglasses, and slammed her to the ground. See id.

Thereafter, Tpr. Walker allegedly took part in an elaborate conspiracy and cover up, including manufacturing evidence implicating the Plaintiff was at fault in the underlying motor vehicle accident[1] so that he could charge the Plaintiff with destruction of property, justifying her arrest.

After Tpr. Walker's allegedly excessive use of force and unlawful arrest of the Plaintiff, he exposed her to "blaring hard rock music" in his cruiser—with the windows closed. Id. at 10. Trooper Walker transported the Plaintiff to Jefferson Medical Center ("JMC") for injuries she sustained during her arrest. At JMC, Tpr. Walker allegedly conspired with a nurse-Defendant, Kelly Halbert, RN, "to violate Plaintiff's rights under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and obtained from Kelly Halbert a false statement to the effect that Plaintiff had suffered no injuries and that she was abusive to Trooper Walker while in the hospital." Id. at 13.

The Plaintiff further alleged that Tpr. Walker intentionally delayed her arraignment and "meanly insisted that . . . Plaintiff was going to jail." Id. at 14. Trooper walker allegedly then, "with malevolent intent to sexually harass and further physically and emotionally injure plaintiff," subjected her to "rough car rides"; reckless driving; loud, sexually oriented music; and "touched her knee[.]" Id. The Plaintiff was also allegedly forced to sit on a

---

[1] The Plaintiff alleges that the group of individuals present at the scene of this incident conspired to make it appear that she was at fault, and an unknown individual drove her car to create skid marks in the gravel parking lot—making it appear as though she was speeding into the parking lot, as the witnesses claimed. Interestingly, the Plaintiff claims that another unknown "co-conspirator defendant[ ] moved a red dump truck . . . directly beside Trooper Walker's cruiser to block Plaintiff's view of the parking lot . . . to enable false evidence to be produced[.]"

cold, metal chair while Tpr. Walker "sang sex songs, ate food and made strange noises behind his desk[.]" Id. at 15.  The Plaintiff was arraigned and released on her own recognizance shortly after midnight—approximately eight hours after the incident began.

According to the Plaintiff's complaint, Tpr. Walker "falsely and maliciously brought the disorderly conduct charge and the obstruction charge against Plaintiff in an attempt to shield himself from responsibility for his excessive use of force and to justify Plaintiff's arrest." Id. at 17.  The Plaintiff further alleges that Tpr. Walker continued to conspire with the other Defendants to pursue false charges against her.  Indeed, the Plaintiff claims that

> Trooper Walker and all defendants jointly conspired to carry out and did carry out the above-mentioned actions in retaliation for Plaintiff's protest over the unvetted and unlawful State Project and for the purpose of intimidating and coercing Plaintiff into a guilty plea on false charges made against her and to aid and abet Walker in carrying out his malicious plan to ensure that Plaintiff would spend one night in jail, which is the condition Trooper Walker is accustomed to carrying out.

Id. at 19.  Thus, the Plaintiff claims that the "Defendant police officers and all other defendants aided, abetted and conspired with Trooper Walker to carry out Walker's malicious scheme to overcharge Plaintiff . . . ." Id.

## II. THE PLAINTIFF'S MOTION TO STRIKE

On July 5, 2018, the Plaintiff filed a Motion to Strike the Defendants' memorandum accompanying their motion to dismiss.  ECF No. 57.  Therein, the Plaintiff avers that the Defendants' entire memorandum should be stricken because the attached exhibits are improper, and numerous references are made to these exhibits throughout the memorandum.  The WVSP and Tpr. Walker filed a Memorandum in Opposition on July 13, 2018.  ECF No. 65.  The Plaintiff filed a Reply on July 27, 2018.  ECF No. 78.

The Fourth Circuit's decision in Goines v. Cmty. Servs. Bd., 822 F.3d 159 (4th Cir. 2016), is instructive. In Goines, the Court found that the Plaintiff did not adopt the contents of an incident report as true "simply by relying on the Report for some of the facts alleged in his complaint." Id. at 168. "Indeed, if attached documents were always treated as if their contents were adopted by the plaintiff, a libel plaintiff would plead himself out of court simply by attaching the libelous writing to his complaint." Id. at 167 (citing Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 674 (2d Cir. 1995)).

