## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## MARTINSBURG

**JULIE ANN HAMSTEAD**,

   Plaintiff,

**v.**                **CIVIL ACTION NO. 3:18-CV-79**
                    **(BAILEY)**

**FORMER TROOPER D.R. WALKER**, individually,
**CITY OF RANSON**, **WEST VIRGINIA**,
**SERGEANT KEITH SIGULINSKY**,
**CITY OF CHARLES TOWN**, **WEST VIRGINIA**,
**OFFICER JASON NEWLIN**,
**RODNEY D. HEDRICK**, **Sr.**, individually,
**KYLE REED KOPPENHAVER**, individually,
**A.B.**, an unknown individual known as the West Virginia
DOH "Muscle Man" on the 2016 Ranson-Charles Town
Green Corridor Fairfax Boulevard Project,
**JEFFERSON CONTRACTING**, **INC.**, a corporation,
**JEFFERSON ASPHALT PRODUCTS COMPANY**, a corporation,
**DALE DEGRAVE**, **ALLEN SHUTTS**, **JOHN TIMOTHY MORRIS**,
**THE CHARLES TOWN GENERAL HOSPITAL**,
d/b/a Jefferson Medical Center, **KELLY HALBERT**, **RN**, and
**X**, **Y**, **and Z**, unknown persons who conspired and/or
aided and abetted in the fabrication of false criminal
charges against Julie Hamstead,

   Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT TROOPER D.R. WALKER'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

   Currently pending before this Court is Defendant Trooper D.R. Walker's Motion to

Dismiss Second Amended Complaint [Doc. 118], filed February 5, 2019.  Having been fully

briefed, this matter is now ripe for decision.  For the reasons set forth below, the Motion will

be granted in part and denied in part.

1

## BACKGROUND

The factual allegations in plaintiff's Second Amended Complaint remain virtually identical to those asserted in the First Amended Complaint, at least with regard to defendant Trooper D.R. Walker ("Trooper Walker"). There are twenty pages of facts in plaintiff's Second Amended Complaint, and as this Court has detailed them before, it will only briefly summarize that which is most relevant.

The incident underlying all of plaintiff's claims occurred shortly after 4:00 p.m. on April 25, 2016, in Charles Town, West Virginia [Doc. 110 at 7]. Plaintiff alleges that while attempting to speak with some Jefferson Asphalt employees who were working on a sidewalk project in front of property owned by plaintiff, one of the employees "drove into the left front driver's door of Plaintiff's Honda Pilot with his right front tire" [Id.]. Thereafter, various police officers arrived, including Trooper Walker; the Jefferson Asphalt employees accused plaintiff of speeding and crashing into the work truck; Trooper Walker told plaintiff to "shut up"; and a group of West Virginia Department of Highways ("WVDOH") employees, Jefferson Asphalt employees, and police officers (defendants Sigulinsky and Newlin) conspired "in the center of the parking lot . . . to have Plaintiff falsely charged with destruction of property . . ." [Id. at 8–10].

Most relevant to the instant Motion, plaintiff avers that after Trooper Walker told her to "shut up" multiple times, he grabbed her right arm, dragged her several feet, spun her around, twisted and forced her left arm over her head and behind her body, pushed her into a work truck, broke her eyeglasses, and slammed her to the ground [Id. at 9–10]. Thereafter, Trooper Walker allegedly took part in an elaborate conspiracy and cover up, including manufacturing

2

evidence implicating plaintiff was at fault in the underlying motor vehicle accident[1] so that he could charge plaintiff with destruction of property, justifying her arrest [Id. at 11–12].

After Trooper Walker's alleged excessive use of force and unlawful arrest of plaintiff, he exposed her to "blaring hard rock music" in his cruiser, with the windows closed [Id. at 10]. Trooper Walker then transported plaintiff to Jefferson Medical Center ("JMC") for injuries she sustained during her arrest [Id. at 15]. At JMC, Trooper Walker allegedly conspired with a nurse, defendant Kelly Halbert, RN, "to violate Plaintiff's rights under the Health Insurance Portability and Accountability Act of 1996 ('HIPAA') and obtained from Kelly Halbert a false statement to the effect that Plaintiff had suffered no injuries and that she was abusive to Trooper Walker and created a disturbance, falsely crying out in pain when entering the Hospital" [Id. at 16].

Plaintiff further alleges that Trooper Walker intentionally delayed her arraignment and "meanly insisted that . . . Plaintiff was going to jail" [Id. at 18]. Trooper Walker allegedly then, "with malevolent intent to sexually harass and further physically and emotionally injure plaintiff," subjected her to "rough car rides"; reckless driving; loud, sexually oriented music; and "touched her knee" [Id.]. Plaintiff was also allegedly forced to sit on a cold, metal chair while Trooper Walker "sang sex songs, ate food and made strange noises behind his desk" [Id.].

---

[1] Plaintiff alleges that the group of individuals present at the scene of this incident conspired to make it appear that she was at fault, and an unknown individual drove her car to create skid marks in the gravel parking lot—making it appear as though she was speeding into the parking lot, as the witnesses claimed. Interestingly, plaintiff claims that another unknown "co-conspirator defendant[ ] moved a red dump truck . . . directly beside Trooper Walker's cruiser to block Plaintiff's view of the parking lot . . . to enable false evidence to be produced" [Id. at 11].

Plaintiff was arraigned and released on her own recognizance shortly after midnight—approximately eight hours after the incident began [Id. at 19].

According to the plaintiff's Second Amended Complaint, Trooper Walker "falsely and maliciously brought the disorderly conduct charge and the obstruction charge against Plaintiff in an attempt to shield himself from responsibility for his excessive use of force . . . and to justify Plaintiff's arrest" [Id. at 22]. Plaintiff further alleges that Trooper Walker continued to conspire with the other defendants to pursue false charges against her. Indeed, plaintiff claims that:

> Trooper Walker and all defendants jointly conspired to carry out and did carry out the above-mentioned actions in retaliation for Plaintiff's protest over the unvetted and unlawful State Project and for the purpose of intimidating and coercing Plaintiff into a guilty plea on false charges made against her and to aid and abet Trooper Walker in carrying out his malicious plan to ensure that Plaintiff would spend one night in jail, which is the condition Trooper Walker is accustomed to carrying out.

[Id. at 25]. Thus, plaintiff claims that the "Defendant police officers and all other defendants aided, abetted and conspired with Trooper Walker to carry out Walker's malicious scheme to overcharge Plaintiff . . ." [Id.].

## LEGAL STANDARD

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (applying the *Twombly* standard and emphasizing the necessity of *plausibility*). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and

must view the allegations in a light most favorable to the plaintiff. ***Edwards v. City of Goldsboro***, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. ***Anheuser-Busch, Inc. v. Schmoke***, 63 F.3d 1305, 1312 (4th Cir. 1995), *vacated on other grounds*, 517 U.S. 1206 (1996). In ***Twombly***, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," ***id***. at 1964–65, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." ***Id***. at 1974.

## DISCUSSION

Plaintiff's Second Amended Complaint brings the following claims against Trooper Walker: "Malicious Prosecution and Conspiracy to Maliciously Prosecute" (Count V) [Doc. 110 at 25–35]; "Abuse of Process" (Count VI) [Id. at 35–37]; "Battery" (Count VII) [Id. at 37–38]; "42 U.S.C. § 1983 Violation, Violation of First, Fourth, and Fourteenth Amendment Rights" (Count IX) [Id. at 38–40]; and "Negligent or Intentional Infliction of Emotional Distress/Tort of Outrage" (Count XIII) [Id. at 47–48]. Trooper Walker moves this Court to dismiss all counts against him. This Court will address each count in turn.

**A.  Plaintiff's Malicious Prosecution (Count V) and Battery (Count VII) claims will be dismissed, as these claims have already been dismissed by this Court, and this Court expressly prohibited plaintiff from re-alleging these claims when granting leave to file the Second Amended Complaint.**

Plaintiff asserted malicious prosecution and battery claims against Trooper Walker in the First Amended Complaint.  In Chief Judge Groh's Order Granting West Virginia State Police and Trooper Walker's Motion to Dismiss First Amended Complaint, Chief Judge Groh dismissed the malicious prosecution claim as failing to state a claim and, regardless of whether plaintiff failed to state a claim, found that Trooper Walker was entitled to qualified immunity.  *See* [Doc. 83 at 8–10].  Chief Judge Groh also dismissed the battery claim against Trooper Walker, finding that Trooper Walker was entitled to qualified immunity.  *See* [Id. at 12–13].

In granting plaintiff leave to file her Second Amended Complaint, this Court placed certain limitations on plaintiff in order to reduce the prejudicial effect of amendment.  Specifically, this Court stated the following:

> For these reasons, plaintiff is barred from alleging any new causes of action in her second amended complaint, apart from claims pursuant to § 1983 against Trooper Walker in his individual capacity.  However, plaintiff will be permitted to reallege claims brought against Trooper Walker that were previously dismissed *solely* on the basis that they were insufficiently pled.  From the undersigned's review of Chief Judge Groh's Order, such claims were "Abuse of Process" and "Negligent or Intentional Infliction of Emotional Distress/Tort of Outrage."  *These are the only previously asserted claims against Trooper Walker that may be realleged*.  *The other previously asserted claims*, which were either dismissed because they were not recognized causes of action or it was determined Trooper Walker was entitled to qualified immunity, *will remain dismissed and shall not be included in plaintiff's second amended complaint*.  This further reduces the prejudicial effect amendment would have on Trooper Walker.

[Doc. 109 at 9–10] (emphasis added).  Thus, as this Court has already dismissed these claims and expressly prohibited plaintiff from re-alleging them, this Court will not reconsider them.  Accordingly, plaintiff's **Malicious Prosecution (Count V)** and **Battery (Count VII) claims** are hereby **DISMISSED**, as they pertain to Trooper Walker.

## B.  Plaintiff has failed to allege an Abuse of Process (Count VI) claim upon which relief can be granted.

Plaintiff fails to state a claim for abuse of process because she does not allege that Trooper Walker improperly used the judicial process after he arrested her.  "Generally, abuse of process consists of the willful or malicious misuse or misapplication of *lawfully issued process* to accomplish some purpose not intended or warranted by that process."  Syl. Pt. 3, ***Williamson v. Harden***, 214 W.Va. 77, 585 S.E.2d 369 (2003) (quoting ***Preiser v. MacQueen***, 177 W.Va. 273, 279, 352 S.E.2d 22, 28 (1985); ***Wayne Cty. Bank v. Hodges***, 175 W.Va. 723, 338 S.E.2d 202 (1985)) (emphasis added).  As this Court has noted before in contrasting abuse of process from malicious prosecution:

> Abuse of process differs from malicious prosecution in that the gist of the tort is *not commencing an action or causing process to issue without justification*, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish.  The purpose for which the process is used, *once it is issued*, is the only thing of importance . . . .
>
> The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, willful act in the use of the process not proper in the regular conduct of the proceeding.  Some definite act or threat not authorized by the process, or aimed at any objective not legitimate in the use of the process, is required; and *there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions*.  The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or

the payment of money, by the use of the process as the threat or club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, *rather than the issuance or any formal use of the process itself*, which constitute the tort.

***Bennett v. Equitable Trust Mortg. Corp.***, 2010 WL 342179, at *2 (N.D. W.Va. Jan. 22, 2010) (Bailey, J.) (citing ***Preiser***, 177 W.Va. at 279 n.8, 352 S.E.2d at 28 n.8); *see also*

***Rahmi v. Sovereign Bank N.A.***, 2013 WL 412623, at *2 (N.D. W.Va. Feb. 1, 2013) (Groh, C.J.). "The distinctive nature of an action for abuse of process, as compared with the actions for malicious prosecution and false imprisonment, is that it lies for the improper use of a regularly issued process, not for maliciously causing process to issue, or for an unlawful detention of the person." ***Southern States Coop. Inc. v. I.S.P. Co.***, 198 F.Supp.2d 807, 816 (N.D. W.Va. 2002) (Keeley, J.).

Here, plaintiff makes no allegations that Trooper Walker used the judicial process for an improper purpose *after* he filed the criminal complaint against her. Instead, plaintiff alleges Trooper Walker procured false charges against her and participated in their prosecution. Specifically, plaintiff alleges that Trooper Walker "improperly charge[d] Plaintiff with disorderly conduct and obstructing an officer to justify Trooper Walker's excessive use of force . . . and prevent Plaintiff from a successful suit against him for excessive force" [Doc. 110 at 36]. Further, plaintiff alleges that Trooper Walker "misused lawful process in the issuance of a criminal complaint against Plaintiff for disorderly conduct and obstruction to carry out his personal objectives that were not warranted by that process" [Id.].

These allegations concern Trooper Walker's supposed motives for initiating the criminal charges against plaintiff, which rings in malicious prosecution rather than abuse of

process.  Plaintiff makes no allegations that Trooper Walker ever used the criminal charges for an improper purpose after they were initiated—such as by offering to drop the disorderly conduct and obstructing charges (even if he could) in exchange for plaintiff releasing him from any future excessive force claim.  Such is the type of coercive and extortive conduct that the tort of abuse of process contemplates—the conduct alleged by plaintiff, having an ulterior motive for bringing the charges, is not.  Plaintiff does not claim that Trooper Walker "misus[ed], or misappl[ied] process *justified in itself* for an end other than that which it was designed to accomplish," ***Bennett***, 2010 WL 342179, at *2, but instead challenges that justification and argues that the process (the criminal complaint/arrest) itself was unlawful.  *See, e.g.*, ***Avaya, Inc. v. Cisco Sys., Inc.***, 2012 WL 2065536, at *3 (D.N.J. June 7, 2012) (Wolfson, J.) ("Abuse of process occurs when a prosecution is initiated legitimately [but] thereafter is used for a purpose other than that intended by law.").

Plaintiff's argument in her response that she has pled a valid abuse of process claim because she alleged that Trooper Walker "*continues* to pursue the false charges" and that "it is difficult to envision a proper purpose for Plaintiff's *continued* prosecution" is unpersuasive.  These allegations simply relate to the carrying out of the criminal process to its authorized conclusion, and as previously noted, "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." ***Bennett***, 2010 WL 342179, at *2*.

Thus, as plaintiff makes no allegation that Trooper Walker attempted to use the criminal charges against her for an improper purpose after they were instituted, her abuse of process claim fails to state a claim upon which relief can be granted.  Accordingly, plaintiff's **Abuse**

9

**of Process (Count VI) claim** is hereby **DISMISSED** as to Trooper Walker.

**C.  Plaintiff's Excessive Force and Unreasonable Search and Seizure claims brought pursuant to 42 U.S.C. § 1983 for violations of her Fourth Amendment rights, asserted in Count IX of her Second Amended Complaint, shall survive Trooper Walker's Motion to Dismiss.  However, the First Amendment Retaliatory Arrest and Fourteenth Amendment Violation of Due Process claims asserted in Count IX shall be dismissed.**

Plaintiff asserts three theories of liability under her § 1983 count (Count IX): (1) that Trooper Walker violated her First Amendment right to free speech by arresting her for attempting to provide information about the accident and violated her First Amendment right to protest the purported unlawful taking of her property by arresting her; (2) that Trooper Walker violated her Fourth Amendment right to be free from unreasonable seizure by using excessive force in arresting her; and (3) that Trooper Walker violated her Fourth Amendment right to be free from unreasonable searches and seizures by entering her vehicle and seizing her property without probable cause.  Plaintiff also seemingly attempts to assert violations of her Fourteenth Amendment right to due process in Count IX.  This Court will address each theory in turn.

### 1.  First Amendment Retaliatory Arrest Claim

Plaintiff alleges that Trooper Walker violated her rights under the First Amendment "by attacking and arresting her for attempting to provide information regarding what had occurred in the accident" [Doc. 110 at 40].  Further, plaintiff alleges that Trooper Walker violated her "First Amendment rights to protest the unvetted and unlawful taking of her property by the Department of Highways and the Cities of Charles Town and Ranson by blocking its historic access from Fairfax Boulevard which access was necessary and essential to providing handicap access to same" [Id.].  In sum, plaintiff asserts a retaliatory arrest claim.

10

Trooper Walker argues that he had probable cause to arrest plaintiff, and that the existence of such probable cause entitles him to qualified immunity from this claim. Trooper Walker notes that plaintiff "was convicted in a Magistrate Court bench trial of disorderly conduct and obstructing an officer," [Doc. 119 at 11], and argues that "a conviction is conclusive proof of probable cause for the underlying arrest" [Doc. 134 at 3].

Plaintiff responds that "whether [Trooper] Walker could have reasonably believed that probable cause existed for either the destruction of property charge or the disorderly conduct charge is, at the very least, a factual question. That question cannot be properly resolved in a motion to dismiss." [Doc. 122 at 11]. Plaintiff further argues that Trooper Walker's argument that plaintiff's conviction in magistrate court on the charges of disorderly conduct and obstruction present him with conclusive evidence of probable cause for those two charges "fails to gain traction at this juncture since the remaining charges are on de novo appeal" [Id. at 13].

The Supreme Court of the United States "has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause." *Reichle v. Howards*, 566 U.S. 658, 664–65 (2012). "Since the *Reichle* decision, no such right has been recognized, so the *Reichle* principle is fully controlling here." *Pegg v. Herrnberger*, 845 F.3d 112, 119 (4th Cir. 2017). Thus, if Trooper Walker had probable cause for plaintiff's arrest, he would be entitled to qualified immunity on this claim. However, "'probable cause or its absence will be at least an evidentiary issue in practically all cases.'" *Tobey v. Jones*, 706 F.3d 379, 392 (4th Cir. 2013) (quoting *Hartman v. Moore*, 547 U.S. 250, 265 (2006)). Thus, it would only be appropriate to determine probable cause at the motion to dismiss stage if no

evidentiary issue remained.

Trooper Walker argues that plaintiff's argument that probable cause is an evidentiary issue here "ignores her convictions for two of the three charges Trooper Walker charged her with," and that such convictions are "conclusive proof of probable cause" [Doc. 134 at 3]. It is true that many courts have found a conviction on the offense for which a plaintiff is arrested to bar a later civil action asserting that the arrest was made without probable cause. *See, e.g.*, *Malady v. Crunk*, 902 F.2d 10 (8th Cir. 1990); *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986) ("[A] conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause."); *Hoffman v. Moss*, 929 F.2d 692 (Table), 1991 WL 41503, at *1 (4th Cir. 1991) (finding that plaintiff's claim an officer swore out a false warrant against him was precluded by plaintiff's conviction for the criminal offense—citing *Malady* and *Cameron*); *Pouncey v. Ryan*, 396 F.Supp. 126, 127 (D. Conn. 1975) ("Society chooses to allow a criminal judgment of conviction to immunize arresting officers from liability in civil litigation for arrest without probable cause, in part because it is so unlikely that a conviction will be obtained in circumstances where the arrest was without probable cause, and in part because of the impact, perhaps marginal, that the policy has in furthering the highly-valued goal of apprehending offenders.").

This Court is inclined to join those courts and find that plaintiff's convictions bar her from now asserting this civil claim challenging probable cause for the arrest and, similarly, find Trooper Walker is entitled to qualified immunity on this retaliatory arrest claim. Originally, this Court was going to allow this claim to survive Trooper Walker's Motion to Dismiss because the convictions were the only evidence at this point favoring probable cause, and this Court

12

thought it inappropriate to base a probable cause determination on convictions that were not final. Thus, this Court was going to allow the claim to proceed until a later stage of the litigation, at which point either the convictions would be upheld or overturned, or if the appeal remained undecided the factual development should have progressed to the point that this Court could make a determination based on the factual basis for plaintiff's arrest, rather than the fact of the convictions themselves. However, since this Motion was briefed and the Court formed this initial opinion, plaintiff's convictions are no longer on appeal. On March 29, 2019, the Circuit Court of Jefferson County, West Virginia, accepted plaintiff's plea of no contest to the disorderly conduct offense, and accordingly adjudged the plaintiff convicted of the offense by virtue of her plea. *See* [Doc. 146-2]. Pursuant to the plea agreement, the court dismissed the obstructing charge [Id.].

Thus, plaintiff's related criminal action now being final, this Court sees no need to delay its probable cause/qualified immunity decision. This Court finds that plaintiff's conviction for disorderly conduct bars her from now asserting a civil claim challenging probable cause for the arrest. Further, Trooper Walker is entitled to qualified immunity on this retaliatory arrest claim, as the final conviction establishes at least arguable probable cause for the arrest, thereby Trooper Walker could have reasonably believed his conduct was lawful. *See, e.g.*, ***Kuehl v. Burtis***, 173 F.3d 646, 650 (8th Cir. 1999) ("The issue for immunity purposes is not probable cause in fact but arguable probable cause.") (citing ***Habiger v. City of Fargo***, 80 F.3d 289, 295 (8th Cir. 1996)); ***Jones v. White***, 2018 WL 2708750 (N.D. W.Va. June 5, 2018) (Stamp, J.) (granting motion to dismiss § 1983 claims under the First and Fourth Amendments on ground of qualified immunity where probable cause for plaintiff's arrest was

established by plaintiff's own admission to the crime).  The fact that plaintiff was not convicted

on the other charges is immaterial, as even assuming *arguendo* that Trooper Walker did not

have probable cause to charge plaintiff with destruction of property or obstructing an officer,

the fact that he had probable cause to arrest plaintiff for disorderly conduct entitles him to

qualified immunity from this retaliatory arrest claim.  *See, e.g.*, ***Smithson v. Aldrich***, 235 F.3d

1058, 1063 (8th Cir. 2000) (finding that even if basis for one charge was pretextual, probable

cause for the other charge entitled officers to qualified immunity from First Amendment

retaliatory arrest claim).

Accordingly, plaintiff's **First Amendment Retaliatory Arrest claim** is hereby

**DISMISSED** as to Trooper Walker.

### 2.  Fourth Amendment Excessive Force Claim

Plaintiff alleges that Trooper Walker violated her rights under the Fourth Amendment

"by depriving her of her right to be secure in her person against an unreasonable seizure

where the force used in subduing Plaintiff grossly exceeded that which objectively and

reasonably could have been considered necessary to take and maintain her in lawful custody

under the circumstances" [Doc. 110 at 38].  Plaintiff states that Trooper Walker "ripped her left

arm up over her head and then back and forth behind her back, then drug her across the

gravel parking lot and slammed her face first into [defendant] DeGrave's work truck," breaking

her eyeglasses [Id. at 9–10, 39–40].  "Trooper Walker then slammed Plaintiff face down onto

the ground, bloodying her knees, [and] tearing open her leggings on the gravel.  Trooper

Walker then placed her in handcuffs behind her back as she lay helpless on the ground, face

down." [Id. at 10].  Plaintiff alleges this caused her "permanent left shoulder and back injury,

severe bruises and contusions, great pain and anguish and great fear of Trooper Walker and the police in general causing her to flee the State of West Virginia, separating her family, proximately resulting in financial hardship and insolvency and embarrassment to Plaintiff, a middle aged mother of four children with no prior criminal history of any kind." [Id. at 39–40].

Trooper Walker states in his Motion to Dismiss that he "did not violate any clearly established law in using the force necessary to arrest" plaintiff [Doc. 119 at 13].  Thus, Trooper Walker argues that the excessive force claim should be dismissed because he is entitled to qualified immunity.  In doing so, Trooper Walker cites two cases in which he argues courts have found officers entitled to qualified immunity from excessive force claims in very similar situations to that presented here: ***Hupp v. Cook***, 2018 WL 3259588, (S.D. W.Va. July 3, 2018) (Johnston, J.), and ***Pegg v. Herrnberger***, 845 F.3d 112 (4th Cir. 2017).

In response, plaintiff argues that "a jury question is presented under the allegations contained in Plaintiff's Second Amended Complaint" [Doc. 122 at 14].  Plaintiff reiterates that it is alleged that "Trooper Walker used excessive force against Plaintiff when he unexpectedly arrested her, drug her across a gravel parking lot, yanked her left arm up—twisting it side to side over her head—and slammed her face first into the truck that had hit her car, forcing her face first to the ground, and handcuffing her behind her back while she lay face down on the ground" [Id.].  Plaintiff argues that a reasonable fact-finder could conclude that this use of force was unreasonable and excessive in this circumstance, where allegedly Trooper Walker "knew plaintiff was unarmed, obviously posed no threat to anyone, did not place anyone in fear of harm and made no attempt to flee" [Id. at 15].  Further, plaintiff states that she "is a 5'7" female, weighing approximately 155 pounds," that she "alleges permanent physical injuries" as the

result of Trooper Walker's alleged use of force, and that there "was no need to use any force whatsoever" [Id.].  Plaintiff also attempts to distinguish the cases cited by Trooper Walker, and points out that those cases were decided at the summary judgment stage, rather than the current motion to dismiss posture of this case.

Upon consideration, this Court does not feel a determination that Trooper Walker is entitled to qualified immunity is appropriate at this time.  The Supreme Court of the United States has held that the question of whether an officer has used excessive force "requires careful attention to the *facts and circumstances of each particular case*, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he [or she] is actively resisting arrest or attempting to evade arrest by flight." ***Graham v. Conner***, 490 U.S. 386, 396 (1989) (emphasis added).  "Use of excessive force is an area of the law 'in which the result depends very much on the *facts of each case*.'" ***Kisela v. Hughes***, 138 S.Ct. 1148, 1153 (2018) (quoting ***Mullenix v. Luna***, 136 S.Ct. 305, 309 (2015)) (emphasis added).  This litigation is only at the motion to dismiss stage, and thus this Court does not know the facts and circumstances that led to Trooper Walker's use of force.  Accordingly, without knowing such facts, this Court cannot properly make a determination of whether Trooper Walker is entitled to qualified immunity.

All that this Court has to consider at this stage are the allegations made in plaintiff's Second Amended Complaint, which include plaintiff being slammed face-first into a truck, and where she allegedly posed no threat, did not resist arrest, was charged with misdemeanor offenses, and sustained permanent injuries.  Such allegations state enough facts to state a claim of excessive force that "is plausible on its face," which is all that is required of plaintiff

16

at this juncture.   *Twombly*, 550 U.S. at 570 (2007); *Giarratano*, 521 F.3d at 302.   While

plaintiff was convicted of obstructing an officer and disorderly conduct in magistrate court, and

now has a final conviction on the disorderly conduct charge in circuit court, this Court cannot

say such conviction automatically justifies the amount of force used without any facts as to

what actually occurred.  Plaintiff's actions very well could have justified Trooper Walker's use

of force, but this Court simply cannot make a proper determination at this time without further

factual development.  Further, the cases cited by Trooper Walker for the proposition that

courts have found officers entitled to qualified immunity from excessive force claims in similar

situations to that presented here were both decided at the summary judgment, rather than the

motion to dismiss, stage in the litigation.  Such is usually—and rightfully—the case, given that

the outcome of use of force claims depend "very much on the facts of each case." *Kisela*, 138

S.Ct. at 1153.

The undersigned acknowledges, as Trooper Walker points out, that when Chief Judge

Groh previously dismissed plaintiff's battery count, she noted the following: "Although the

Plaintiff asserts Tpr. Walker used excessive force, the amended complaint does not provide

any facts to suggest that Tpr. Walker's actions amounted to excessive force" [Doc. 83 at 13].

In granting plaintiff leave to amend her First Amended Complaint, in order to minimize any

prejudicial effect of amendment, the undersigned did not disturb that determination and did

not allow plaintiff to reassert her battery claim here.  However, that determination was made

while examining a different cause of action in a different complaint from the one now before

the undersigned.  Thus, given that context, the undersigned does not find it appropriate to

dismiss plaintiff's excessive force claim simply based on this previous determination, nor

17

does he feel bound by such previous determination.  The undersigned has not and will not reconsider Chief Judge Groh's previous ruling on the battery claim, but does not feel such ruling foreclosures the undersigned from examining this excessive force claim brought pursuant to § 1983.

Accordingly, plaintiff's **Excessive Force Claim will survive Trooper Walker's Motion to Dismiss**.  However, Trooper Walker may reassert his claim of entitlement to qualified immunity at the summary judgment stage, at which time the facts should be developed such that this Court can make a proper determination.

### 3. Fourth Amendment Unreasonable Search and Seizure Claim

Plaintiff alleges that "Walker, Newlin and Sigulinsky acted in concert and/or individually to violate Plaintiff's Fourth Amendment right by unlawfully entering, searching and seizing her property from her vehicle without probable cause" [Doc. 110 at 40].  The property that was allegedly seized was plaintiff's driver's license which "was located in Plaintiff's purse inside her vehicle and which Trooper Walker admittedly seized and has not returned" [Id. at 15].

Trooper Walker argues that he is entitled to qualified immunity from this claim because, even if it was Trooper Walker who reached into the car and secured plaintiff's license, "[n]o clearly established law held that such a seizure, causing merely a *de minimis* violation of her Fourth Amendment rights, was unreasonable" [Doc. 119 at 15].  Trooper Walker argues that, "[t]o the contrary, the law on April 25, 2016, held that such an act was a reasonable means of obtaining [plaintiff's] identification and protecting her property" [Id. at 16].  In response, plaintiff attempts to distinguish the cases cited by Trooper Walker to support his argument, argues

that "a violation of constitutional rights is never *de minimis*," and states that Trooper Walker's contention that he seized plaintiff's driver's license for safekeeping lacks credibility [Doc. 122 at 16–18].

Upon consideration, this Court will allow this claim to survive Trooper Walker's Motion to Dismiss.  Preliminarily, this Court is not convinced that the "*de minimus* doctrine" is applicable here.  The *de minimus* doctrine has been described as follows: "[I]f a loss is not only small but also indefinite, so that substantial resources would have to be devoted to determining whether there was any loss at all, courts will invoke the *de minimus* doctrine and dismiss the case, even if it is a constitutional case.  The costs of such litigation overwhelm the benefits." ***Hessel v. O'Hearn***, 977 F.2d 299, 303 (7th Cir. 1992).  However, the following has also been said about the doctrine:

> The leading work of scholarship on the *de minimus* doctrine quotes an old case which said, we think correctly, that "this maxim is never applied to the positive and wrongful invasion of another's property." . . . The maxim's "design is to prevent expensive and mischievous litigation, which can result in no real benefit to complainant, but which may occasion delay and injury to other suitors."  It has little or no proper application to cases in which the monetary cost of the loss is, though tiny, readily determinable.  The right to maintain a suit to recover the loss depends in such a case only on the jurisdictional minimum amount in controversy, here zero.  We think the court meant no more than this when it said in ***Lewis v. Woods*** [848 F.2d 649, 651 (5th Cir. 1988)], "A violation of constitutional rights is never *de minimis*."

***Hessel***, 977 F.2d at 303–04.

Here, though the loss of a driver's license may be small, it is not indefinite.  Further, substantial resources would not have to be devoted to determining if there was a loss, as such should be fairly easily determinable, and will not result in unnecessary, expensive litigation

where this claim is not the entirety of, but rather simply part of, the Second Amended Complaint. Facts related to this claim are necessarily tied to plaintiff's other remaining claims, thus any increase in the cost of discovery should be minimal.

Further, this Court cannot make a proper determination on whether the alleged search and seizure was reasonable at this time. Once again, this case is at the motion to dismiss stage, thus there has been no factual development from which this Court could properly assess the reasonableness of Trooper Walker's alleged actions. What was the purpose of the search? How intrusive was the search? For what purpose was the license seized? Was the license in plain view when it was seized? All of these questions, and more, will factor into determining whether the search and seizure alleged here were reasonable, and this Court has no information from which to answer them at this time. Simply put, to determine reasonableness, or whether Trooper Walker could have reasonably believed his conduct was lawful, this Court has to know what occurred, which can only be ascertained through further factual development.

Accordingly, plaintiff's **Fourth Amendment Unreasonable Search and Seizure Claim will survive Trooper Walker's Motion to Dismiss**. However, Trooper Walker may reassert his claim of entitlement to qualified immunity at the summary judgment stage, at which time the facts should be developed such that this Court can make a proper determination.

### 4. Fourteenth Amendment Due Process Claims

Despite this Court's instruction when allowing plaintiff to amend that "plaintiff should set forth with some particularity what constitutional rights Trooper Walker allegedly violated," [Doc. 109 at 8], nowhere in Count IX of plaintiff's Second Amended Complaint, the count that

alleges § 1983 violations, does plaintiff allege a violation of her due process rights under the Fourteenth Amendment—other than simply listing the Fourteenth Amendment in the title of the count.   Nonetheless, as Trooper Walker notes, at various points in the Second Amended Complaint plaintiff does mention purported violations of her due process rights.   Trooper Walker discusses three possible due process claims alleged in the Second Amended Complaint.   Upon independent review, this Court cannot identify any other instances were plaintiff may be alleging a due process violation, and plaintiff does not assert any others in her response brief.   Accordingly, this Court will address only these three potential due process claims identified by Trooper Walker.   For the reasons set forth below, this Court finds that plaintiff fails to state a claim for any Fourteenth Amendment due process violation.

### a.  Failure to Preserve Audio/Video Recordings

Plaintiff states that "Trooper Walker claims that he did not preserve any in car audio or video or body audio recording of any of the incidents" described in her Second Amended Complaint, and that "[s]aid failure to preserve the recordings which were made during contact with Plaintiff constitutes the intentional destruction of evidence . . . [and] a denial of Plaintiff's due process rights . . ." [Doc. 110 at 19].   Trooper Walker argues that plaintiff fails to state a due process claim based upon this alleged failure to preserve recordings because plaintiff makes no allegations that indicate any such failure was in bad faith, rather than negligently, and plaintiff makes no allegations that indicate that any such recordings were material.   In response, plaintiff argues that not only is she alleging that Trooper Walker negligently failed to preserve the recordings but, alternatively, that he did so intentionally and in bad faith. Further, plaintiff argues that such recordings would have exonerated her, but does not address

Trooper Walker's contention that comparable evidence was available by other reasonable means.

In considering a due process claim based on the Government's failure to preserve surveillance video footage, the Fourth Circuit described the applicable law as follows:

> Under the Due Process Clause of the Fourteenth Amendment, the Supreme Court developed "'what might loosely be called the area of constitutionally guaranteed access to evidence.'" *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) (quoting *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982)). The Court has specified that, to the extent the Constitution imposes a duty upon the government to preserve evidence, "that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense"—i.e., evidence that is constitutionally material. *Id.* at 488–89, 104 S.Ct. 2528. To satisfy this standard, evidence must: (1) "possess an exculpatory value that was apparent [to the police] before the evidence was destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489, 104 S.Ct. 2528. The mere possibility that lost or destroyed evidence could have exculpated a defendant is not sufficient to satisfy *Trombetta*'s requirement that the exculpatory value be "apparent" to the police before destruction. *Arizona v. Youngblood*, 488 U.S. 51, 56 n. *, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Additionally, "if the exculpatory value of the evidence is indeterminate and all that can be confirmed is that the evidence was 'potentially useful' for the defense, then a defendant must show that the government acted in bad faith in destroying the evidence." *United States v. Bohl*, 25 F.3d 904, 910 (10th Cir. 1994) (citing *Youngblood*, 488 U.S. at 58, 109 S.Ct. 333). "[M]ere negligence on the government's part in failing to preserve such evidence is inadequate for a showing of bad faith." *Id.* at 912.

*United States v. Matthews*, 373 F. App'x 386, 389–90 (4th Cir. 2010).

Here, this Court agrees with Trooper Walker that plaintiff's "attempt to equate 'failure to preserve' with 'the intentional destruction of evidence' is simply a legal conclusion, unsupported by any factual allegations. [Plaintiff] does not allege any facts to show or even infer that Trooper Walker intentionally did not preserve recordings of the arrest." [Doc. 134

at 9]. Thus, as plaintiff alleges no facts that would make it plausible that Trooper Walker failed to preserve the recordings in bad faith, i.e. intentionally destroyed them, her allegation that Trooper Walker failed to preserve the recordings is, at worst, negligent conduct which is insufficient to constitute a denial of due process. *See **United States v. Thompson***, 584 F. App'x 101, 103 (4th Cir. 2014) ("[T]he negligent destruction of evidence, absent more, does not constitute bad faith.") (quoting ***Elmore v. Ozmint***, 661 F.3d 783, 831 (4th Cir. 2011) (finding the negligent erasure of the tape of a bank robbery was not bad faith)).

Furthermore, even if this Court assumes plaintiff alleges bad faith on the part of Trooper Walker, plaintiff alleges no facts to show that the purported recordings would be constitutionally material to her defense. Plaintiff has not had any convictions reversed on the basis of a ***Brady*** violation. *See **Jean v. Collins***, 221 F.3d 656, 663 (4th Cir. 2000) (per curiam) ("A ***Brady*** violation that resulted in the overturning of the § 1983 plaintiff's conviction is a necessary, but not a sufficient, condition for § 1983 liability on the part of the police. It is a necessary condition because the ***Brady*** violation establishes the requisite threshold of constitutional injury (a conviction resulting in loss of liberty) below which no § 1983 action can lie."). Additionally, there are no allegations in the Second Amended Complaint that the purported recordings were exculpatory on their face or that plaintiff could not otherwise obtain comparable evidence. As Trooper Walker points out:

> [Plaintiff] can offer nothing more than speculation that the recordings would show some different version of events than what the Magistrate Court found occurred. *See **Matthews***, 373 F. App'x at 390. As in ***Matthews***, in this case, three police officers, as well as other witnesses, testified to the events surrounding [plaintiff's] arrest; for the recordings at issue to have held any exculpatory value, every witness would have had to have fabricated their testimony. *See id.* Yet, whether Trooper Walker and the other witnesses were

23

> telling the truth was a question of credibility for Magistrate Senseney. *See id.*
> at 391 (citing *United States v. Parker*, 72 F.3d 1444, 1452 (10th Cir. 1995)).
> As in *Matthews*, the evidence [plaintiff] seeks—a narration of the events
> surrounding her arrest—was available through cross examination of the State's
> witnesses and through [plaintiff's] own testimony. *See id.*

[Doc. 119 at 19].

Accordingly, as plaintiff alleges no facts to show either that Trooper Walker's purported failure to preserve recordings of her arrest was in bad faith or that such recordings were constitutionally material to her defense, she cannot state a due process violation based upon these allegations.

### b. Alleged Fabrication of Evidence

Although plaintiff does not specifically use the phrase "due process," she alleges in her Second Amended Complaint that Trooper Walker and other defendants conspired to move her car in order to create tire tracks in the gravel to support the destruction of property charge against her. The Fourth Circuit has recognized that allegations for fabrication of evidence can be a basis for a due process claim. *See Washington v. Wilmore*, 407 F.3d 274, 282 (4th Cir. 2005) (recognizing a due process "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity").

However, Trooper Walker argues that in the Fourth Circuit a conviction is a prerequisite to a stand-alone due process claim based on allegations of fabrication of evidence. Thus, since plaintiff was not convicted of the destruction of property charge, Trooper Walker argues plaintiff does not meet that prerequisite, nor can plaintiff make the requisite causal connection between the alleged fabrication of evidence and any loss of liberty. In response, plaintiff attempts to distinguish the case relied on by Trooper Walker, and argues that "the bringing

24

of false charges based on fabricated evidence will alone give rise to the due process claim even when the false charges are dropped."  [Doc. 122 at 20] (citing *Jones v. Chicago*, 856 F.2d 985 (7th Cir. 1988)).

Upon consideration, this Court must agree with Trooper Walker.  While not the case in every jurisdiction, a conviction is seemingly a prerequisite to a stand-alone due process claim in the Fourth Circuit.  In *Massey v. Ojaniit*, 759 F.3d 343, 354 (4th Cir. 2014), the United States Court of Appeals for the Fourth Circuit found that "[f]abrication of evidence alone is insufficient to state a claim for a due process violation; a plaintiff must plead adequate facts to establish that the loss of liberty—i.e., his conviction and subsequent incarceration—resulted from the fabrication."  *See also Black v. Montgomery County*, 835 F.3d 358, 371 n.12 (3d Cir. 2016) ("Two Courts of Appeals appear to require a conviction as a prerequisite to a stand-alone due process claim.  *See Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015) ('[A] police officer does not violate an acquitted defendant's due process rights when he fabricates evidence.'); *Massey v. Ojaniit*, 759 F.3d 343, 354 (4th Cir. 2014) [quoting *Massey* language above].");  *Norton v. Tabron*, 2016 WL 5867045, at *6 (E.D.N.C. Oct. 6, 2016) (Boyle, J.) (after quoting the *Massey* language above, holding that "[t]he charges against plaintiff were dismissed, and thus no conviction was obtained and plaintiff cannot satisfy the requirements for pleading a due process claim in this context").  Thus, as plaintiff was not convicted on the destruction of property charge, she cannot satisfy the requirements of this Circuit for pleading a due process claim based upon fabrication of evidence.

Furthermore, not only was plaintiff not convicted on the destruction of property charge, but she was also never incarcerated on that, or any other, charge.  Plaintiff was arraigned on

25

the misdemeanor charges the same day she was arrested[2] and "released by the Magistrate on personal recognizance" following her arraignment [Doc. 110 at 19].  As one Court of Appeals has noted, "[a] criminal's due process rights may be violated—actionable by way of 42 U.S.C. § 1983—when the evidence against him is fabricated.  However, due process is not implicated when, as here, the defendant is released on bond following his arrest and acquitted at trial."  *Saunders-El*, 778 F.3d at 558.  In reaching that decision, the *Saunders-El* court reasoned as follows:

> Not every act of evidence fabrication offends one's due process rights, however—a point we elucidated in *Alexander v. McKinney*, 692 F.3d 553, 557 (7th Cir. 2012).  There, the plaintiff, who had been acquitted by a jury in his criminal case, alleged that the prosecutor and investigators conspired "to manufacture false evidence and bring trumped-up charges."  *Id.* at 554.  We held, though, that the plaintiff's acquittal foreclosed his claim:
>
>> In [*Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012),] we held that a prosecutor acting in an investigatory capacity who fabricates evidence that is used to obtain a wrongful conviction violates a convicted defendant's clearly established due process rights.  There, the plaintiffs, Whitlock and Steidl, alleged that police officers and prosecutors used fabricated evidence, such as pressuring witnesses to concoct stories of having witnessed the crime, to convict the two of a high-profile double homicide.  Whitlock and Steidl spent the next seventeen and twenty-one years in prison, respectively . . . .  In both [*Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000), a case highlighted by Alexander,] and *Whitlock*, the alleged liberty deprivation came not from the initial arrest, but from the time spent in confinement *after* arrest—the eight months Zahrey spent in jail after having his bail revoked and the numerous years Whitlock and Steidl spent in prison after being wrongfully convicted.  *Zahrey* and *Whitlock* are inapposite because the only liberty deprivation Alexander alleges stems from his initial

---

[2] Technically it would be considered the next day, as plaintiff alleges she "was arraigned just after midnight" on the evening of her arrest [Doc. 110 at 19].

arrest—he was released on bond that same day.

*Id.* at 557 (citations omitted).  We added: "Nor does the burden of appearing in court and attending trial, in and of itself, constitute a deprivation of liberty.  It would be anomalous to hold that attending a trial deprives a criminal defendant of liberty without due process of law, when the purpose of the trial is to effectuate due process."  *Id.* at 557 n.2 (citations omitted).

[Plaintiff], released on bond following his arrest and acquitted at trial, falls squarely within our holding in *Alexander*, and, accordingly, cannot make out an evidence fabrication-based due process violation.

*Saunders-El*, 778 F.3d at 560–61; *see also Whitlock*, 682 F.3d at 580 ("We have consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is *later* used to deprive the defendant of her liberty *in some way*.") (emphasis added); *Myvett v. Chicago Police Detective Edward Heerdt*, 232 F.Supp.3d 1005, 1017 (N.D. Ill. 2017) ("[T]he Seventh Circuit concluded that the plaintiff had no due process claim, but not just because he was acquitted at trial; [plaintiff] had no due process claim *both* because he had been acquitted a trial *and* because he had been released on bond following arrest.") (emphasis added).  Aligning with this reasoning, because plaintiff was never convicted or incarcerated, plaintiff suffered no liberty deprivation, and therefore suffered no due-process violation in this context.

This Court also notes that plaintiff's argument that *Jones v. Chicago*, 856 F.2d 985 (7th Cir. 1988), stood for the proposition that "the bringing of false charges based on fabricated evidence will alone give rise to the due process claim even when the false charges are dropped," [Doc. 122 at 20], is inaccurate.  The Seventh Circuit in *Jones* expressly did not examine the question of whether there could be a deprivation of liberty without due process

27

of law when the defendant is not imprisoned.  *Jones v. Chicago*, 856 F.2d at 992 (stating

flatly, "[i]t is not an issue in this appeal").  In fact, while that was an open question in the

Seventh Circuit at the time *Jones* was decided, the Seventh Circuit has since concluded that

a conviction *is* a prerequisite to a stand-alone due process claim based on fabrication of

evidence, as is evident by the recent Seventh Circuit precedent just discussed.  *See, e.g.*,

*Saunders-El*, 778 F.3d at 560–61.  Thus, plaintiff's statement of the law is, in fact, not the law

in the Seventh Circuit and, more importantly, is not the law in this Circuit.  The law in this Circuit

is that there can be no due process violation based upon an alleged fabrication of evidence

unless the fabricated evidence resulted in conviction.  *Massey*, 759 F.3d at 354.

Additionally, even if this Court assumes plaintiff's initial arrest deprived her of a liberty

interest, this Court nevertheless finds the plaintiff fails to allege "'a meaningful connection'

between her particular due process injury and the use of fabricated evidence against her,"

*Black v. Montgomery County*, 835 F.3d 358, 372 (3d Cir. 2016), which is required even in

those jurisdictions that recognize a stand-alone due process claim following acquittal.  *See*

*Massey*, 759 F.3d at 354 ("[C]onstitutional torts, like their common law brethren, require a

demonstration of both but-for and proximate causation.") (citing *Evans v. Chalmers*, 703

F.3d 636, 647 (4th Cir. 2012)).  Here, plaintiff alleges the fabrication of evidence, by way of

creating tire marks in the gravel, was done after plaintiff was already placed under arrest and

put into Trooper Walker's police cruiser [Doc. 110 at 11].  Thus, as the alleged fabrication of

evidence happened after plaintiff's arrest, it could not plausibly have had any impact on the

arrest, as the fabrication was neither the but-for or proximate cause of plaintiff's arrest.  *See*

*Ellis v. Thornsbury*, 2016 WL 3039961, at *14 (S.D. W.Va. May 27, 2016) (Copenhaver, J.) ("[P]laintiff's claimed Due Process violation must ultimately be grounded in an actual loss of liberty *caused by that conduct*.") (emphasis added).  Accordingly, the lack of a causal nexus between the alleged fabrication and plaintiff's alleged loss of liberty is yet another reason why plaintiff's due process claim based on the alleged fabrication of evidence cannot survive Trooper Walker's Motion to Dismiss.

Thus, for these reasons, plaintiff cannot state a due process violation based upon these allegations.

### c.  Alleged Retention of Plaintiff's Driver's License

Finally, Trooper Walker opines that plaintiff may be claiming a due process violation because Trooper Walker allegedly has not returned her driver's license.  In her response, plaintiff states that "[t]he issue of [Trooper] Walker's confiscation and conversion of Plaintiff's driver's license has been addressed under Section C.3., *supra*, where it is believed most appropriately recognized as a Fourth Amendment violation" [Doc. 122 at 20].  This Court agrees that this claim is most appropriately recognized as an alleged Fourth Amendment violation.  This Court discussed this claim as a Fourth Amendment violation above, and has ruled that the claim shall survive Trooper Walker's Motion to Dismiss.  Accordingly, this Court sees no reason to discuss it any further.

**D. Plaintiff's Count XIII—"Negligent or Intentional Infliction of Emotional Distress/Tort of Outrage"—shall survive Trooper Walker's Motion to Dismiss, as plaintiff has pled enough facts to state a claim to relief that is plausible on its face.**

Count XIII of plaintiff's Second Amended Complaint claims "negligent or intentional infliction of emotional distress/tort of outrage" [Doc. 110 at 47].  Therein, plaintiff alleges that

the "conduct by all Defendants herein, as set forth above in detail including the arrest and beating of Plaintiff for crimes she did not commit, the fabrication of evidence against Plaintiff, [and] the conspiracy to have Plaintiff falsely prosecuted . . . was so outrageous in character and so extreme in degree, that this conduct exceeded all bound of decency, and should be regarded as atrocious and utterly intolerable in a civilized community" [Id.].  Further, plaintiff states that "[d]efendants' conduct has driven Plaintiff, who had no prior criminal record of any kind, out of the State of West Virginia, caused her to suffer great embarrassment and damage to her good name and reputation, rendered it impossible for her to obtain suitable employment leading to insolvency, and caused her severe and permanent pain and injury to her neck, back, and left shoulder for which she has received treatment and continues to receive treatment, mental anguish, loss of enjoyment of life, medical expenses and property damage" [Id.].

Trooper Walker argues in his Motion to Dismiss that plaintiff "does not plead facts that, if true, could reasonably amount to outrageous conduct by Trooper Walker" [Doc. 119 at 22]. In response, plaintiff accuses Trooper Walker of "rewriting" her Second Amended Complaint to minimize her claims and "conform to the case law he cites," and argues that the "totality of [Trooper Walker's] abuses and the devastating emotional and physical consequences proximately caused by his outrageous behavior constitute outrageous conduct" [Doc. 122 at 21–22].

Upon consideration, this Court finds that plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  In *Pegg v. Herrnberger*, the Fourth Circuit described these related torts as follows:

30

Under West Virginia law, to establish the tort of outrage, more commonly known as intentional infliction of emotional distress, the plaintiff must establish four elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency;
>
> (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct;
>
> (3) that the actions of the defendant caused the plaintiff to suffer emotional distress and;
>
> (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Loudin v. Nat'l Liab. & Fire Ins.*, 228 W.Va. 34, 716 S.E.2d 696, 705 (2011).

It is difficult to overstate the high burden of proof required to sustain a tort claim for intentional infliction of emotional distress/outrage. West Virginia courts only find liability for outrage "'where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' This is a high standard indeed." *Keyes v. Keyes*, 182 W.Va. 802, 392 S.E.2d 693, 696 (1990) (quoting *Harless v. First Nat'l Bank*, 169 W.Va. 673, 289 S.E.2d 692, 703–04, n. 20 (1982)).

845 F.3d 112, 121–22 (4th Cir. 2017). A court must consider whether a defendant's actions

might reasonably be interpreted as outrageous. As the Supreme Court of Appeals of West

Virginia has explained:

> In evaluating a defendant's conduct in an intentional or reckless infliction of emotional distress claim, the role of the trial court is to first determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress. Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination.

*Hatfield v. Health Mgmt. Assocs. of W. Va.*, 223 W.Va. 259, 268, 672 S.E.2d 395, 404 (2008) (citing *Travis v. Alcon Labs., Inc.*, 202 W.Va. 369, 504 S.E.2d 419 (1998)).

Here, while this Court acknowledges "the high burden of proof required to sustain a tort claim for intentional infliction of emotional distress/outrage," *Pegg*, 845 F.3d at 122, and that it is "a difficult fact pattern to prove," *Hines v. Hills Dep't Stores, Inc.*, 193 W.Va. 91, 96, 454 S.E.2d 385, 389 (1994), at this stage in this litigation plaintiff is not required to *prove* such yet—she is only required to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Giarratano*, 521 F.3d at 302.  Just briefly recounting the facts contained in plaintiff's Second Amended Complaint, plaintiff has alleged Trooper Walker conducted the following actions: (1) screamed at plaintiff "I don't care" and "shut up" when plaintiff attempted to explain what happened with regard to the vehicle collision [Doc. 110 at 8]; (2) "smashed the right side of [plaintiff's] face into [defendant] DeGrave's work truck[,] breaking her eyeglasses" [Id. at 10]; (3) "slammed Plaintiff face down onto the ground, bloodying her knees" [Id.]; (4) "placed Plaintiff into the back seat of his police cruiser and turned up the already blaring hard rock music that was playing with the windows closed in the vehicle in order to place Plaintiff in further distress and anxiety and in order to distract her form the unlawful and counterfeit events that he conspired to conduct in the parking lot" [Id.]; (5) "deliberately and meanly delayed transporting Plaintiff to the hospital for treatment for an extended period of time" [Id.]; (6) "conspired with the remaining defendants to induce one of the defendants . . . to drive Plaintiff's Honda Pilot in order to produce skid marks in the gravel" to support the destruction of property charge [Id. at 11]; (7) provided "false written statements so as to procure false charges against" plaintiff [Id. at 13]; (8) "transmitted Plaintiff in the back

32

seat of his cruiser, with her arms handcuffed behind her back and unlawfully unbuckled, to the

Jefferson Medical Center and chided Plaintiff with words to the effect of 'don't show your ass'

at the hospital" [Id. at 15]; (9) "[u]pon arriving at the emergency entrance, Trooper Walker

pushed Plaintiff into the emergency room by her injured left arm, causing her to cry out in pain"

[Id. at 16]; (10) "conspired with Defendant Kelly Halbert, RN, to violate Plaintiff's privacy rights

. . . and obtained from Kelly (Newlin) Halbert a false statement to the effect that Plaintiff had

suffered no injuries and that she was abusive to Trooper Walker and created a disturbance,

falsely crying out in pain when entering the Hospital" [Id.]; (11) "spitefully and meanly and

maliciously insisted that an arraignment 'was not an option' and that Plaintiff was going to jail"

[Id. at 18]; (12) "prior to arraignment, with malevolent intent to sexually harass and further

physically and emotionally injure plaintiff . . . [s]ubjected Plaintiff to seriously unlawful rough car

rides running stop signs and driving recklessly at speeds approximately twice the posted

speed . . . tossing Plaintiff around in the back seat of his cruiser while unbuckled in a neck

brace and arm sling" [Id.]; (13) "[d]uring said car rides he played loud sexually oriented music

from a device in his cruiser, and, at one point touched her knee while she struggled to move

away from his hand, keeping his hand fixed behind the passenger's seat by Plaintiff's knee

for the duration of the ride" [Id.]; and (14) "[f]orced Plaintiff to sit for an extended period of time,

while in pain, knowing that she was in pain, shaking violently on a cold metal chair in the

hallway just in front of his cubicle wall at the police barracks while he sang sex songs, ate food

and made strange noises behind his desk, until he decided it was time to 'call the Magistrate'"

[Id.].

　　This Court finds that the totality of Trooper Walker's alleged conduct during this entire

encounter with plaintiff, and the alleged consequences of that conduct, as described above, all taken as true for the purposes of this Motion, state enough facts to state an outrage claim that is plausible on its face.  This Court acknowledges that it has the duty of determining whether this conduct may reasonably be considered outrageous, but at this time it must reserve judgment on this determination until further factual development reveals the veracity, or lack thereof, of plaintiff's allegations.  Plaintiff indeed will face a high burden of proof to sustain her claim at the summary judgment stage—but at this juncture, the factual allegations of her Second Amended Complaint are sufficient to allow her to attempt to meet that burden.

Accordingly, plaintiff's **Count XIII ("Negligent or Intentional Infliction of Emotional Distress/Tort of Outrage") will survive Trooper Walker's Motion to Dismiss**.  However, this claim will not survive summary judgment unless plaintiff can meet her high burden of proof that Trooper Walker's conduct was "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," *Keyes*, 182 W.Va. at 805, 392 S.E.2d at 696, along with the other required elements of the tort.

## CONCLUSION

For the reasons stated above, Defendant Trooper D.R. Walker's Motion to Dismiss Second Amended Complaint **[Doc. 118]** is hereby **GRANTED IN PART AND DENIED IN PART**.  The following claims in plaintiff's Second Amended Complaint are hereby **DISMISSED** as to Trooper Walker: (1) Malicious Prosecution (Count V), (2) Abuse of Process (Count VI), (3) Battery (Count VII), (4) First Amendment Violation for Retaliatory

Arrest (part of Count IX), and (5) Fourteenth Amendment Due Process Violations (part of Count IX).  Accordingly, this case shall proceed against Trooper Walker only on the remaining claims, which are: (1) Fourth Amendment Violation for Excessive Force (part of Count IX), (2) Fourth Amendment Violation for Unreasonable Search and Seizure (part of Count IX), and (3) Negligent or Intentional Infliction of Emotional Distress/Tort of Outrage (Count XIII).

It is so **ORDERED**.

The Clerk is directed to transmit a copy of this Order to all counsel of record herein.

**DATED**:  May 7, 2019.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE