**IN THE UNITED STATES NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG DIVISION**

**JULIE ANN HAMSTEAD,**

      **Plaintiff,**

**v.**                   **CIVIL ACTION NO.:**      **3:18-CV-79**
                                       **HONORABLE JOHN PRESTON BAILEY**

**FORMER TROOPER D.R. WALKER, individually;
KYLE REED KOPPENHAVER, individually;
A.B., an unknown individual known as the WVDOH
"Muscle Man" on the 2016 Ranson-Charles Town
Green Corridor Fairfax Blvd. Project;
andX, Y and Z, unknown persons who conspired and/or aided and
abetted in the fabrication of false criminal charges against
Julie Hamstead,**

      **Defendants.**

**KYLE KOPPENHAVER'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

This lawsuit arises from Plaintiff Julie Hamstead's ("Hamstead") protest of a sidewalk construction project at or near 507 and 509 S. Fairfax Boulevard in Jefferson County, West Virginia. Hamstead protested the project because it would have resulted in less available parking spaces near the aforementioned properties. (Second Am. Compl., ¶¶ 17-18, 21.) On January 22, 2019, Hamstead filed the third version of her complaint and alleged the following causes of action: (1) malicious prosecution and conspiracy to maliciously prosecute; (2) abuse of process; (3) battery; (4) aiding and abetting battery; (5) 42 U.S.C. § 1983 Violation, Violation of First, Fourth, and Fourteenth Amendment Rights; (6) negligence; (7) respondeat superior; (8) negligent hiring, training, and supervision; and (9) negligent or intentional infliction of emotional distress/tort of outrage.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

On April 21, 2016, Hamstead went to the West Virginia Division of Highway ("WVDOH") field office in Ranson, West Virginia and met with an engineer to determine whether any changes could be made to the sidewalk construction project that she opposed. (Second Am. Compl., ¶ 18.) Hamstead claims that during the meeting she was introduced to the State of West Virginia's "Muscle Man," whom, upon information and belief, was Defendant Kyle Koppenhaver ("Koppenhaver"). (Id. at ¶¶ 23-24.) Hamstead alleges that Defendant Rodney Hedrick ("Hedrick") told her that Koppenhaver "was there to ensure that the project was carried out without a hitch."[1] (Id.)

A few days later, on the afternoon of April 25, 2016, Hamstead parked her Honda Pilot in a private parking lot near the sidewalk construction project. (Id. at ¶¶ 26-28.) She parked next to a work truck owned by Defendant Jefferson Asphalt and operated by Defendant Dale DeGrave ("DeGrave") (Id.) She rolled down her window and asked Defendant John Morris ("Morris"), a Jefferson Asphalt employee, if she could ask him a question. (Id. at ¶ 30.) Morris rolled his eyes and began walking toward her vehicle. (Id.) At the same time, the truck operated by DeGrave allegedly drove into the left front driver's door of Hamstead's Honda Pilot. (Id. at ¶ 31.)

Following the accident, Hamstead walked toward DeGrave's truck, intending to exchange insurance information when three police officers approached them. (Id. at ¶ 34.) At that time, Morris allegedly told the police officers that Hamstead "came in here like a bat outa hell and didn't stop." (Id.) Allegedly, Koppenhaver was present in the parking lot and heard Morris's "false scream" to police. (Id. at ¶ 35.) Hamstead immediately protested and attempted to inform the police

---

[1] Hamstead characterizes this interaction as demonstrating the WVDOH agents' "expressed intent [ ] to threaten Plaintiff with retaliation should she pursue her protest." (Second Am. Compl., ¶ 25.) Hamstead does not bring any claims against WVDOH.

officers that the work truck operated by DeGrave hit her vehicle, but Defendant Trooper D.R. Walker ("Walker") allegedly told Hamstead to "shut up." (Id. at ¶ 36-37.) Hamstead claims she then "noticed a familiar WVDOH employee standing behind Trooper Walker, who she recognized as the same individual she had met the week before, Kyle Koppenhaver, whom they called "Muscle Man," and she begged" him to "tell the police the truth," as she believed Koppenhaver had "witnessed everything." (Id. at ¶ 38). Hamstead goes on to allege that, although Koppenhaver "knew that Plaintiff was telling the truth, he refused to speak up and tell the officer the truth and he just stared coldly back at Plaintiff. . ." (Id. at ¶ 39). Hamstead claims that Koppenhaver's "manifest intent and gesture was to support Morris's false statement and further escalate the interaction which he knew Trooper Walker had already escalated. . ." (Id.).

Hamstead claims that a group of WVDOH and Jefferson Contracting employees, including Koppenhaver, "huddled with police officers . . . conspiring to have Plaintiff falsely charged with destruction of property[.]" (Id. at ¶ 42.) She claims she "turned toward the group of WVDOH and Jefferson Contracting employees who had moved to the center of the parking lot, whereupon Trooper Walker grabbed Plaintiff's right arm, dragged her backward several feet, then spun her around and violently pulled her left arm up over her head and twisted it back and forth." (Id. at ¶ 43.) Walker ultimately placed Hamstead under arrest and put her in the back of his police cruiser. (Id. at ¶¶ 43-50.)

Hamstead alleges that Walker then "conspired with the remaining defendants to induce one of the defendants whose identity is unknown, to drive Plaintiff's Honda Pilot in order to produce skid marks in the gravel or to create the appearance that it had created skid marks." (Id. at ¶ 54.) These actions were allegedly "done in the presence of and at the instance of Trooper Walker and the other two defendant officers . . . to charge Plaintiff with the crimes of destruction of property,

disorderly conduct and obstructing an officer[.]" (Id. at ¶ 53.) Hamstead further alleges that "[u]pon information and belief,. . . [Koppenhaver was] present when Plaintiff's vehicle was moved" and that "upon information and belief . . . [Koppenhaver] knew that Plaintiff had not caused destruction of property to the vehicle driven by Dale DeGrave." (Id. at ¶¶ 57-58.)

Hamstead also claims that after being placed under arrest, Walker transported her to Jefferson Medical Center at which point he allegedly "conspired with Defendant Kelly Halbert, RN . . . and obtained from [Ms.] Halbert a false statement to the effect that Plaintiff suffered no injuries and that [Plaintiff] was abusive to Trooper Walker" while in the hospital. (Id. at ¶ 75.) Ultimately, Hamstead was charged with destruction of property, disorderly conduct and obstructing an officer. (Id. at ¶¶ 101-105.)

## II.    STANDARD OF REVIEW

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all well-pled facts contained in the complaint as true. Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc, 591 F.3d 250, 255 (4th Cir. 2009). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). This Court has previously held that "'unwarranted inferences, unreasonable conclusions, [and] arguments'" do not constitute well-pled facts. See Tobia v. Loveland, 2017 U.S. Dist. LEXIS 73806, *5, 2017 WL 2113752 (citing Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009)).

If a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Even though "detailed factual allegations" are not required, a complaint must

offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. Twombly, 550 U.S. at 555. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id; see also Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

### III.   DISCUSSION

**A. The Second Amended Complaint does not allege facts that show that Hamstead is entitled to any relief against Koppenhaver.**

The Second Amended Complaint does not articulate facts that demonstrate that Hamstead is entitled to relief from Koppenhaver under any legal theory. Although the Second Amended Complaint provides a vivid factual description, it fails to allege facts sufficient to state all elements of Hamstead's claims asserted against Koppenhaver. The facts alleged do not state a claim for relief against Koppenhaver, and the claims asserted against him in the Second Amended Complaint should be dismissed for failure to state a claim.

**1. The Second Amended Complaint does not state a claim for malicious prosecution against Koppenhaver.**

Hamstead's claim for malicious prosecution against Koppenhaver – allegedly arising out of the prosecution of Hamstead for destruction of property – should be dismissed because Hamsteasd does not allege facts that show that her prosecution was caused or procured by Koppenhaver.

In an action for malicious prosecution, a plaintiff must show four distinct elements: (1) the prosecution was initiated and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by the defendant; (3) that it was without probable cause and (4) that it was malicious. Morton v. Chesapeake & O. Ry., 184 W. Va. 64, 67, 399 S.E.2d 464, 467 (1990). If a plaintiff fails to prove any of these, she cannot recover for malicious prosecution. Id. "[P]rocurement within the meaning of a malicious prosecution suit requires more than just the submission of a case to a prosecutor; it requires that a defendant *assert control* over the pursuit of the prosecution." Norfolk S. Ry. Co. v. Higginbotham, 228 W. Va. 522, 528, 721 S.E.2d 541, 547 (2011) (emphasis added). The Higginbotham Court cited favorably an Ohio case for the proposition that "there is no procurement when 'an informer merely provides a statement of his belief of criminal activity and leaves the decision to prosecute entirely to the uncontrolled discretion of the prosecutor.'" Higginbotham, 228 W. Va. 522, 529, 721 S.E.2d at 548 (quoting Robbins v. Fry, 72 Ohio App. 3d 360, 594 N.E.2d 700 (1991)). Higginbotham recognizes that citizens must be given "wide latitude" in reporting incidents to authorities. Higginbotham, 228 W. Va. at 529, 721 S.E.2d at 548 (internal cites omitted).

Hamstead alleges that Koppenhaver "maliciously participated with . . . the other defendants in the instigation of the charge of destruction of property and Plaintiff's arrest . . . by ratifying and supporting Morris's aforesaid false statement to the police . . . ." (Second Am. Compl. ¶ 136). Hamstead further alleges that Koppenhaver "maliciously conceal[ed] the facts known to him when

Plaintiff begged him to tell Trooper Walker the truth . . . . though Koppenhaver had acted to set in motion the charges against Plaintiff" (Id.).   Hamstead goes on to assert that Koppenhaver "participated in the mock accident subsequent to the arrest of Plaintiff." (Id. at ¶ 138). Plaintiff further asserts that the "false charge of destruction of property was carried out under the countenance and approval of Defendant Koppenhaver who assisted the Office of the Prosecuting Attorney of Jefferson County. . . ." (Id. at 139). It is further alleged that Koppenhaver appeared at Plaintiff's trial to testify against Plaintiff[2]. . . ." (Id.).

Notably absent from the Second Amended Complaint are allegations that Koppenhaver "asserted control" over or was otherwise involved in the decision to prosecute Hamstead. In fact, the Second Amended Complaint repeatedly acknowledges and alleges that the decision to prosecute was left up to and made by law enforcement. (Second Am. Compl., ¶ 41) ("Trooper Walker violated police policy and protocol . . . with the intention of falsely charging Plaintiff with destruction of property . . .."); (Second Am. Compl. ¶ 102) ("Trooper Walker refused to request dismissal of the destruction of property charge and forced Plaintiff to defend the charge at trial even though there was no damage to DeGrave's vehicle[.]"); (Second Am. Compl. ¶ 104) ("Arising out of the destruction of property charge, Trooper Walker also charged Plaintiff with disorderly conduct . . . and obstructing an officer[.]"); (Second Am. Compl. ¶ 109) ("Trooper Walker . . . conspire[ed] . . . in an attempt to alter the statement of Dale DeGrave from his written statement . . . to his false statement made at trial[.]"); (Second Am. Compl. ¶ 141) ("Trooper Walker acted

---

[2] Hamstead's assertion that her prosecution was carried out under the countenance and approval of Koppenhaver because he appeared at trial to testify against her at trial is without merit. See Farris v. Morgan, No. 1-11CV79, 2011 WL 3758421, *1 (N.D.W.Va. 2011) ("[T]rial witnesses enjoy absolute immunity from civil suit for statements they make under oath as witnesses.") (citing Burke v. Miller, 580 F.2d 108, 110 (4th Cir. 1978)); Walker v. Tyler Cty. Comm'n, 886 F. Supp. 540, 545 (N.D.W.Va. 1995), rev'd in part, appeal dismissed in part sub nom. Walker v. Sopher, 164 F.3d 627 (4th Cir. 1998) (holding that a witness who commits perjury in a criminal trial is afforded absolute immunity from civil suit); Savoca v. Arnold, 2006 WL 1519336, *4 (S.D.W.Va. 2006) (holding that the common law provides absolute witness immunity for all persons integral to the judicial process).

with malice outside the scope of his official authority in maliciously charging Plaintiff with the offense of destruction of property without reasonable or probably cause[.]"); (Second Am. Compl. ¶ 143) ("Trooper Walker knew that to constitute the offense of destruction of property . . . under which he made the charge . . .."); (Second Am. Compl. ¶ 145) ("Trooper Walker's action in charging Plaintiff with destruction of property . . .."). <u>See</u> <u>also</u> (Second Am. Compl. ¶ 139) ("Koppenhaver . . . *assisted* the Office of Prosecuting Attorney of Jefferson County in prosecuting [the destruction of property charge].") (emphasis added).

Hamstead does not allege facts that show that Koppenhaver caused or procured her prosecution for destruction of property. Per the Second Amended Complaint, Koppenhaver may have "assisted" the Prosecutor by agreeing to testify, but he did not "assert control over the pursuit of the prosecution" of the destruction of property charge. <u>See</u> <u>Higginbotham</u>, 228 W. Va. at 528, 721 S.E.2d at 547. Accordingly, Hamstead's malicious prosecution claim against Koppenhaver should be dismissed for failure to state a claim.[3]

## 2. The Second Amended Complaint does not state a claim against Koppenhaver for abuse of process.

An abuse of process claim "consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process." Syl. Pt. 3, <u>Williamson v. Harden</u>, 214 W. Va. 77, 585 S.E.2d 369 (W. Va. 2003) (quoting <u>Preiser v. MacQueen</u>, 177 W. Va. 273, 352 S.E. 2d 22, 28 (W. Va. 1985) (emphasis added). In contrasting abuse of process from malicious prosecution, the <u>Preiser</u> Court noted:

> [a]buse of process differs from malicious prosecution in that the gist
> of the tort is not commencing an action or causing process to issue

---

[3] Moreover, Hamstead was charged with three offenses: (1) destruction of property; (2) disorderly conduct; and (3) obstructing an officer. (Second Am. Compl., ¶ 104.) She was acquitted on one of the three charges brought against her but convicted of two others. There is no West Virginia case which would provide a malicious prosecution cause of action to a criminal defendant who is charged with a host of crimes emanating from a specific incident, and convicted on a majority of them but acquitted on one.

> without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish. The purpose for which the process is used, once it is issued, is the only thing of importance. . . .

See also Rahmi v. Sovereign Bank N.A., Civil Action No. 3:12-CV-87, 2013 U.S. Dist. LEXIS 13923 at *6 (N.D.W. Va. Feb. 1, 2013). In order to state a claim for abuse of process, a plaintiff must allege an ulterior purpose, and a willful act in the use of the process not proper in the regular conduct of the proceeding. See id. ("Some definite act or threat not authorized by the process, or aimed at any objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.") The improper purpose usually takes the form of coercion to obtain a collateral advantage that is not part of the proceeding; it is this form of extortion, rather than the issuance or any formal use of the process itself, which constitutes the tort. Id. Thus, pre-process actions such as providing witness statements or even filing a complaint do not give rise to an abuse of process claim, and failure to allege willful abuse of process after its issuance is fatal to a claim. Southern States Coop, Inc. v. I.S.P. Co., Inc., 198 F. Supp. 2d 807, 816 (N.D.W. Va. 2002). The tort of abuse of process is disfavored and therefore is narrowly construed. 1 Am. Jur. 2d *Abuse of Process* § 1.

Hamstead does not allege that Koppenhaver was involved in the issuance of legal process. Likewise, Hamstead does not allege that Koppenhaver used the judicial process for an improper purpose **after** Hamstead was arrested and a criminal complaint was filed against her. Even more fatal to Hamstead's claim for abuse of process against Koppenhaver is that fact that there is no allegation that Koppenhaver engaged in any "definite act or threat" after process was initiated

against Hamstead.[4] See Southern States Coop., 198 F. Supp. 2d at 816 ("Here, in contrast, the plaintiffs have not alleged that the defendants used the counterclaim improperly after filing it. The Garvins' complaint alleges only that Southern States caused process to issue; it does not allege that Southern States willfully abused the process after its issuance."). Accordingly, Hamstead fails to state a claim for abuse of process upon which relief can be granted.

### 3.   Hamstead does not state a claim for battery against Koppenhaver.

This Court should dismiss Hamstead's battery claim against Koppenhaver because she does not allege that Koppenhaver caused a harmful contact with her to occur. A defendant is liable for battery if he or she acts intending to cause a harmful or offensive contact with a third person, and a harmful contact the third person occurs. W. Va. Fire & Cas. Co. v. Stanley, 216 W. Va. 40, 51, 602 S.E.2d 483, 494 (2004). Hamstead asserts that Koppenhaver is liable to her for battery because he "stood by and watched as [she] was physically abused[.]" (Second Am. Compl. ¶ 182.) The only defendant Hamstead alleges engaged in any contact with her is Walker. The Second Amended Complaint lacks any allegation of fact that Koppenhaver engaged in any harmful contact with Hamstead, which is an essential element for the tort of battery. Accordingly, this court should dismiss Hamstead's battery claim against Koppenhaver for failure to state a claim.

### 4.   Hamstead does not state a claim against Koppenhaver for aiding and abetting battery.

Hamstead does not allege facts sufficient to show that Koppenhaver gave substantial assistance to anyone alleged to have committed a battery against her. See Syl. Pt. 5, Courtney, 186 W. Va. 597, 413 S.E.2d 418 (1991). ("For harm resulting to a third person from the tortious

---

[4] To the extent Hamstead relies on her assertion that "DOH agents[ ] . . . threaten[ed] [Hamstead] with retaliation should she pursue her protest" (Second Am. Compl. at ¶ 25), such a claim is time barred. An action for abuse of process must be brought within one year from the time the right to bring the action accrued." Preiser, 177 W. Va. 273, 352 S.E.2d at 23. Further, this alleged "threat" occurred prior to process being issued.

conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.") Accordingly, Hamstead's aiding and abetting battery claim against Koppenhaver should be dismissed for failure to state a claim.

### 5. Hamstead does not state a claim for negligence against Koppenhaver.

Hamstead does not allege facts sufficient to support a claim for negligence against Koppenhaver. Hamstead generally alleges that Koppenhaver "breached his duty owed Plaintiff by negligently remaining silent, which had the effect of ratifying and confirming the false statements of Defendant Morris. . . ." (Second Am. Compl. ¶ 206). Hamstead does not elaborate as to how this alleged silence caused her the damages claimed in the Second Amended Complaint. "[A] plaintiff seeking to recover under a theory of negligence 'must prove each of four elements of a tort: duty, breach, causation, and damages.'" Wittenberg v. First Indep. Mortg. Co., 2011 U.S. Dist. LEXIS 39310, *31, 2011 WL 1357483 (N.D. W. Va. 2011) (citing Carter v. Monsanto, 212 W.Va. 732, 737, 575 S.E.2d 342, 347 (2002)). Koppenhaver's "silen[ce]," "ratif[ication] and/or confirm[ation]" of Morris's alleged statement did not cause any of the damages Hamstead alleges in the Second Amended Complaint.

Moreover, Hamstead cannot rely upon the factual allegations against Koppenhaver in the Second Amended Complaint for the basis of a negligence claim because she asserts that Koppenhaver engaged in intentional acts. See e.g., Smith v. Lusk, 533 F. App'x 280, 284 (4th Cir. 2013) ("At the outset, we observe that the district court correctly determined that the plaintiffs could not prevail on a claim of simple negligence based on Lusk's intentional act."); Evans v. Swisher, 2016 U.S. Dist. LEXIS 106707, *18, 2016 WL 4275748 (N.D. W. Va. Aug. 12, 2016) ("As a rule, plaintiffs [cannot] prevail on a claim of simple negligence based on [a defendant's]

intentional act.") (internal quotations and citations omitted); <u>Kennedy v. Riffle</u>, 2015 U.S. Dist. LEXIS 112052, 2015 WL 5031743, at *2 (N.D.W. Va. Aug. 25, 2015) ("Courts have long distinguished between wanton or willful conduct and mere negligence."). <u>See also Stone v. Rudolph</u>, 127 W.Va. 335, 346, 32 S.E.2d 742, 748 (1944) ("A willful act is an intentional act, and, strictly speaking, there can be no such thing as willful negligence, because negligence conveys the idea of inadvertence as distinguished from premeditation or formed intention."); <u>Turk v. Norfolk & W. Ry. Co.</u>, 84 S.E. 569 (1915) ("An action for a willful injury is not supported by a finding that the injury was the result of gross negligence.") (internal citations omitted).

Hamstead alleges that Koppenhaver engaged in intentional actions. She claims that Koppenahver, acting as a "Muscle Man," intentionally remained silent thereby ratifying and confirming the false statements of others to police regarding the events of April 25, 2016. (Second Am. Compl., ¶ 206). Such conduct may be deliberate, willful, and/or intentional — but it is not negligent. Accordingly, to the extent Hamstead's negligence claim is directed at Koppenhaver it should be dismissed for failure to state a claim.

### 6. Hamstead does not state a claim for negligent infliction of emotional distress or the tort of outrage against Koppenhaver.

To the extent directed at Koppenhaver, Hamstead's claim for negligent or intentional infliction of emotional distress and outrage should be dismissed because she does not allege sufficient facts to show that Koppenhaver engaged in legally outrageous behavior.

West Virginia recognizes a cause of action for intentional or reckless infliction of emotional distress. Syl. pt. 6 <u>Harless v. First Nat. Bank in Fairmont</u>, 169 W.Va. 673, 289 S.E.2d 692 (1982). In <u>Travis v. Alcon Laboratories, Inc.</u>, the West Virginia Supreme Court of Appeals set forth a four-part test by which the "tort of outrage" is proven:

> [I]n order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. [The four elements are]: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

202 W. Va. 369, 375, 504 S.E.2d 419 (1998). To qualify as legally outrageous, a defendant's conduct must be "'more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct.'" Id. (internal citation omitted). While Hamstead has pled some facts detailing Koppenhaver's conduct, including the fact that Koppenhaver allegedly witnessed Walker exert physical force on Hamstead and was aware that Hamstead did not cause destruction of property to the vehicle driven by DeGrave, she has not alleged facts that demonstrate Koppenhaver engaged in behavior that qualifies as outrageous for legal purposes. Moreover, the Second Amended Complaint does not allege any facts that show that any behavior by Koppenhaver caused Hamstead to suffer severe emotional distress. See Patrick v. PHH Mortg. Corp., 937 F. Supp. 2d 773, 791 (N.D.W. Va. March 27, 2013) ("Although Plaintiffs state in a conclusory fashion that they suffered extreme emotional distress that no reasonable person could endure, they plead no facts describing such distress, any physical, mental, or emotional injuries, any treatment, or the impact such suffering has had on their lives."). Accordingly, Hamstead's claim against Koppenhaver for intentional infliction of emotional distress and outrage should be dismissed.

### 7. Hamstead does not direct her § 1983, respondeat superior or negligent training, hiring and supervision claims at Koppenhaver.

Count IX of the Second Amended Complaint contains claims brought under 42 U.S.C. § 1983. (Second Am. Compl., at ¶¶ 186-191.) Hamstead's 42 U.S.C. § 1983 claims are not directed

at Koppenhaver. Moreover, to the extent directed at Koppenhaver, there is no allegation in the Second Amended Complaint that Koppenhaver was acting under the color of state law when he took the actions alleged in the Second Amended Complaint. Count XI of the Second Amended Complaint is a claim for respondeat superior. (Id. at ¶¶ 211-215.) It is asserted against the City of Charles Town, the City of Ranson, Charles Town General Hospital, Jefferson Contracting and Jefferson Asphalt. (Id. at ¶¶ 212-214.) Count XII of the Second Amended Complaint is for negligent training hiring and supervision and is also directed at City of Charles Town, the City of Ranson, Charles Town General Hospital, Jefferson Contracting and Jefferson Asphalt. (Id. at ¶¶ 217-220.)

## IV.   CONCLUSION

**WHEREFORE**, Defendant, Kyle Koppenhaver requests that this Court Grant his Motion to Dismiss the Second Amended Complaint, dismiss, with prejudice, all of Plaintiff's claims asserted against him, and grant him any additional or further relief this Court deems just and proper.

**KYLE KOPPENHAVER**
**By Counsel**

/s/ Kayla S. Reynolds
Kayla S. Reynolds (WVSB No. 13268)
Michael D. Dunham (WVSB No. 12533)
SHUMAN, MCCUSKEY & SLICER, PLLC
116 South Stewart St. Suite 100
Winchester, Virginia 22601
Phone: 540-486-4195

**IN THE UNITED STATES NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG DIVISION**

**JULIE ANN HAMSTEAD,**

      **Plaintiff,**

**v.**                                    **CIVIL ACTION NO.:        3:18-CV-79**
                                          **HONORABLE JOHN PRESTON BAILEY**

**FORMER TROOPER D.R. WALKER, individually,
KYLE REED KOPPENHAVER, individually,
A.B., an unknown individual known as the West Virginia
DOH "Muscle Man" on the 2016 Ranson-Charles Town
Green Corridor Fairfax Boulevard Project, and
X, Y, and Z, unknown persons who conspired and/or
aided and abetted in fabrication of false criminal
charges against Julie Hamstead,**

      **Defendants.**

## CERTIFICATE OF SERVICE

The undersigned, counsel for Defendant, Kyle Koppenhaver, hereby certifies that on this

5th day of August, 2019, I presented the foregoing *Kyle Koppenhaver's Memorandum of Law in*

*Support of Motion To Dismiss Plaintiff's Second Amended Complaint* to the Clerk of the Court for

filing and uploading to the CM/ECF system and the Clerk will notify counsel as follows:

        Braun A. Hamstead, Esquire
        Hamstead & Associates
        113 Fairfax Blvd.
        Charles Town, WV 25414
        *Counsel for Plaintiff*

        Keith C. Gamble, Esquire
        PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC
        2414 Cranberry Square
        Morgantown, WV 26508
        *Counsel for Defendants Sgt. Sigulinsky*
        *and the City of Ranson, WV*

Duane J. Ruggier, II, Esquire
Pullin, Fowler, Flanagan, Brown & Poe, PLLC
James Mark Building
901 Quanier Street
Charleston, WV 25301
*Counsel for Defendants Jason Newlin*
*and the City of Charles Town, WV*

Edward Levicoff
Levicoff Law Firm, P.C.,
4 PPG Place, Suite 200
Pittsburgh, PA 15222
*Counsel for Defendants Jefferson Contracting,*
*Inc.; Jefferson Asphalt Products Co., Inc.;*
*Dale DeGrave; Allen Shutts; and John Morris*

Alex M Greenberg, Esq
Dinsmore & Shohl, LLP
215 Don Knotts Blvd., Suite 310
Morgantown, WV 26501
*Counsel for Defendant West Virginia*
*University Hospitals-East Inc.*

Monté L. Williams, Esq. (WVSB #9526)
Mark G. Jeffries, Esq. (WVSB #11618)
Katherine M. Moore, Esq. (WVSB #12787)
Steptoe & Johnson PLLC
1085 Van Voorhis Road, Suite 400
P.O. Box 1616
Morgantown, WV 26507-1616
*Counsel for West Virginia State Police*
*and Trooper D. R. Walker*

West Virginia University Hospitals – East, Inc.
c/o Jennifer Mitchell
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202

/s/ Kayla S. Reynolds
Michael D. Dunham, Esq. (WVSB 12533)
Kayla S. Reynolds, Esq. (WVBN 13268)