IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**JULIE ANN HAMSTEAD**,

        Plaintiff,

**v.**                                         **CIVIL ACTION NO. 3:18-CV-79
(BAILEY)**

**FORMER TROOPER D.R. WALKER**, individually,
**KYLE REED KOPPENHAVER**, individually,
**A.B.**, an unknown individual known as the West Virginia
DOH "Muscle Man" on the 2016 Ranson-Charles Town
Green Corridor Fairfax Boulevard Project, and
**X**, **Y**, **and Z**, unknown persons who conspired and/or
aided and abetted in the fabrication of false criminal
charges against Julie Hamstead,

        Defendants.

## ORDER GRANTING KYLE KOPPENHAVER'S
## MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Currently pending before this Court is Kyle Koppenhaver's Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. 183], filed on August 5, 2019. Having been fully briefed, this matter is now ripe for decision. For the reasons set forth below, the Motion will be granted.

## BACKGROUND

On April 21, 2016, plaintiff went to the West Virginia Division of Highways' ("WVDOH") field office in Ranson, West Virginia, to determine whether any changes could be made to a sidewalk construction project that she opposed [Doc. 110 at 5]. Plaintiff alleges that during the meeting she was introduced to the State of West Virginia's "Muscle Man," whom plaintiff

believes was defendant Kyle Reed Koppenhaver ("Koppenhaver") [Id.]. Plaintiff alleges that defendant Rodney Hedrick ("Hedrick") told her that Koppenhaver "was there to ensure that the project was carried out without a hitch" [Id.].

Four days later, on April 25, 2016, plaintiff alleges there was a collision with her Honda Pilot caused by a work truck owned by defendant Jefferson Asphalt Products Company and/or its affiliate Jefferson Contracting (collectively "Jefferson") [Id. at 7]. Defendant Dale DeGrave ("DeGrave"), an employee of Jefferson, was allegedly driving the truck and defendant John Timothy Morris ("Morris"), also a Jefferson employee, was allegedly DeGrave's passenger [Id.]. Upon arrival of law enforcement personnel to the scene of the accident, Morris reported that it was plaintiff who caused the collision [Id. at 8]. Allegedly, Koppenhaver was present in the parking lot and heard Morris's "false scream" to police [Id.]. Plaintiff alleges that as she was protesting Morris's statement and trying to defend herself against such accusations, defendant Trooper Walker, with the West Virginia State Police, forcibly detained and arrested plaintiff for destruction of property, obstructing an officer, and disorderly conduct [Id. at 8–10].

Following plaintiff's arrest, she was placed in the back seat of Trooper Walker's police cruiser, at which time plaintiff alleges that a red dump truck was "parked directly beside Trooper Walker's cruiser to block Plaintiff's view of the parking lot" in order to "enable false evidence to be produced in the parking lot to support the false charge of Destruction of Property, to cover up Trooper Walker's excessive use of force, and to justify the other appendant charges of obstruction and disorderly conduct. It was done in the presence of, and at the instance of Trooper Walker and the other two defendant officers, and as part of a concerted action by the Jefferson Contracting and WVDOH defendants to charge Plaintiff with

the crimes of destruction of property, disorderly conduct and obstructing an officer and to provide cover to Trooper Walker for his excessive use of force incident to Plaintiff's unlawful arrest." [Id. at 11]. Plaintiff alleges such false evidence was created by the driving of plaintiff's Honda Pilot to create skid marks in the gravel to support Morris's story that it was plaintiff who caused the accident [Id.]. Plaintiff further alleges that "[u]pon information and belief . . . [Koppenhaver was] present when Plaintiff's vehicle was moved" and that "[u]pon information and belief . . . [Koppenhaver] knew that Plaintiff had not caused destruction of property to the vehicle driven by Dale DeGrave" [Id. at 12].

After this, plaintiff alleges other improper actions by Trooper Walker that were discussed in the Order ruling on his motion to dismiss, and which are mostly irrelevant to this present Motion. *See* [Doc. 150]. Thus, this Court will not rehash them here. The only other interaction Koppenhaver may have had with plaintiff following the events on April 25, 2016, was that Koppenhaver may have testified at plaintiff's bench trial before the magistrate—though this is not exactly clear, as plaintiff states that Koppenhaver did so in one portion of her Second Amended Complaint, yet does not include him in a list of those who testified in another portion of her Second Amended Complaint [Doc. 110 at 22, 30].

Relevant to this Motion, the Second Amended Complaint asserts the following claims against Koppenhaver: (1) "Malicious Prosecution and Conspiracy to Maliciously Prosecute" (Count V), (2) "Abuse of Process" (Count VI), (3) "Battery" (Count VII), (4) "Aiding and Abetting Battery" (Count VIII), (5) "42 U.S.C. § 1983 Violation, Violation of First, Fourth and Fourteenth Amendment Rights" (Count IX), (6) "Negligence" (Count X), and (7) "Negligent or Intentional Infliction of Emotional Distress/Tort of Outrage" (Count XIII).

3

## LEGAL STANDARD

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 570 (2007); *see also **Giarratano v. Johnson***, 521 F.3d 298, 302 (4th Cir. 2008) (applying the ***Twombly*** standard and emphasizing the necessity of *plausibility*). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. ***Edwards v. City of Goldsboro***, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. ***Anheuser-Busch, Inc. v. Schmoke***, 63 F.3d 1305, 1312 (4th Cir. 1995), *vacated on other grounds*, 517 U.S. 1206 (1996). In ***Twombly***, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," ***id***. at 555, upheld the dismissal of a Complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." ***Id***. at 570.

## DISCUSSION

### A.  Plaintiff's Malicious Prosecution (Count V), Battery (Count VII), and Aiding and Abetting Battery (Count VIII) claims will be dismissed.

Plaintiff also brought malicious prosecution and battery allegations against Trooper

Walker, which this Court dismissed. *See* [Docs. 83, 150]. As was the case with the other police officer defendants (Officer Newlin and Sergeant Sigulinsky), the Jefferson employees (Dale DeGrave, Allen Shutts, and John Timothy Morris), and Hedrick, here Koppenhaver had far less interaction with plaintiff than Trooper Walker during the arrest and subsequent criminal prosecution of plaintiff, and thus he should also be entitled to dismissal of these claims. Plaintiff would likely agree that of all the defendants included in her malicious prosecution and battery claims, or for that matter in all of her claims against individuals, Trooper Walker is alleged to be the most culpable. Thus, having dismissed these claims against Trooper Walker, this Court does not see how it could now allow these same claims to proceed against Koppenhaver, for whom the allegations pale in comparison to those of Trooper Walker. Similarly, as Trooper Walker has had the battery claim against him dismissed, Koppenhaver cannot be alleged to have aided and abetted in a battery that, as a matter of law, did not occur. Regardless, even if this Court had examined the battery and malicious prosecution claims related to Koppenhaver first, it would still dismiss them.

### 1. Battery and Aiding and Abetting Battery

Plaintiff fails to sufficiently plead a claim for battery or aiding and abetting battery against Koppenhaver. A person commits battery under West Virginia law when "(a) he *acts* intending to cause a harmful or offensive *contact* with the person of the other or a third person, or an imminent apprehension of such a *contact*, and (b) a harmful *contact* with the person of the other directly or indirectly *results*." **Pegg v. Herrnberger**, 845 F.3d 112, 121 (4th Cir. 2017) (quoting **West Virginia Fire & Cas. v. Stanley**, 216 W.Va. 40, 51, 602 S.E.2d 483,

5

494 (2004)) (emphasis added).  Thus, battery is an intentional tort, requiring both *action* and resulting *contact*.

With regard to Koppenhaver, as was the case with the Jefferson employees and Hedrick, neither action nor contact are alleged.  Plaintiff's Second Amended Complaint does not allege anywhere that Koppenhaver had any physical contact with the plaintiff.  All that is alleged is that Koppenhaver "owed plaintiff the duty to intervene with words and actions even though [his] conduct had instigated the abuse but stood by and watched as Plaintiff was physically abused" [Doc. 110 at 37].  Thus, plaintiff actually asserts a claim of inaction in which Koppenhaver made no contact with plaintiff—these allegations are insufficient to state a claim of battery.

Plaintiff also fails to state a claim under an aiding and abetting theory.  Under West Virginia law, a person generally does not have a duty to intervene to protect others from the intentional or even criminal conduct of third parties.  *See, e.g.*, **Miller v. Whitworth**, 193 W.Va. 262, 266, 455 S.E.2d 821, 825 (1995).  This is because "the foreseeability of risk is slight, and because of the social and economic consequences of placing such a duty on a person." *Id.*  While there is an exception to this rule where "the person's affirmative actions or omissions have exposed another to a *foreseeable high risk of harm* from the intentional misconduct," *id.* (emphasis added), no conduct that would implicate that exception is alleged here.  Even assuming Koppenhaver provided a false statement or failed to speak the truth about the cause of the accident, and that such "instigated" plaintiff's contact with the police, [Doc. 110 at 37], such conduct would not create a foreseeable high risk that plaintiff would be battered by the police.

6

Furthermore, "[t]he basis for imposing liability under an aiding and abetting theory is that if the breach of a duty by the actor was *substantially encouraged* by the conduct of a third party, then this party may also be found liable." **Price v. Halstead**, 177 W.Va. 592, 598, 355 S.E.2d 380, 386 (1987) (emphasis added). Here, while plaintiff summarily concludes that Koppenhaver, along with the Jefferson employees and Hedrick, "encouraged" a battery, [Doc. 110 at 38], the factual assertions of the Second Amended Complaint do not support that conclusory statement. To the contrary, plaintiff asserts that Koppenhaver, Hedrick, and the Jefferson employees "stood by and watched" [Id.]. As there are no allegations that Koppenhaver lent substantial aid or encouragement to Trooper Walker, plaintiff fails to state a claim for aiding and abetting battery against Koppenhaver.

Finally, dismissing the battery claim against Trooper Walker nullifies any claim for aiding and abetting battery, and the same nullifies any claim that Koppenhaver neglected any duty to intervene. Accordingly, plaintiff's **Battery (Count VII)** and **Aiding and Abetting Battery (Count VIII) claims** are hereby **DISMISSED**, as they pertain to Koppenhaver.

### 2. Malicious Prosecution and Conspiracy to Maliciously Prosecute

Plaintiff fails to sufficiently plead a claim for malicious prosecution or conspiracy to maliciously prosecute against Koppenhaver. "In an action for malicious prosecution, plaintiff must show: (1) that the prosecution was set on foot and conducted to its termination resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious. If plaintiff fails to prove any of these, he can not recover." Syl. Pt. 1, **Goodwin v. City of Shepherdstown**, 825 S.E.2d 363, 364 (W.Va. 2019) (not yet reported in West Virginia Reports) (quoting Syl. Pt. 1, **Radochio v. Katzen**, 92

7

W.Va. 340, 114 S.E. 746 (1922)).  Several of these elements present problems for plaintiff.

First, while plaintiff was acquitted of the destruction of property charge and the obstructing charge was ultimately dismissed pursuant to plaintiff's plea agreement, she now has a final conviction for the disorderly conduct charge.  *See* [Doc. 146-2].  This Court is aware of no West Virginia case which would provide a malicious prosecution cause of action to a defendant who did not *fully* prevail on her underlying criminal case.  *See **Kossler v. Crisanti***, 564 F.3d 181, 188 (3d Cir. 2009) ("[W]e note that various authorities refer to the favorable termination of a 'proceeding,' not merely a 'charge' or 'offense.'") (citing authorities); ***Heck v. Humphrey***, 512 U.S. 477, 484 (1994) ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal *proceeding* in favor of the accused.") (emphasis added); Syl. Pt. 1, ***Goodwin***, 825 S.E.2d at 364 ("[P]laintiff must show: (1) that the *prosecution* was set on foot and conducted to its termination resulting in plaintiff's discharge[.]") (emphasis added).

Second, Koppenhaver did not procure plaintiff's prosecution.  Within the context of a malicious prosecution action, procurement "requires more than just the submission of a case to a prosecutor; it requires that a defendant *assert control* over the pursuit of the prosecution." ***Norfolk S. Railway Co. v. Higginbotham***, 228 W.Va. 522, 528, 721 S.E.2d 541, 547 (2011).  The Second Amended Complaint alleges no facts from which it can plausibly be determined that Koppenhaver asserted any control over or was otherwise involved in the decision to arrest or prosecute plaintiff.  The Second Amended Complaint repeatedly acknowledges and alleges that the decision to arrest was made by Trooper Walker, who was

the one that arrested and filed the criminal complaint against plaintiff, and the prosecutor controlled the case following arrest. *See, e.g.*, [Doc. 110 at 9] ("Trooper Walker violated police policy and protocol . . . with the intention of falsely charging Plaintiff with destruction of property[.]"); [Id. at 21] ("Trooper Walker refused to request dismissal of the destruction of property charge and forced Plaintiff to defend the charge at trial even though there was no material damage to [defendant] DeGrave's vehicle[.]"); [Id.] ("Arising out of the destruction of property charge, Trooper Walker also charged Plaintiff with disorderly conduct . . . and obstructing an officer[.]"); [Id. at 31] ("Trooper Walker acted with malice outside the scope of his official authority in maliciously charging Plaintiff with the offense of destruction of property without reasonable or probable cause[.]"); *see also* **Goodwin**, 825 S.E.2d at 370 ("[C]ontrol of the criminal case . . . rested with the prosecutor").

Further, plaintiff seemingly argues that Koppenhaver assisted the prosecutor in prosecuting plaintiff because he testified at her trial, however "trial witnesses enjoy absolute immunity from civil suit for statements they make under oath as witnesses." **Farris v. Morgan**, 2011 WL 3758421, at *1 (N.D. W.Va. Aug. 24, 2011) (Keeley, J.) (citing **Burke v. Miller**, 580 F.2d 108, 110 (4th Cir. 1978)). That same immunity extends to any statements Koppenhaver made to the Jefferson County Prosecuting Attorney's Office leading up to the trial. *See, e.g.*, **Collins v. Red Roof Inns, Inc.**, 211 W.Va. 458, 462, 566 S.E.2d 595, 599 (2002) ("The litigation privilege is not limited to statements made in a courtroom during a trial; it extends to all statements or communications in connection with the judicial proceeding . . . It extends to *preliminary conversations* and interviews between prospective witnesses and an attorney as long as the communications are related to the prospective judicial action.") (emphasis in

9

original).  As to the allegation that Koppenhaver "ratif[ied] and support[ed] Morris's . . . false statement to the police that Plaintiff had caused the accident," [Doc. 110 at 30], such could not reasonably be determined to have caused plaintiff's arrest.  Simply claiming that someone caused an auto accident, or leading support to such a claim, even if untrue, is not conduct that would foreseeably result in that person being arrested, particularly on disorderly conduct and obstruction charges.  At bottom, making statements to police at the scene of the accident avers no prosecution at all, let alone one controlled by Koppenhaver.

Finally, plaintiff seemingly alleges Koppenhaver was involved in the alleged conspiracy to create tire tracks to support the destruction of property charge.  However, even if such fabrication took place, such was done after plaintiff had already been arrested.  Therefore, such fabrication could not have *caused* plaintiff's arrest.  Nor is there any indication that Trooper Walker would not have pursued prosecution against plaintiff without the alleged fabrication, particularly considering the amount of animosity Trooper Walker allegedly showed toward plaintiff personally and Trooper Walker's alleged "pattern [of] behavior to bully citizens, particularly women, emotionally and physically for his personal gratification" [Doc. 110 at 31].

Third, plaintiff's prosecution was not without probable cause.  Plaintiff was tried in a bench trial before the magistrate on all the charges brought against her.  Surely there would not have been a trial on these charges "without the magistrate making a determination that there was sufficient probable cause" to support the charges.  ***Goodwin***, 825 S.E.2d at 370; *see also* W.Va. R. Crim. Pro. 3 ("If from the facts stated in the complaint the magistrate finds probable cause, the complaint becomes the charging instrument initiating a criminal proceeding."); W.Va. R. Crim. Pro. 5 ("If a person arrested without a warrant is brought before

a magistrate, a complaint shall be filed forthwith which shall comply with the requirements of Rule 4(a) with respect to the showing of probable cause."). Defendant was acquitted of the destruction of property charge; the charge was not dismissed due to a finding of lack of probable cause. *See* [Doc. 119-1 at 4]. Further, plaintiff was convicted of the other two charges brought against her in magistrate court, and subsequently was convicted in circuit court of the disorderly conduct charge by way of her plea agreement. Thus, the fact that plaintiff was convicted weighs against her argument that probable cause was lacking for her prosecution. *See **Cameron v. Fogarty***, 806 F.2d 380, 387 (2d Cir. 1986) ("[A] conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause."); *see also* [Doc. 150 at 10–14] (presenting a more in depth discussion of this concept). Accordingly, plaintiff fails to state a claim for malicious prosecution.

Additionally, plaintiff's conspiracy to maliciously prosecute claim must also fail. "Without an actionable malicious prosecution, a conspiracy to maliciously prosecute claim . . . inevitably fails." ***Dominguez v. Sancha***, 50 F.Supp.3d 117, 130 (D.P.R. 2014); *see also **O'Dell v. Stegall***, 226 W.Va. 590, 625, 703 S.E.2d 561, 596 (2010) ("[A] civil conspiracy must be based on some underlying tort or wrong."); ***Goodarzi v. Hartzog***, 2013 WL 3110056, at *15 (S.D. Tex. June 14, 2013) (Harmon, J.) ("[C]onspiracy is a derivative tort because recovery is not based on the conspiracy, i.e., the agreement, but on the injury from the underlying tort.").

Furthermore, plaintiff does not plead enough facts to state a conspiracy to maliciously prosecute claim that is plausible on its face. "A complaint alleging a conspiracy in general, and conspiracy to maliciously prosecute specifically, requires 'enough factual matter (taken

as true) to suggest that an agreement was made.'" **Blanchard v. Prater**, 2018 WL 1547125, at *3 (W.D. Va. March 29, 2018) (Dillon, J.).   "While [plaintiff] need not produce direct evidence of a meeting of the minds, [plaintiff] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." **Hinkle v. City of Clarksburg**, 81 F.3d 416, 421 (4th Cir. 1996).

Here, plaintiff has not provided enough facts to state a plausible claim that Koppenhaver conspired with all the other individual defendants—consisting of police officers from three different police departments and employees of a contracting company, all of whom just happened upon one another at an accident scene—to make an agreement to maliciously prosecute plaintiff with the same conspiratorial objective in mind.  Plaintiff alleges this scheme was hatched when the police officer defendants, Jefferson employee defendants, and WVDOH employee defendants (including Koppenhaver) "huddled" together at the scene of the accident, "conspiring to have Plaintiff falsely charged with destruction of property," [Doc. 110 at 9], and that the ultimate goal in maliciously charging plaintiff with destruction of property "was done to justify [Trooper Walker's] unlawful use [of] excessive force in arresting Plaintiff[.]" [Id. at 32].  Significantly, however, Trooper Walker, the alleged ringleader of this conspiracy and the one who actually arrested and charged plaintiff, was not a part of this "huddle" in which the scheme is alleged to have formed.  *See* [Id. at 9].  Furthermore, this huddle occurred *before* the alleged excessive use of force by Trooper Walker, which is what this alleged conspiracy was meant to cover up.  Simply put, plaintiff's speculation, conjecture, and conclusory allegations with regard to her conspiracy claim are not enough to "nudge[] [her] claim[] across the line from conceivable to plausible." **Twombly**, 550 U.S. at 570.

12

Accordingly, plaintiff's **Malicious Prosecution and Conspiracy to Maliciously Prosecute (Count V) claims** are hereby **DISMISSED**, as they pertain to Koppenhaver.

**B.  Plaintiff has failed to allege an Abuse of Process (Count VI) claim upon which relief can be granted.**

Plaintiff fails to state a claim for abuse of process against Koppenhaver because it is not alleged that he engaged in any "process" at all.  "Generally, abuse of process consists of the willful or malicious misuse or misapplication of *lawfully issued process* to accomplish some purpose not intended or warranted by that process."  Syl. Pt. 3, ***Williamson v. Harden***, 214 W.Va. 77, 78, 585 S.E.2d 369, 370 (2003) (quoting ***Preiser v. MacQueen***, 177 W.Va. 273, 279, 352 S.E.2d 22, 28 (1985); ***Wayne Cty. Bank v. Hodges***, 175 W.Va. 723, 338 S.E.2d 202 (1985)) (emphasis added).   In considering an abuse of process claim, the Supreme Court of Appeals of West Virginia defined "process" as:

> a "summons or writ, esp. to appear or respond in court."   Black's Law Dictionary 1325 (9th ed. 2004).   A "summons" is "a writ or process commencing the plaintiff[']s action and requiring the defendant to appear and answer" or "a notice requiring a person to appear in court as a juror or witness." Id. at 1574.  A "writ" is "a court's written order, in the name of a state or other competent legal authority, commanding the addressee to do or refrain from doing some specified act."  Id. at 1747, 98 S.E. 665.

***Brass Ring, Inc. v. Johnson***, 2013 WL 5967039, at *4 (W.Va. Nov. 8, 2013) (unpublished opinion).  Thus, the "process" must commence some legal action, command some act, or confer some obligation of appearance.

Here, missing from plaintiff's allegations is any claim that Koppenhaver issued any process, filed any complaint, performed any arrest, prosecuted any case, or requested any court action whatsoever.  Thus, plaintiff's Second Amended Complaint does not allege

Koppenhaver took part in any form of issued process as it relates to plaintiff's criminal charges, as the alleged actions of Koppenhaver—not speaking up at the accident scene and possibly testifying as a fact witness at trial—did not commence any legal action, command any act of the plaintiff, or confer any obligation of appearance. *See Williamson*, 214 W.Va. at 81, 585 S.E.2d at 373 (dismissing abuse of process claim where defendant "did not cause any process to issue, did not file any suit or complaint, and did not request a court to take any action, whatsoever").

Furthermore, as this Court noted when dismissing the abuse of process claim against Trooper Walker:

> Abuse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish.  The purpose for which the process is used, once it is issued, is the only thing of importance . . . .

> The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, [a] willful act in the use of the process not proper in the regular conduct of the proceeding.  Some definite act or threat not authorized by the process, or aimed at any objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.  *The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as the threat or club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitute the tort.*

*Bennett v. Equitable Tr. Mortg. Corp.*, 2010 WL 342179, at *2 (N.D. W.Va. Jan. 22, 2010) (Bailey, J.) (citing *Preiser*, 177 W.Va. at 279 n.8, 352 S.E.2d at 28 n.8); *see also Rahmi v.*

***Sovereign Bank N.A.***, 2013 WL 412623, at *2 (N.D. W.Va. Feb. 1, 2013) (Groh, C.J.).

Here, as was the case with Trooper Walker, the other police officer defendants, the Jefferson employee defendants, and Hedrick, there are no allegations that Koppenhaver engaged in any such coercive or extortive conduct, which is what the tort of abuse of process contemplates. *See* [Doc. 150 at 7–10] (presenting a more in depth discussion of this concept). Furthermore, as was also the case with the other defendants, plaintiff does not allege that process was "lawfully issued" and "justified in itself," but rather that she was falsely charged, making the process itself unlawful. Such claims ring in malicious prosecution rather than abuse of process.

Accordingly, plaintiff's **Abuse of Process (Count VI) claim** is hereby **DISMISSED**, as to Koppenhaver.

## C. Plaintiff's First Amendment claim brought pursuant to 42 U.S.C. § 1983, asserted in Count IX of her Second Amended Complaint, shall be dismissed.

Plaintiff alleges that Koppenhaver, acting together with the other individual defendants at the accident scene, "violate[d] Plaintiff's First Amendment rights to protest the unvetted and unlawful taking of her property by the Department of Highways and the Cities of Charles Town and Ranson" [Doc. 110 at 40]. Thus, plaintiff seemingly attempts to bring a § 1983 claim against Koppenhaver for allegedly violating plaintiff's First Amendment right to protest. However, there is no allegation in the Second Amended Complaint that Koppenhaver was acting under color of state law when he took the actions alleged—thus, § 1983 does not apply to him. *See, e.g.*, ***American Mfrs. Mut. Ins. Co. v. Sullivan***, 526 U.S. 40, 49–50 (1999) ("To state a claim for relief in an action brought under § 1983, respondents must establish that they

were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.  Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'") (quoting ***Blum v. Yaretsky***, 457 U.S. 991, 1002 (1982)).  Further, to the extent plaintiff's claim is premised upon Koppenhaver's possible participation as a witness in her criminal prosecution, this Court has previously recognized that "a witness testifying on behalf of the prosecution at a criminal trial is not acting under color of state law." ***Farris v. Morgan***, 2011 WL 3758421, at *1 (N.D. W.Va. Aug. 24, 2011) (Keeley, J.).  Additionally, as previously noted, trial witnesses enjoy absolute immunity from civil suit for statements they make under oath as witnesses.  *See* ***Burke v. Miller***, 580 F.2d 108, 110 (4th Cir. 1978).

Furthermore, even if Koppenhaver could be considered a state actor, this Court would still dismiss this First Amendment claim as insufficiently pled for the reasons articulated in this Court's Order Granting Defendants Officer Jason Newlin and City of Charles Town's Motion to Dismiss Plaintiff's Second Amended Complaint and Granting Defendants City of Ranson and Sergeant Keith Sigulinsky's Motion to Dismiss in Lieu of Answer.  *See* [Doc. 151 at 15–17].  Accordingly, plaintiff's **First Amendment § 1983 (Count IX) claim** is hereby **DISMISSED**, as to Koppenhaver.

### D.  Plaintiff's Negligence (Count X) claim shall be dismissed.

Plaintiff alleges that Koppenhaver "owed Plaintiff the duty to correct mistruths when physically in the presence of Trooper Walker and Plaintiff who was begging him to disclose the truth about the accident," and that Koppenhaver breached this duty by "negligently

remaining silent, which had the effect of ratifying and confirming the false statements of Defendant Morris."  [Doc. 110 at 42].  This Court finds that plaintiff does not allege facts sufficient to support a claim of negligence against Koppenhaver.

As was the case with Officer Newlin, Sergeant Sigulinsky, and Hedrick, it is clear that plaintiff's theory is that Koppenhaver's alleged actions were intentional, not negligent. Although plaintiff may plead in the alternative, there must be some support in fact for doing so. Here, plaintiff's negligence claim against Koppenhaver simply is not supported by her factual allegations, which allege a tapestry of malicious, willful, and conspiratorial intentional acts. *See* [Doc. 151 at 19–20] (presenting a more in depth discussion of this topic); ***Evans v. Swisher***, 2016 WL 4275748, at *6–7 (N.D. W.Va. Aug. 12, 2016) (Keeley, J.) (dismissing negligence claim where alleged conduct "can only be described as deliberate, willful, and intentional—not negligent" and holding that "[s]imply claiming that actions could be negligent or grossly negligent does not negate the intentional nature of the actions pled in [plaintiff's] factual allegations").

Accordingly, plaintiff's **Negligence (Count X) claim** is hereby **DISMISSED**, as it pertains to Koppenhaver.

**E. Plaintiff's Count XIII—"Negligent or Intentional Infliction of Emotional Distress/Tort of Outrage"—shall be dismissed.**

Count XIII of plaintiff's Second Amended Complaint claims "negligent or intentional infliction of emotional distress/tort of outrage" [Doc. 110 at 47].  Therein, plaintiff alleges that the "conduct by all Defendants herein, as set forth above in detail including the arrest and beating of Plaintiff for crimes she did not commit, the fabrication of evidence against Plaintiff,

[and] the conspiracy to have Plaintiff falsely prosecuted . . . was so outrageous in character and so extreme in degree, that this conduct exceeded all bounds of decency, and should be regarded as atrocious and utterly intolerable in a civilized community" [Id.].   Upon consideration, this Court finds that this claim must also be dismissed.

First, the conduct of Koppenhaver that plaintiff claims is outrageous concern the allegations with regard to her claims for aiding and abetting battery, malicious prosecution, and conspiracy to maliciously prosecute (which include claims for fabrication of evidence). This Court having concluded that the conduct of Koppenhaver did not rise to the level of supporting any of these claims, and therefore dismissing those claims along with all other claims against Koppenhaver, this Court finds as a matter of law that Koppenhaver's alleged conduct was not so extreme as to support a claim for intentional infliction of emotional distress.   *See Rhodes v. Smithers*, 939 F.Supp. 1256, 1281 (S.D. W.Va. 1995) (Copenhaver, J.) (dismissing intentional infliction of emotional distress claim where conduct of defendant police officers did not rise to the level of supporting a malicious prosecution action); *Hines v. Hills Dept. Stores, Inc.*, 193 W.Va. 91, 96, 454 S.E.2d 385, 390 (1994) (a finding for defendant on a malicious prosecution claim negates a claim for outrageous conduct inasmuch as the showings necessary to support "a malicious prosecution case are less severe than an action for outrageous conduct"); *Pegg v. Herrnberger*, 845 F.3d 112, 122 (4th Cir. 2017) ("[Defendant's] conduct does not rise to the level of battery, much less clear the much higher bar required for outrage.").

Second, even if plaintiff could have sustained all of her claims against Koppenhaver, this Court would still find that Koppenhaver's alleged actions may not "reasonably be regarded

18

as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress." *Hatfield v. Health Mgmt. Assocs. of W.Va.*, 223 W.Va. 259, 268, 672 S.E.2d 395, 404 (2008) (citing *Travis v. Alcon Labs., Inc.*, 202 W.Va. 369, 504 S.E.2d 419 (1998)). This Court allowed this claim to survive Trooper Walker's Motion to Dismiss, however, the alleged actions of Koppenhaver here pale in comparison to the laundry list of allegations against Trooper Walker.   The conduct alleged to have caused plaintiff's emotional distress—her arrest, allegedly by use of excessive force, and prosecution—was not the conduct of Koppenhaver.  Simply, "the facts of this case[, at least with regard to Koppenhaver,] are markedly milder than the kind of conduct courts applying West Virginia law have found necessary to support an intentional infliction of emotional distress claim." *Pegg*, 845 F.3d at 122 (collecting cases).

Finally, as a negligent infliction of emotional distress claim requires some negligent conduct, and this Court has dismissed plaintiff's negligence claim against Koppenhaver, this Court finds that plaintiff cannot support a negligent infliction of emotional distress claim.  Nor could plaintiff's allegations support such a claim even if her negligence claim had survived, as plaintiff has alleged no physical injury arising from any emotional or mental trouble, nor has she alleged any facts which implicate any of the exceptions to the physical injury requirement. *See, e.g.*, *Heldreth v. Marrs*, 188 W.Va. 481, 484, 425 S.E.2d 157, 160 (1992) ("[T]his Court held that there can be no recovery in tort for emotional and mental trouble alone without ascertainable physical injuries arising therefrom, when the defendant's negligent conduct has caused no impact resulting in substantial bodily injury."); *Travis v. JP Morgan Chase Bank, N.A.*, 2012 WL 3193341, at *5 (N.D. W.Va. Aug. 6, 2012) (Bailey, J.) (outlining the exceptions

19

to the physical injury requirement, which include witnessing a person closely related to the plaintiff suffer critical injury or death as a result of the defendant's negligent conduct, or based upon the fear of contracting a disease).

Accordingly, plaintiff's **Negligent or Intentional Infliction of Emotional Distress/Tort of Outrage (Count XIII) claim** is hereby **DISMISSED**, as it pertains to Koppenhaver. Furthermore, this being the last of the claims asserted against Koppenhaver, and having dismissed all previous claims against Koppenhaver, this Court hereby **ORDERS** that Koppenhaver is hereby **DISMISSED** from this civil action.

### F. The other remaining defendants, with the exception of Trooper Walker, will also be dismissed from this action.

With the dismissal of Koppenhaver, the following defendants remain in this action: (1) Trooper Walker, (2) "A.B., an unknown individual known as the West Virginia DOH 'Muscle Man' on the 2016 Ranson-Charles Town Green Corridor Fairfax Boulevard Project," and (3) "X, Y, and Z, unknown persons who conspired and/or aided and abetted in the fabrication of false criminal charges against Julie Hamstead." For the reasons stated below, this Court will dismiss the latter two of these defendants, leaving Trooper Walker as the only remaining defendant in this action.

As to defendant "A.B.," plaintiff states in her Complaint that "A.B.," the State's "Muscle Man," is actually Koppenhaver, not some unknown individual. *See* [Doc. 110 at 4, 6]. Thus, as Koppenhaver has been dismissed from this action, his alter ego, "A.B./Muscle Man," should be dismissed as well. Accordingly, defendant "A.B." is hereby **DISMISSED** from this civil action.

20

As to the fictitious defendants identified as "X, Y, and Z," plaintiff has not properly identified or served "X, Y, and Z" to date, despite having amended her Complaint twice. Furthermore, plaintiff's Second Amended Complaint only complains about the actions of the named defendants, not any actions of "X, Y, and Z."  Thus, plaintiff's Second Amended Complaint does not include sufficient allegations to state a claim against any fictitious defendant.  As such, all claims against fictitious defendants are due to be dismissed.  *See, e.g.*, ***New v. Sports & Recreation, Inc.***, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997) ("[F]ictitious party practice is not permitted in federal court[.]"); ***Sanders-Alloway v. Mabry***, 2008 WL 552648, at *2 (M.D. Ala. Feb. 27, 2008) (Fuller, C.J.) ("[F]ictitious defendants 'X, Y, and Z' are not proper parties to this action.  This designation does not adequately describe the persons to be sued so that such persons can be identified for service.  More importantly . . . the Federal Rules of Civil Procedure do not provide for fictitious party practice as it is incompatible with federal procedure.") (citing ***Dean v. Barber***, 951 F.2d 1210, 1216 (11th Cir. 1992)).  Accordingly, defendants "X, Y, and Z" are hereby **DISMISSED** from this civil action.

## CONCLUSION

For the reasons stated above, Kyle Koppenhaver's Motion to Dismiss Plaintiff's Second Amended Complaint **[Doc. 183]** is hereby **GRANTED**.  Accordingly, Plaintiff's Second Amended Complaint **[Doc. 110]** is hereby **DISMISSED WITH PREJUDICE** as to defendants Kyle Reed Koppenhaver, "A.B.," and "X, Y, and Z."

It is so **ORDERED**.

The Clerk is directed to transmit a copy of this Order to all counsel of record herein.

**DATED**: September 4, 2019.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE