**In the Matter of:**

JULIE ANN HAMSTEAD

vs

FORMER TROOPER D.R. WALKER

WALKER, DEREK

*December 10, 2019*

## Liberty Reporting

**West Virginia, Virginia & Maryland**

**(304) 260-0670  |  (301) 992-5264**

**EXHIBIT 10**

DEREK WALKER, 12/10/2019

1      Q.     What were you doing there?

2      A.     There was a disturbance called out in that

3   area and I was close by and I went by to make sure

4   everything was okay.

5      Q.     Why did they need you for an accident in a

6   private parking lot?  Why did they need you?

7      A.     It was not put out as an accident in a private

8   parking lot.  It was put out as a disturbance.

9      Q.     You don't remember the call on your radio

10   saying the female now crashed into one of the trucks?

11   You don't remember hearing that?

12          MR. JEFFRIES:  Objection.  Misstates the

13     evidence.

14     A.     Possibly.  I just know that there was a

15   disturbance there and I was headed there.

16     Q.     Okay.  What does disturbance mean to you?

17     A.     A myriad of things.

18     Q.     Could be some violence?

19     A.     Yes.

20     Q.     And if there is a possibility of violence,

21   wouldn't you want to record that on your dash cam?

22     A.     I didn't see anything when I pulled up so, no.

23     Q.     But the only reason you were there was because

24   of the possibility of some sort of violence?

DEREK WALKER, 12/10/2019

1      Q.     I didn't say you did.  Please listen to my

2   question.  Prior to a call being made to the magistrate,

3   you did not formulate a belief as to whether she would

4   be released on personal recognizance if arraigned?

5      A.     I can't testify to that.

6      Q.     You don't know?

7      A.     I don't.

8      Q.     What caused you to make the decision that she

9   was eligible for personal recognizance release at the

10   time of that call to Magistrate?  What caused that?

11      A.     Say that again.

12      Q.     What led you to believe she was going to be

13   leased on P.R.?

14      A.     Because you called the magistrate out.

15      Q.     That was enough?

16      A.     Yes.

17      Q.     That was enough?

18      A.     Yes.

19      Q.     You knew that if the magistrate came out, she

20   would be released on P.R. then?

21      A.     It appeared that you were friends with this

22   magistrate and yes.

23      Q.     So you believe that Julie Hamstead got special

24   treatment because I was friends with the magistrate?

DEREK WALKER, 12/10/2019

1      Q.    There's a car there?

2      A.    Yes.

3      Q.    You're pulling in?

4      A.    Yeah, that's me.

5      Q.    At 1631 you pull in.

6      A.    Uh-huh.

7      Q.    I would ask you -- and then you said that

8   Newlin pulled in behind you?

9      A.    Yes, that's him pulling in now in the

10  Explorer.

11     Q.    Can you see -- can you see yourself getting

12  out of your car?  That's Newlin getting out of his door;

13  correct?

14     A.    Yes.

15     Q.    1631:26.  Can you see you getting out of your

16  car?

17     A.    No.

18     Q.    It looks like Newlin walked alone, doesn't it?

19     A.    I can't tell.

20     Q.    Show it to you again.  Tell me if you can see

21  you getting out of your car?  Did you see you getting

22  out of your car?

23     A.    No.  Newlin's car is blocking it.

24     Q.    But you would have to walk either behind or in