# IN THE MAGISTRATE COURT OF ____Jefferson____ COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA

Defendant: Julie Ann Hamstead

Address: 5074 Charles Town Road Kearneysville, West Virginia 25430

Social Security No.: [redacted]
Driver's License No.: WV - [redacted]
Date of Birth: [redacted]

Case No. 16M19M01110

☒ Misdemeanor
☐ Felony

## CRIMINAL COMPLAINT

I, the undersigned complainant, upon my oath or affirmation, state the following is true and correct to the best of my knowledge and belief. On or about __04__ / __25__ / __16__ (date) in ____Jefferson____ County, West Virginia, in violation of W.Va. Code *(cite specific section, subsection, and/or subdivision as applicable)* 61-6-1b    61-5-17(a)   Disorderly Conduct    Obstructing an Trooper    (Julie Ann Hamstead) the defendant did *(state statutory language of offense)* Destruction of Property (61-3-30)

See Attachment "A"

I further state that this complaint is based on the following facts: See Attachment "B"

Continued on attached sheet? ☒ yes ☐ no

Complainant (who appears before magistrate):

Name: D. R. Walker
Address: 409 Industrial Boulevard
Kearneysville, West Virginia 25430
Telephone: (307) 725 - 9779
Office or title, if any: Senior Trooper

Complainant Signature: [signed]

On this complaint, sworn or affirmed before me and signed this date by complainant in my presence, the item(s) checked below apply:

☒ Probable cause found
☐ Summons issued
☐ Warrant issued
☒ Warrantless arrest
☐ No probable cause found

Magistrate Signature: [signed MP Rissler]
Date: 4-26-16

Mag. Ct. Crim. Rules 3, 4 *
SCA-M310-1 / 1-98

 SCANNED

White - return
Green - defendant
Yellow - file
Pink - complainant
Goldenrod - prosecutor

**EXHIBIT 22**

WVSP FORM 17-A
REV 03/2016

Page 1 of 2

# REPORT OF CRIMINAL INVESTIGATION

DETACHMENT FILE NUMBER     Attachment "A"

MODE OF OPERATION

ACTION TAKEN     **§61-6-1b. Disorderly conduct; penalty.**
(a) Any person who, in a public place, any office or office building of the State of West Virginia, or in the State Capitol complex, or on any other property owned, leased, occupied or controlled by the State of West Virginia, a mobile home park, a public parking area, a common area of an apartment building or dormitory, or a common area of a privately owned commercial shopping center, mall or other group of commercial retail establishments, disturbs the peace of others by violent, profane, indecent or boisterous conduct or language or by the making of unreasonably loud noise that is intended to cause annoyance or alarm to another person, and who persists in such conduct after being requested to desist by a law-enforcement officer acting in his or her lawful capacity, is guilty of disorderly conduct, a misdemeanor and, upon conviction thereof, may be confined in jail for twenty-four hours or fined not more than $100: Provided, That nothing in this subsection should be construed as a deterrence to the lawful and orderly public right to demonstrate in support or protest of public policy issues.

**§61-5-17. Obstructing officer; fleeing from officer; making false statements to officer; interfering with emergency communications; penalties; definitions.**
(a) A person who by threats, menaces, acts or otherwise forcibly or illegally hinders or obstructs or attempts to hinder or obstruct a law-enforcement officer, probation officer or parole officer acting in his or her official capacity is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than $50 nor more than $500 or confined in jail not more than one year, or both fined and confined.

**§61-3-30. Removal, injury to or destruction of property, monuments designating land boundaries and of certain no trespassing signs; penalties.**
(a) If any person unlawfully, but not feloniously, takes and carries away, or destroys, injures or defaces any property, real or personal, of another, he or she is guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than five hundred dollars, or confined in the county or regional jail not more than one year, or both fined and imprisoned.

*[Signature]*
Sr. Trooper D. R. Walker
West Virginia State Police
Troop 2 – Charles Town

COPY TO

# REPORT OF CRIMINAL INVESTIGATION

| | |
|---|---|
| DETACHMENT FILE NUMBER | Attachment "B" |
| MODE OF OPERATION | |
| ACTION TAKEN | On Monday, April 25, 2016, at approximately 1626 hours, Sr. Trooper Walker overheard radio traffic advising an active disturbance within the State of West Virginia, County of Jefferson, City of Charles Town, further described as the parking lot of American Public University at the intersection of North George Street and 1st Avenue. Sr. Trooper Walker advised he would assist with the above call. |

At approximately 1628 hours, Sr. Trooper Walker arrived on scene with Officer Newlin of the Charles Town Police Department, and observed Sergeant Sigulinski, of the Ranson Police Department, conversing with several male subjects that appeared to have been working on the roadway and the suspect, identified as Julie Hamstead, who appeared to be irate yelling that the male speaking with Sergeant Sigulinski was lying. Sr. Trooper Walker heard the male speaking with Sgt. Sigulinski advising the suspect had been causing a disturbance for quite some time during the day stating she would lay down on the sidewalk in an attempt to keep the men form pouring concrete. The male further stated the suspect was speeding through the above parking lot before she struck their work truck. The suspect continued to interrupt the male speaking with Sgt. Sigulinski at which time Sr. Trooper Walker instructed the suspect to back away from them and walk to his location approximately ten (10) feet away. The suspect began yelling at Sr. Trooper Walker but complied with the order for a short time until the male began speaking again. The suspect again approached Sgt. Sigulinski from behind and began stating the male was lying and creating a disturbance at which time Sr. Trooper Walker directed the suspect to stay quiet and stand beside him in the above location. The suspect then turned to Sr. Trooper Walker and became confrontational by stating "this is a free country, I can say what I want!" before putting both arms out and saying "come on! Put the cuffs on!" while holding both arms out in front of her with closed fists. Sr. Trooper Walker instructed the suspect to stay calm and quiet so that Sgt. Sigulinski and Officer Newlin could speak with the multiple males giving their statement as to what happened. The suspect made an un-articulable comment before approaching Officer Newlin and Sgt. Sigulinski from behind at which time Sr. Trooper Walker directed the suspect to place her hands behind her back. Sr. Trooper Walker further gained control of the suspect's left arm at which time she attempted to pull away from Sr. Trooper Walker and began yelling. Sr. Trooper Walker attempted to gain control of the suspect by placing her against a nearby truck and advised her to place her hands behind her back at which time the suspect turned toward Sr. Trooper Walker and attempted to pull away from him. Sr. Trooper Walker then placed the suspect on the ground at which time the suspect stated Sr. Trooper Walker had broken her arm as she actively tried to pull away from him. The suspect then became calm and stopped attempting to pull away from Sr. Trooper Walker before she tried to barter with him to let her left arm go so that she could place her right arm behind her back. Sr. Trooper Walker advised the suspect that was not an option and to place her right arm behind her back at which time she stopped yelling and began asking for someone to call her husband. The suspect then placed her right hand behind her back and stated she could not get up as Sr. Trooper Walker placed her in custody for disorderly conduct, obstructing a Trooper and destruction of property. Sr. Trooper Walker double locked the handcuffs and assisted the suspect to a seated position at which time she stated she could not get up. Sr. Trooper Walker advised the suspect he was trying to get her off of the ground at which time he helped the suspect to her feet and began walking her to his cruiser. The suspect became extremely irate again by yelling stating her arm was broken before Sr. Trooper Walker placed her in his cruiser. The suspect banged her head against Sr. Trooper Walker's rear passenger cruiser window several times and began yelling before Sr. Trooper Walker walked away to take pictures

of the damage to the above work truck.

At approximately 1636 hours, Sr. Trooper Walker captured photographs of the tire tracks in the gravel that appeared to run directly into the side of the above work truck and led directly to the rear of the suspect's vehicle. These photographs will be attached to the detachment file copy of this report. Officer Newlin assisted Sr. Trooper Walker in obtaining statements from five (5) workers present during the above incident.

At approximately 1644 hours, Sr. Trooper Walker transported the suspect to Jefferson Medical Center, located at 300 South Preston Street in Ranson, West Virginia, to be medically assessed. Upon entering JMC under her own power, the suspect became irate by yelling that Sr. Trooper Walker was escorting her with her broken arm. Sr. Trooper Walker advised the suspect to stop yelling as he observed several staff members on the phone. The suspect continued to yell until Sr. Trooper Walker let go of her arm and then walked herself, turning her head to make comments as to what Sr. Trooper Walker had done to her, to the room prepare for her by the staff.

At approximately 1715 hours, Officer Newlin arrived at JMC and delivered the above statements to Sr. Trooper Walker. Sr. Trooper Walker observed Kyle Koppenhaver's statement advising he was called out to the above location for a citizen complaint with the Contractor Superintendent, identified as Allen Shutts. Mr. Koppenhaver advised upon arrival, the suspect was acting aggressively toward Mr. Shutts by being obnoxious and using offensive language. Mr. Koppenhaver advised he retracted himself from the situation which eventually led to the vehicle collision in the above parking lot. A copy of this statement is attached to the detachment file copy of this report.

At approximately 1730 hours, Sr. Trooper Walker observed Mr. Shutt's statement advising he was called to the above location for an irate property owner in the street causing issues. Mr. Shutts stated the suspect was vulgar toward him as he tried to work through the situation with her. The suspect then advised Mr. Shutts that he would not pour concrete the next day so he contacted the police to avoid any further confrontation. Mr. Shutts stated after his conversation with the suspect, he observed her driving at a high rate of speed through the above parking lot and strike a work truck. A copy of this statement is attached to the detachment file copy of this report.

At approximately 1733 hours, Sr. Trooper Walker observed Dale DaGrave's statement advising he was dropping off an employee in the above parking lot to drop off John Morris. Mr. DaGrave stated he began to pull away from dropping of Mr. Morris at which time a lady pulled in front of him at an angle and they made contact. A copy of this statement is attached to the detachment file copy of this report.

At approximately 1736 hours, Sr. Trooper Walker observed Mr. Morris's statement advising he got out of a company truck at which time a white lady pulled beside them and gave them her opinion about their work. Mr. Morris stated Mr. DaGrave began pulling away and the lady ran into the side of the work truck. A copy of this statement is attached to the detachment file copy of this report.

At approximately 1739 hours, Sr. Trooper Walker observed Rodney Hedrick Sr.'s statement advising he witnessed the above collision between the suspect's vehicle and the work truck. Mr. Hedrick stated when Law Enforcement arrived on scene the suspect became irate and was mouthing off to Sr. Trooper Walker at which time he requested she calm down. Mr. Hedrick stated Sr. Trooper Walker advised the suspect to calm down several times and stay away from Officer Newlin who was trying to speak with another person. Mr. Hedrick stated the suspect continued to approach Officer Newlin at which time Sr. Trooper Walker attempted to stop her and the suspect

slapped his hand away and tried to pull away from same. Mr. Hedrick stated Sr. Trooper Walker placed the suspect on the ground and in handcuffs. Mr. Hedrick stated the suspect was also at the State Field Office on Thursday April 22, 2016, causing a disturbance by being irate before her husband removed her from their office. A copy of this statement is attached to the detachment file copy of this report.

_____
Sr. Trooper D. R. Walker
West Virginia State Police
Troop 2 – Charles Town

COPY TO