# In The Matter Of:

*Julie Ann Hamstead v.*
*Former Trooper D. R. Walker*

---

*Charles A. Feldbush, Sr.*
*January 15, 2020*

---

*Sapphire Court Reporting*

Original File Charles A. Feldbush Sr.txt
Min-U-Script® with Word Index

**EXHIBIT 27**

234

1  and 20 of Mr. Bedard's report.
2      A.   Okay.  Just a second.  Starting where?
3      Q.   Are you there?
4      A.   Yeah, I'm on it right here.
5      Q.   Relating to the question in Paragraph 19, it states
6  something to the effect that Ms. Hamstead was placed on the
7  ground, and Paragraph 20 says she was placed in a sitting
8  position and Trooper Walker was assisted by Newlin.  You
9  were asked as to both of those paragraphs whether they were
10 consistent with the evidence you've seen, and you testified
11 that Paragraph 19 was and Paragraph 20 was not.  Do you
12 recall that testimony?
13     A.   No.  I think I said I believe she was taken down in a
14 takedown, what they call a takedown.  She went straight to
15 the ground, and then they sat her back up on her rear end on
16 the ground before they picked her up and put her in a
17 cruiser.
18     Q.   What evidence did you consider when arriving at that
19 conclusion?
20     A.   I know if you're going to do this -- she was already
21 -- for lack of better words, she would have already been
22 allegedly roughed up when she was thrown against the car and
23 had her glasses broken.  So, the natural course at that
24 point, since she's allegedly resisting you, would be to take

1   her down.  That's standard training procedure.  You pin them
2   right down to the ground.  And then they have no -- no
3   ability to cause any more issues other than maybe kicking.
4           You handcuff them, you sit them back up.  You
5   actually roll them to the right or roll them to the left
6   depending on where your point of center is.  They sit down
7   and then you pick them back up, straight back up.
8       Q.  And I understand what you said there, but my question
9   was what evidence in this case -- you were asked if these
10  two paragraphs were consistent with the evidence you've
11  seen.  What evidence did you consider to determine what
12  happened there?
13      A.  Well I believe and there's a lot here to go over --
14  to point to, but I believe I've seen where they took her
15  down to the ground and then sat her on her rear end.
16      Q.  Testimony from?
17      A.  I believe it was Walker, I believe.  But that was
18  just a glance at it.  I have not read his entire deposition
19  or transcript.
20      Q.  You read his entire magistrate court testimony,
21  didn't you, from the criminal trial?
22      A.  I didn't -- I've not been over the entire thing.  No.
23  I have read portions of it, yes.  Bear with me a second.
24          It says on page 1 of this document.