Here, Tpr. Walker and the WVSP attached nine exhibits to their memorandum in support of their motion to dismiss first amended complaint. See ECF Nos. 40-2–10. Exhibits one, two, three, and six are statements from other named Defendants in this case. Exhibit seven is a report authored by Sergeant J.M. Walker of the WVSP that references the various statements and Tpr. Walker's version of events.

The Plaintiff alleges in her complaint that these individuals, who are mostly named as Defendants in the instant action, were part of a conspiracy and provided fabricated statements to Tpr. Walker. See ECF No. 30. It could hardly be said that this Court should review, consider or accept these statements as true at the 12(b)(6) stage of this litigation. Of the remaining exhibits, the Court will consider only exhibits eight and nine because they are court records.[2]

---

[2] "In considering a motion under Rule 12(b)(6), a district court may consider 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.' Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); accord Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted). A court may take judicial notice of 'docket entries, pleadings and papers in other cases,' Brown v. Ocwen Loan Servicing, LLC, PJM–14–3454, 2015 WL 5008763, *1 n.3 (D. Md. Aug. 20, 2015), aff'd, 639 Fed. Appx. 200 (4th Cir. 2016); see also Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) (noting that '[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records') (quoting 21 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5106 at 505 (1977))." Bezek v. First Mariner Bank, 293 F. Supp. 3d 528, 535 (D. Md. 2018).

Accordingly, the Court **ORDERS** that exhibits one through seven are hereby **STRICKEN**[3] from the Defendants' Motion and Memorandum, and it will not consider their contents, or any references thereto, in deciding the Defendants' motion. Therefore, the Plaintiff's Motion to Strike [ECF No. 57] is **GRANTED IN PART**, consistent with the Court's ruling herein.

### III. THE DEFENDANTS' MOTION TO DISMISS

The Defendants' motion to dismiss seeks dismissal of all claims based upon various theories. Specifically, it first addresses the claims applicable to Tpr. Walker, and argues that none should survive because Tpr. Walker enjoys qualified immunity, the claim is not recognized under the law or the Plaintiff has failed to state a claim. Next, the motion addresses the claims that apply to the WVSP, arguing that those claims are barred because the WVSP is entitled to qualified immunity.

### IV. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff and must view the allegations in a light most favorable to the plaintiff. See Edwards v. City of Goldsboro,

---

[3] The Clerk of Court is **DIRECTED** to make a notation on the docket sheet that the abovementioned exhibits have been "**STRICKEN**" but shall **SEAL** rather than delete the exhibits to avoid frustrating any future appellate review.

178 F.3d 231, 243-44 (4th Cir. 1999). But a complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To that end, Federal Rule of Civil Procedure 8 articulates a pleading standard which "does not require detailed factual allegations, but . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

A complaint that offers "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. (citation and internal quotation marks omitted). Likewise, a complaint that tenders only "naked assertion[s] devoid of further factual enhancement" does not suffice. Id. (alteration in original) (citation and internal quotation marks omitted). A party is required to articulate facts that, when accepted as true, "show" he is plausibly entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). When reviewing a complaint's sufficiency under Rule 12(b)(6), a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

## V. DISCUSSION

As an initial matter, this Court must address the parties' dispute regarding Defendants' § 1983 liability. The law is clear, so this Court will not belabor the point: "In

Will v. Michigan Dept. of State Police, 491 U.S. 58 [(1989) the Supreme Court] held that state officials 'acting in their official capacities' are outside the class of 'persons' subject to liability under [42 U.S.C. § 1983]." Hafer v. Melo, 502 U.S. 21 (1991). To be clear, "state officials sued in their individual capacities are 'persons' for purposes of § 1983." Id. Therefore, to the extent the Plaintiff alleges a claim against Tpr. Walker pursuant to § 1983, it must be denied and dismissed because he was named in his official capacity.

Although the Plaintiff's amended complaint borders on being an improper shotgun pleading under Rule 8, the Court has nonetheless attempted to decipher and consider the Plaintiff's claims, construing them liberally and in her favor. This Court recently addressed shotgun pleadings in another case:

> The Fourth Circuit has explained that when a complaint "fails to allege particular facts against a particular defendant, then the defendant must be dismissed. In other words, the complaint must 'specify how these defendants [were] involved in the alleged conspiracy,' without relying on 'indeterminate assertions' against all 'defendants.' " SD3, LLC v. Black Decker (U.S.) Inc., 801 F.3d 412, 422 (4th Cir. 2015) (quoting In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 905 (6th Cir. 2009)).

Panhandle Cleaning & Restoration, Inc. v. Nationwide Mut. Ins. Co., No. 3:17-CV-117, 2018 WL 3717108, at *4-5 (N.D. W. Va. Aug. 3, 2018). Thus, to the extent that the amended complaint may satisfy Rule 8, the Court will address each count.

A. Malicious Prosecution

The Court must consider the Plaintiff's malicious prosecution claim to the extent it could be brought separate from a § 1983 claim. In the Plaintiff's first claim, labeled "Count V,"[4] she does not name any specific party, individual, act or elements. Instead, the

---

[4] In the amended complaint, Counts I, II, III and IV are titled Nature of the Complaint, Parties, Jurisdiction and Venue, and Past and Continuing Fraudulent Acts and False Statements Made by Defendants, respectively.

Plaintiff "incorporates by reference all the allegations contained in the previous paragraphs[,] . . . which constitute malicious prosecution as to the false charge of destruction of property." ECF No. 30 at 22. Indeed, the entirety of Count V is a one-sentence paragraph. Although this count is unartfully pled and woefully lacking, the Court has reviewed and considered the allegation in a light most favorable to the Plaintiff.

The Supreme Court of Appeals of West Virginia ("SCAWV") has held that "[t]o maintain an action for malicious prosecution it is essential to prove (1) that the prosecution was malicious, (2) that it was without reasonable or probable cause, and (3) that it terminated favorably to plaintiff." Syl. pt. 1, Norfolk Southern Ry. Co. v. Higginbotham, 721 S.E.2d 541, 542 (W. Va. 2011) (internal citations and quotations omitted).

Apart from bare conclusions, the Plaintiff's amended complaint offers no facts to support that Tpr. Walker acted with malice. The amended complaint further fails to plausibly allege Tpr. Walker acted without probable cause. With regard to the third factor, the Plaintiff's amended complaint, in another section, does state, and the magistrate court's Order confirms, that the magistrate court dismissed the destruction of property charge against her, so the Plaintiff has satisfied the third element. However, all three elements must be met. Here, because the Plaintiff fails to establish the first and second elements, she has failed to state a claim.

Regardless of whether the Plaintiff failed to state a claim, Tpr. Walker is entitled to qualified immunity pursuant to West Virginia law.[5] Indeed, the SCAWV has held that "[t]o determine whether the State, its agencies, officials, and/or employees are entitled to

---

[5] Trooper Walker would also be entitled to qualified immunity, under a different analysis, if this malicious prosecution claim was being considered pursuant to § 1983; however, the Plaintiff does not mention § 1983, and as the Court explained supra, Trooper Walker in his official capacity and the WVSP are not subject to § 1983 liability.

9

immunity, a reviewing court must first identify the nature of the governmental acts or omissions which give rise to the suit for purposes of determining whether such acts or omissions constitute legislative, judicial, executive or administrative policy-making acts or involve otherwise discretionary governmental functions." Syl. pt. 10, West Virginia Reg'l Jail & Corr. Facility Auth. v. A.B., 766 S.E.2d 751, 756 (W. Va. 2014). The case *sub judice* clearly involves discretionary governmental functions. When the act in question falls into the category of discretionary functions,

> a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with State v. Chase Securities, Inc., 188 W.Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability.

Id. at Syl. pt. 11.

Because the Plaintiff has neither alleged, nor could this Court distinguish, any violation of clearly established statutory or constitutional rights or laws, and Tpr. Walker was acting in his official capacity, he "is entitled to qualified immunity as a matter of law." Chase, 424 S.E.2d at 601. Accordingly, Count V in the Plaintiff's amended complaint shall be dismissed.

B. Void Disorderly Conduct and Obstruction Charges

Count VI of the Plaintiff's amended complaint contains two paragraphs, which, in their entirety, state the following:

> 83. But for the malice of the Defendants directed at Plaintiff, and their actions designed to falsely charge Plaintiff with destruction at [sic] property, Plaintiff would not have been charged with disorderly conduct and obstruction which charges are the fruit of Defendants' malice directed toward Plaintiff and Defendants' attempt to conceal unlawful actions. Said charges are a direct a proximate result

        thereof.

84.    That the charges of disorderly conduct and obstruction are, under the facts of this case, null and void as they manifest gross prosecutorial misconduct. Plaintiff was falsely charged and maliciously prosecuted by Defendants for exercising her First Amendment constitutional right to free speech and her right to protest governmental action and to protest abuse of process by the government in the exercise of its police powers and are thereby barred by the First Amendment to the United States Constitution.

ECF No. 30 at 22-23.

As an initial matter, the Court notes that the Plaintiff chose to not incorporate in this count any other paragraph(s) from her complaint.[6] Nowhere in these two paragraphs does the Plaintiff articulate any facts that can establish a recognized cause of action. Indeed, once stripped of legal conclusions and generalizations, little remains. To the extent that the Plaintiff is asking this Court to "void" her state court conviction, "[s]ince the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts. In 1793 an Act unconditionally provided: '(N)or shall a writ of injunction be granted to stay proceedings in any court of a state . . . .'" Younger v. Harris, 401 U.S. 37 (1971).

Therefore, the Court finds that the Plaintiff has failed to articulate a cognizable claim, and this Court does not enjoy jurisdiction to grant the relief Plaintiff seeks. Accordingly, Count VI of the Plaintiff's amended complaint shall be dismissed.

C.    Abuse of Process

In Count VIII, the Plaintiff alleges abuse of process. ECF No. 30 at 23. The entirety

---

[6] This Court finds it appropriate then only to consider the two paragraphs presented within this count. The Court notes that the Plaintiff incorporated the preceding paragraphs by reference in every other count except for this one. Assuming *arguendo* that the rest of the complaint was incorporated by reference, it would not change the Court's analysis.

11

of Count VIII reads: "Plaintiff incorporates by reference all the allegations contained in the previous paragraphs the same as if fully set forth herein, which constitute abuse of process."  Id.  As Justice Kennedy wrote for the Supreme Court in Iqbal, "the pleading standard Rule 8 announces does not require 'detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  556 U.S. 662, 678 (quoting Twombly, 550 U.S. at 555).

To the extent that the Plaintiff's one-sentence allegation adequately satisfies the pleading requirements announced in Twombly and Iqbal, the Plaintiff fails to state a claim for abuse of process because she has failed to allege Tpr. Walker willfully or maliciously misused or misapplied "lawfully issued process to accomplish some purpose not intended or warranted by that process."  Syl pt. 3, Williamson v. Harden, 585 S.E.2d 369 (W. Va. 2003) (quoting Preiser v. MacQueen, 352 S.E.2d 22, 28 (W. Va. 1985)).  Thus, Count VIII of the Plaintiff's amended complaint shall be dismissed.

D.    Battery

The Plaintiff alleges battery in Count IX of her amended complaint.  A person commits battery under West Virginia law when "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results."  Pegg v. Herrnberger, 845 F.3d 112 (4th Cir. 2017) (quoting W. Va. Fire & Cas. v. Stanley, 602 S.E.2d 483, 494 (W. Va. 2004) (quoting the Restatement)).

However, "lawful arrests are excluded from the scope of West Virginia battery. A person lawfully performing an arrest is afforded a privilege to engage in arrests within the

limit of their jurisdiction, so long as the force is not excessive." Id. (citing Restatement (Second) of Torts at § 118; 132). Although the Plaintiff asserts Tpr. Walker used excessive force, the amended complaint does not provide any facts to suggest that Tpr. Walker's actions amounted to excessive force. This finding is reinforced by the Plaintiff's convictions for obstructing an officer and disorderly conduct.[7]

Accordingly, Tpr. Walker's contact with the Plaintiff was privileged, and he enjoys qualified immunity against the Plaintiff's battery claim. Therefore, the Plaintiff's Count IX shall be dismissed.

E.   Negligence

Count XI of the amended complaint asserts a claim of negligence. The Plaintiff avers that the "Defendants specifically owed Plaintiff a duty of reasonable care. It was reasonably foreseeable to Defendants that Plaintiff would be harmed as a result of Defendants' actions as aforesaid." ECF No. 30 at 24. Again this Court finds that the Plaintiff's claim has run afoul of the Rule 8 pleading standard described by the Supreme Court in Twombly and Iqbal. However, assuming *arguendo* that the Plaintiff has met the Rule 8 pleading standard, this negligence count still fails as a matter of law.

The elements of negligence in West Virginia are well-established. The SCAWV has "explained that to prevail in a negligence suit 'it is incumbent upon the plaintiff to establish, by a preponderance of the testimony, three propositions: (1) A duty which the defendant owes him; (2) A negligent breach of that duty; (3) injuries received thereby, resulting proximately from the breach of that duty.'" Wheeling Park Comm'n v. Dattoli, 787 S.E.2d 546, 551 (W. Va. 2016) (quoting Webb v. Brown & Williamson Tobacco Co., 2

---

[7] See ECF No. 40-9.

S.E.2d 898, 899 (W. Va. 1939)).

Here, the Plaintiff fails to allege any duty she was owed by Tpr. Walker. Moreover, the Plaintiff's amended complaint offers no facts or allegations describing Tpr. Walker's actions as negligent; the opposite is true. It is clear from the amended complaint that the Plaintiff's theory is that Tpr. Walker's actions were intentional. Although a plaintiff may plead in the alternative, there must be some support in fact for so doing. Here, the Plaintiff has failed to plead the elements of a negligence claim, and therefore, Count XI shall be dismissed.

F. <u>NIED, IIED or Outrage</u>

Count XII of the Plaintiff's amended complaint claims "negligent or intentional infliction of emotional distress/tort of outrage." ECF No. 30 at 24-25. Therein, the Plaintiff alleges that the "conduct by all Defendants . . . was so outrageous in character and so extreme in degree, that this conduct exceeded all bounds of decency, and should be regarded as atrocious and utterly intolerable in a civilized community."[8] <u>Id.</u> at 25.

The SCAWV has clearly recognized and enumerated the elements of these related torts:

> In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

---

[8] Yet again, the Court finds that this too is impermissible shotgun pleading and could be dismissed on this basis alone.

Syl. Pt. 3, Travis v. Alcon Labs., Inc., 504 S.E.2d 419, 421 (W. Va. 1998).

The SCAWV has repeatedly referenced the following definition when considering a claim for outrage:

> *d. Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. *Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'*

Tanner v. Rite Aid of W. Virginia, Inc., 461 S.E.2d 149, 156-57 (1995) (quoting the Restatement (Second) of Torts § 46(1) (1965)).

As to the first element, "that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency," this Court simply cannot find supporting facts within the amended complaint to adequately meet the Plaintiff's burden, even at this early stage of the proceedings. Thus, the Plaintiff has failed to state a claim for NIED, IIED or the tort of outrage and Count XII shall be dismissed.

G.    Respondeat Superior

Count XIII alleges that the WVSP (along with the Cities of Charles Town and Ranson)[9] are subject to vicarious liability under respondeat superior. Just as with the Plaintiff's malicious prosecution claim, the Court considers this respondeat superior claim to the extent it could be brought apart from a § 1983 claim for the aforementioned reasons.

---

[9] See supra n.8.

The Court has already determined that because the Plaintiff has neither alleged, nor could the Court distinguish, any violation of clearly established statutory or constitutional rights or laws, and Tpr. Walker—the only WVSP employee named in the amended complaint—was acting in his official capacity, he "is entitled to qualified immunity as a matter of law." Chase, 424 S.E.2d at 601. (See Section V.A. supra for the Court's more detailed analysis, which is also applicable here). Accordingly, the WVSP also enjoy qualified immunity on the Plaintiff's respondeat superior claim. Therefore, Count XIII shall be dismissed.

H.  Negligent Hiring, Training and Supervision

In Count XIV, the Plaintiff alleges that the WVSP (along with the Cities of Charles Town and Ranson)[10] failed "to adequately train and supervise their employees, agents, officers, and troopers . . . ." ECF No. 30 at 26. The Plaintiff then offers a list of actions or omissions that the various officers allegedly committed and avers that the WVSP failed to properly train their "officers"; "troopers" or "Trooper Walker" not to do those alleged improper actions or omissions.

The SCAWV has been clear on this issue: a plaintiff must demonstrate that the defendant violated a clearly established statutory or constitutional right in performing its discretionary functions. Reviewing courts "must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive . . . . In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune

---

[10] See supra n.8

from liability." Syl. pt. 11, West Virginia Reg'l Jail & Corr. Facility Auth. v. A.B., 766 S.E.2d 751 (W. Va. 2014).

The A.B. Court explained the plaintiff's burden when bringing a negligent hiring, training or supervision claim:

> To prove that a clearly established right has been infringed upon, a plaintiff must do more than allege that an abstract right has been violated. Instead, the plaintiff must make a particularized showing that a reasonable official would understand that what he is doing violated that right or that in the light of preexisting law the unlawfulness of the action was apparent.
>
> Moreover, the question of whether the constitutional or statutory right was clearly established is one of law for the court.

A.B., 766 S.E.2d at 776 (internal quotations and citations omitted) (dismissing case after finding that plaintiff who was repeatedly raped by correctional officer failed to articulate a clearly established right that *the regional jail authority* violated).

As our sister District succinctly stated under circumstances similar to those before this Court, "plaintiff fails to plead a single, non-conclusory fact concerning [the defendant's] processes of hiring, training, and supervision. Instead, plaintiff's claims amount to nothing more than 'threadbare recitals of [the] cause of action's elements, supported by mere conclusory statements.'" Johnson v. McDowell Cty. Sheriff Dep't, CIVIL ACTION NO. 1:17-04404, 2018 WL 1659479 at *4 (S.D. W. Va. Apr. 3, 2018). Accordingly, Count XIV shall be dismissed.

I.  Obstruction of Justice

The Plaintiff alleges that Tpr. Walker and the WVSP obstructed justice by fabricating evidence, forcing the Plaintiff to undergo a ten-hour trial, concealing exculpatory evidence and participating in "code of silence" activities. ECF No. 30 at 27-28. Courts in this District have recognized that "obstruction of justice [is] a criminal act[ ],

and therefore, do[es] not give rise to a civil cause of action." Miller v. Jack, Civil Action No. 1:06cv64, 2007 WL 1169179, at *2 (N.D. W. Va. Apr. 19, 2017); see also Plotzker v. Lamberth, Civil No. 3:08cv00027, 2008 WL 4706255 (W.D. Va. Oct. 22, 2008) (noting that "[t]here is no private right of action for obstruction of justice" (citing Griffiths v. Siemens Automotive, L.P., 43 F.3d 1466 (4th Cir. 1994) (unpublished); Salazar v. United States Postal Service, 929 F.Supp. 966, 969 (E.D. Va. 1996))). Because obstruction of justice is not a recognized civil cause of action, Count XV shall be dismissed.

## VI. CONCLUSION

Based upon the foregoing, the Plaintiff's amended complaint [ECF No. 30] fails to state a claim for Abuse of Process (Count VIII), Negligence (Count XI) and Negligent or Intentional Infliction of Emotional Distress/Tort of Outrage (Count XII). Void Disorderly Conduct and Obstruction Charges (Count VI) and Obstruction of Justice (Count XV) are not recognized causes of action. Finally, Trooper Walker and the WVSP are entitled to qualified immunity for the Plaintiff's remaining claims: Malicious Prosecution (Count V), Battery (Count IX), Respondeat Superior (Count XIII), and Negligent Hiring, Training and Supervision.

Therefore, Defendants West Virginia State Police and Trooper D.R. Walker's Motion to Dismiss First Amended Complaint is **GRANTED**. ECF No. 40. The Plaintiff's amended complaint [ECF No. 30] is hereby **DISMISSED WITH PREJUDICE** as to Defendants Trooper D.R. Walker and the West Virginia State Police.

The Clerk of Court is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED**: August 28, 2018

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE